```
                                              Page 1

 1                IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 2

 3   UNITED STATES OF AMERICA  )  2:19-cr-00350-JD-1
              Plaintiff,       )  2:19-cr-00350-JD-2
 4      vs.                    )  2:19-cr-00350-JD-3
                               )  Philadelphia, PA
 5   DONNIE SMITH, ABID        )
     STEVENS AND MAURICE QUINN )  January 31, 2020
 6            Defendant.       )  10:12 a.m.-3:54 p.m.
 7                JURY TRIAL - DAY FIVE
               BEFORE THE HONORABLE JAN E. DUBOIS,
 8              UNITED STATES DISTRICT JUDGE
 9   APPEARANCES:
10   For the Government:        ROBERT E. ECKERT, ESQ.
                                ASHLEY NICOLE MARTIN, ESQ.
11                              U.S. ATTORNEY'S OFFICE
                                615 Chestnut Street
12                              Suite 1250
                                Philadelphia, PA  19106
13
     For Defendant Smith:       ROBERT C. PATTERSON, ESQ.
14                              R.C. PATTERSON LAW OFFICES
                                3513 Southwood Drive
15                              Easton, PA  18045
16   For Defendant Stevens:     BARNABY C. WITTELS, ESQ.
                                LACHEEN DIXON WITTELS &
17                              GREENBERG LLP
                                1429 Walnut Street
18                              Suite 1301
                                Philadelphia, PA  19102
19
20
21
22
23         Veritext National Court Reporting Company
                    Mid-Atlantic Region
24           1801 Market Street – Suite 1800
                  Philadelphia, PA 19103
25                    1-888-777-6690
```

Page 2

1  APPEARANCES, CONTD.:

2  For Defendant Quinn:      MARANNA J. MEEHAN, ESQ.

                            DEFENDER ASSOCIATION OF

3                            PHILADELPHIA

                            Suite 540 W.

4                            The Curtis Center

                            601 Walnut Street

5                            Philadelphia, PA  19106

6  ESR Operator:            MICHAEL COSGROVE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23          Veritext National Court Reporting Company

                        Mid-Atlantic Region

24          1801 Market Street - Suite 1800

                        Philadelphia, PA 19103

25                      1-888-777-6690

Page 3

1                        I N D E X

2    WITNESSES            DIRECT   CROSS   REDIRECT   RECROSS

3    MICHELE CORDILAS

      by Ms. Martin         13

4     by Mr. Wittels                 20

5    GISELA GARCIA

      by Ms. Meehan         26

6

7    Government rests                                        23

8    Defendant Smith rests                                   24

9    Defendant Stevens rests                                 25

10   Defendant Quinn rests                                   37

11   RULE 29 MOTION HEARING:

12    By Ms. Meehan                                          42

      By Mr. Eckert                                          43

13   Court's Ruling                                          45

14    By Mr. Patterson                                       45

      By Mr. Eckert                                          47

15   Court's Ruling                                          48

16    By Mr. Wittels                                         49

      By Mr. Eckert                                          50

17   Court's Ruling                                          52

18   CHARGE CONFERENCE                                       53

19

20

21

22

23

24

25

Page 4

1                       E X H I B I T S

2    NO.                                          RECEIVED

3    Government's:

4    5-B (911 call)                                 18

5    1 (Video)                                      36

6    Defendant Quinn's:

7    D 1-A, and 1 through 6 (Videos)                34

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

1                    P R O C E E D I N G S

2                    THE CLERK:  All rise.

3                    THE COURT:  Good morning, everyone.

4                    ALL:  Good morning, Your Honor.

5                    THE COURT:  Please be seated.  All

6    right.  Let's talk about the schedule for today.  The

7    Government intends to call its last witness, I think

8    the last witness.  The record custodian to cover the

9    911 call and Exhibit 5-B; am I correct?

10                   MR. ECKERT:  You are, Your Honor.

11                   THE COURT:  And how long do you

12   anticipate that will take?

13                   MR. ECKERT:  About ten minutes, Your

14   Honor.

15                   THE COURT:  All right.  Any other

16   witnesses?

17                   MR. ECKERT:  No, Your Honor.

18                   THE COURT:  Mr. Patterson?

19                   MR. PATTERSON:  Your Honor, I conferred

20   with Mr. Smith this morning and he will not be

21   testifying and I'll colloquy him at the appropriate

22   time.  No other evidence, no other witnesses on my

23   side.

24                   THE COURT:  Mr. Wittels?

25                   MR. WITTELS:  Your Honor, as I've

1  stated before, Mr. Stevens is not testifying.  We have

2  no other evidence to present, so we will rest at the

3  conclusion of the Government's case.

4              THE COURT:  Thank you.  Ms. Meehan?

5              MS. MEEHAN:  Thank you, Your Honor.

6  Your Honor, Mr. Quinn and I have spoken and he will

7  not be testifying.  I have one short defense witness

8  that I advised the Government of this morning, a non-

9  fact witness.

10              THE COURT:  Pardon me?

11              MS. MEEHAN:  A non-fact witness.

12              THE COURT:  And how long will that

13  take?

14              MS. MEEHAN:  Ten minutes.

15              THE COURT:  All right.  Well, we have

16  an issue regarding the charge.  The way the change in

17  the charge was presented yesterday was well, it was

18  certainly not well thought out.  And I say that

19  because immediately before the new charge, and it was

20  a dramatic change in the aiding and abetting Count II

21  charge, immediately before that I asked about the

22  schedule and we told the jury that we would start

23  today, no one said anything about a theory.

24              And the bottom line, the jury is here,

25  it's a little after 10.  And it sounds like we have at

Page 7

1   most 30 minutes of testimony.  And I'm saying this to

2   educate you with respect to how trials are handled.

3   We could have solved the problem by having the jury

4   come back a little later, say 1 o'clock, maybe 11

5   o'clock or 12 o'clock to give us an opportunity to

6   finish with the charge because we couldn't have

7   finished yesterday, primarily because the Government's

8   theory of the case, when I asked Mr. Eckert about it,

9   was diametrically opposed, in conflict with the so-

10  called agreed upon aiding and abetting charge for

11  Count II.  So we're going to have to spend more time

12  on that.

13              And we have the jury in the jury room.

14  That is not good.  And I'm telling this with you, I'm

15  sharing this with you, I've tried I don't know how

16  many cases as a judge and before that 30 years as a

17  lawyer and you've really got to think ahead to how the

18  providing of testimony, closings, openings, charge how

19  it all fits together in a way that makes sense and

20  doesn't have people hanging around doing nothing.

21              What I propose doing is hearing the

22  evidence this morning.  And then excusing the jury.

23  There are two choices, we can excuse them until Monday

24  or we can excuse them until early afternoon with the

25  thought that we can have closings today.

1              I have to look at the charge.  Ms.

2    Meehan's presentation of the so-called new charge last

3    night didn't even give me an opportunity to read it

4    and that isn't going to work.

5              I think I can come up with the way I

6    will charge the jury, given a few more hours.  We ran

7    out of time last night, didn't get till oh, I guess a

8    quarter of 9.  And the bottom line, my thought is and

9    again there are two alternatives.  We can hear --

10   we're going to hear the evidence first and I'll hear

11   any motions that are presented.  And we don't have to

12   have the jury for the motion.

13             But the choice is we either excuse the

14   jury until say 1 o'clock, by which time I think I will

15   not have a completed charge, we'll finish it probably

16   tomorrow, maybe this afternoon, but probably if not

17   this afternoon then by tomorrow.  Or excuse the jury

18   until Monday.

19             If we -- while I'm talking --

20             MS. MEEHAN:  Oh, I'm sorry, I thought

21   you were asking for motions.

22             THE COURT:  Asking for what?

23             MS. MEEHAN:  If there were motions.

24             THE COURT:  I don't think I asked for

25   motions.  If we proceed today, I wouldn't do that if

1    we were to decide to do that -- I wouldn't follow

2    through on that unless I was able to give you if not

3    the charge itself, the -- well, the essence of my

4    instructions.  And all we're talking about really is

5    the way we handle the aiding and abetting charge with

6    respect to Count II.

7                    So the choice is, try to proceed that

8    way, have the jury come back early afternoon and get

9    the closings done today.  Charge on Monday.  Or

10   whether we excuse the jury until Monday and have the

11   closings and the charge on Monday.

12                   That runs the risk, not a risk, but it

13   might lead to the fact that they won't finish

14   deliberating on Monday.  And the deliberations will

15   spill over into Tuesday.

16                   I don't want you to think this through

17   independently, if you want to talk about it among

18   yourselves.  It sounds like -- it seems to me that

19   your interests are basically the same, you might have

20   different views, but your interests are basically the

21   same.

22                   So I'll stay on the bench.  Why don't

23   the four of you talk about those two alternatives.

24   Jury excused until 1 o'clock with a goal of closings

25   today, charge on Monday or hear the testimony and let

Page 10

1    the jury go home until Monday.

2         (Pause)

3              MR. ECKERT:  We can just talk right

4    here, Your Honor.

5              THE COURT:  Absolutely.

6         (Pause - counsel confer)

7              MR. PATTERSON:  Your Honor --

8              THE COURT:  Who will speak for the

9    group?

10             MR. PATTERSON:  I believe the -- on the

11   defense side, we would take option two which would be

12   excuse the jury early, start fresh with the closings

13   and the charge on Monday morning.

14             MR. ECKERT:  That's fine with us, Your

15   Honor, thank you.

16             THE COURT:  That'll give us a little

17   more flexibility.  I don't want you to breathe so much

18   a sigh of relief yet because after the jury is

19   excused, and I'll do that, after the jury is excused I

20   want to go back to the charge because the -- where we

21   are now leaves me without a proposal from you or

22   again, the troublesome instruction is aiding and

23   abetting, Count II.

24             I can still hear and I thought this on

25   the way home, the aiding and abetting charge presented

```
 1    as an agreed upon charge, talks about Quinn as the
 2    aider and abettor and Stevens and Smith as the
 3    principals.  I asked Mr. Eckert whether that was his
 4    theory, he said no.  And that presents an interesting
 5    conflict between my charge and the Government's
 6    position.
 7              And notwithstanding the fact that this
 8    was represented to be an agreed upon charge, it's so
 9    internally inconsistent with the case that it can't be
10    given.
11              What I will try to do in the charging
12    conference, this is part three this after -- well,
13    we'll do it this morning is address the issues that
14    the defense says are lacking in the charge and add
15    them.  I'm not going to dramatically tinker with the
16    Third Circuit charge.  But I'll consider adding to it
17    or removing from it.  That's what we'll do.
18              All right.  We're ready to proceed with
19    the witnesses?
20              MR. ECKERT:  We are, Your Honor.
21              THE COURT:  I think what we'll do is
22    we'll have Government witness, Government rest, will
23    not take the time to argue motions after the
24    Government rests, we'll proceed with Ms. Meehan's
25    evidence.  And then we'll have motions, I'll hear that
```

Page 12

1    first and then we'll move into the charging

2    conference.  Ms. Hull.

3         (Pause)

4                   THE CLERK:  All rise.

5         (Jury in)

6                   THE COURT:  Good morning, everyone.

7    Please be seated.

8                   JURORS:  Good morning, Your Honor.

9                   THE COURT:  Mr. Eckert, are you ready

10   to proceed?

11                  MR. ECKERT:  We are, Your Honor.

12                  THE COURT:  You may.

13                  MS. MARTIN:  The Government calls

14   Michele Cordilas to the stand.

15                  THE CLERK:  Please raise your right

16   hand.

17        MICHELE CORDILAS, GOVERNMENT'S WITNESS, SWORN

18                  THE CLERK:  Thank you.  Please be

19   seated.  Please state your full name and spell your

20   last name for the record.

21                  THE WITNESS:  Michele, one L, Cordilas,

22   C-O-R-D-I-L-A-S.

23                  THE COURT:  Good morning.

24                  THE WITNESS:  Good morning, sir.

25                  MS. MARTIN:  May I, Your Honor?

1              THE COURT:  You may.

2                   DIRECT EXAMINATION

3    BY MS. MARTIN:

4         Q.   Good morning, Ms. Cordilas.

5         A.   Good morning.

6         Q.   Ms. Cordilas, can you tell the jury how

7    you're currently employed?

8         A.   I'm employed by the Philadelphia Police

9    Department.  I'm a 911 dispatcher assigned to the

10   audio reproduction unit.

11        Q.   What does that mean, being a 911 dispatcher

12   and what does it mean to be assigned to the

13   reproduction unit?

14        A.   When I'm a 911 dispatcher, I can work in the

15   call taking center.  I have dispatched, I don't do

16   that anymore.  Right now, I listen to 911 tapes, I

17   reproduce them for whoever requests them with the

18   proper paperwork, whether it's detectives, lawyers,

19   what have you.

20        Q.   In general, when you say dispatch, what are

21   you talking about?

22        A.   Dispatch is when you talk to the officers on

23   the street, the --

24        Q.   And --

25        A.   Sorry.

Page 14

1        Q.    No, I apologize, please continue.

2        A.    And the 911 call takers talk to the people

3    that call 911.

4        Q.    You're communicating with the officers that

5    are out on the street?

6        A.    That's correct, the dispatch side.

7        Q.    And all of those calls recorded?

8        A.    That's correct.

9        Q.    And do you in some way, shape or form

10   associate those calls with a particular incident?

11       A.    That's correct, yes.

12       Q.    How do you do that?

13       A.    The 911 operator will receive a 911 call

14   from whoever is calling 911 and then they'll give

15   their information and what their problem is and why

16   they need the police.

17       Q.    And do you record those 911 calls, as well

18   as the dispatches?

19       A.    Yes, everything is recorded.

20       Q.    Okay.  And do you keep those in your normal

21   course of business?

22       A.    Yes.  They're kept for 40 days.  Our system,

23   we receive so many calls, there's so much

24   communication, we can't handle -- the computer system

25   can't handle all that information so it's kept 40

1    days.

2         Q.   But if they're requested in those 40 days,

3    you can obtain those recordings --

4         A.   Yes, that's correct.

5         Q.   -- is that accurate?

6         A.   Yes.

7         Q.   Okay.  And are you familiar with the

8    recordings that were reproduced in this case?

9         A.   No.

10        Q.   Are you familiar with the way they were kept

11   in your normal course of business?

12        A.   Yes.

13        Q.   All right.  And before we get to the actual

14   calls, I'd like to ask you if you're familiar with a

15   phone number.

16             MS. MARTIN:  If I could, Your Honor,

17   can I have 47-B placed on the screen, a small portion

18   of it for the witness?

19             THE COURT:  You may.

20             MS. MARTIN:  Pardon me, Your Honor, can

21   I also have that published to the jury?

22             THE COURT:  You may.

23   BY MS. MARTIN:

24        Q.   Ms. Cordilas, this is a section of phone

25   records that the jury has already seen.

Page 16

1          A.    Okay.

2          Q.    Okay.  And you're looking at -- that's March

3     22nd, 2019 at 6 p.m.  Do you see the phone number on

4     the far right-hand side?  It's 215-686-3128.  Are you

5     familiar with that phone number?

6          A.    Yes.

7          Q.    What is it?

8          A.    That's the operations desk for the police

9     department.

10         Q.    Okay.  And how would that phone number --

11    who uses that phone number?

12         A.    When you work in the Philadelphia Police

13    Department, where you work as dispatchers, there's an

14    operations desk.  There's three civilians and multiple

15    supervisors that work that desk.  That's a phone

16    number that bosses call up or officers call up to give

17    you information about a particular assignment.

18         Q.    If an individuals calls 911 and dispatch

19    needs to return a call to them, is that the phone

20    number that would be used?

21         A.    Yeah, the supervisor on the street would

22    call the operations desk and say, yes, can I have the

23    CCI, which is confidential caller information

24    pertaining to this assignment. And then we would say,

25    hang on, we would bring it up, look at the

Page 17

```
1    information, and then we would call that number back
2    and as soon as it rings, we'll say to the sergeant or
3    whoever calls, it's ringing and we hang up.
4                    MS. MARTIN:  Your Honor, at this time I
5    would like to play for the witness what's been marked
6    collectively as Government's 5-B.
7                    MR. WITTELS:  No objection.
8                    THE COURT:  Other defendants?
9                    MR. PATTERSON:  No objection.
10                   THE COURT:  No objections on behalf of
11   Mr. Stevens, no objections on behalf of Mr. Quinn.
12   Thank you.
13                   MS. MARTIN:  Before I play --
14                   THE COURT:  You may --
15                   MS. MARTIN:  Thank you, Your Honor, I
16   apologize.
17                   THE COURT:  You may proceed.
18   BY MS. MARTIN:
19       Q.   Before I play the initial call, can you tell
20   us how any 911 reproduction begins?
21       A.   It begins with the 911 call ticket.
22       Q.   Okay.
23       A.   So as soon as that phone picks up, it's
24   recorded.
25       Q.   And what about the dispatch calls?
```

Page 18

1      A.    The dispatch calls, so when you take a 911

2  call, you get the information, you'll enter it into

3  our CAD system, which is computer aided dispatch.  And

4  once that is entered, it will go to the dispatch

5  screen automatically, depending on what district it's

6  in, it'll go exactly to that district.  And then the

7  dispatcher will review the job and give it to the

8  officers on the street.

9      Q.    Okay.

10             MS. MARTIN:  Can we please play the

11  first portion of Government's Exhibit 5-B, the 911

12  call at 5:43 p.m. and 36 seconds on March 22nd, 2019.

13             THE COURT:  I don't know that 5-B has

14  been received into evidence, unless it was -- it was

15  just then.

16      (Government's Exhibit No. 5-B received)

17             MS. MARTIN:  Yes.

18             THE COURT:  Go ahead.

19             MS. MARTIN:  Thank you.

20             THE COURT:  You may.

21      (Government's Exhibit No. 5-B, 911 call played at

22  10:31:58 a.m. to 10:33:40 a.m.)

23             MS. MARTIN:  If I could play the next

24  portion of Side B, which is the dispatch call at 5:57

25  and 54 seconds.

Page 19

1              THE COURT:  You may.

2         (Government's Exhibit No. 5-B, 911 call played at

3    10:33:57 a.m. to 10:34:58 a.m.)

4              MS. MARTIN:  The next portion of 5-B at

5    5:58 and 55 seconds.

6         (Government's Exhibit No. 5-B, 911 call played at

7    10:35:03 a.m. to 10:35:30 a.m.)

8    BY MS. MARTIN:

9         Q.   Before I play the next portion of 5-B, Ms.

10   Cordilas, I'm going to ask you a question.  That was

11   at 5:58 and 55 seconds where an individuals say "I am

12   going to give him a call back."  Did you hear that?

13        A.   Yes.

14        Q.   Okay.  And would that call back have come

15   from the number that you identified earlier in your

16   testimony?

17        A.   Yeah.  So that sergeant 14-B is a sergeant,

18   he's going to call the front desk, which is that 3128

19   number and he's going to ask the person on phone, one

20   of us, a dispatcher saying, can you contact that

21   complainant back.

22              MS. MARTIN:  All right.  Continue with

23   5-B, please at 6:02:41.

24        (Government's Exhibit No. 5-B played, 911 call at

25   10:36:13 a.m. to 10:36:52 a.m.)

1           MS. MARTIN:  And finally, Agent

2  Orchulli, if you could please play the last portion of

3  6-B at 6:11 and 53 seconds.

4           THE COURT:  You said 6-B?

5           MS. MARTIN:  I'm sorry, 5-B, Your

6  Honor, at 6:11 --

7           THE COURT:  Thank you.

8           MS. MARTIN:  -- and 53 seconds.

9      (Government's Exhibit No. 5-B, 911 call, played

10  at 10:37:09 a.m. to 10:37:41 a.m.)

11           MS. MARTIN:  Thank you.  I have nothing

12  further for this witness.

13           THE COURT:  You may cross-examine.

14           MR. PATTERSON:  On behalf of Mr. Smith,

15  Your Honor, no questions.

16           THE COURT:  Mr. Wittels.

17           MR. WITTELS:  Thank you, Your Honor.

18                CROSS-EXAMINATION

19  BY MR. WITTELS:

20      Q.   Good morning.

21      A.   Good morning, sir.

22      Q.   I'm a little confused, I hope you can help

23  me out.

24      A.   Okay.

25      Q.   When someone calls 911, an operator answers.

1      A.    That's correct.

2      Q.    Correct?  And as they -- the operator is

3  talking to the complainant, is that operator typing

4  something?

5      A.    The remarks that they are giving them and

6  the location that they give them.

7      Q.    Okay.  And then that's what goes over to

8  dispatch?

9      A.    That's correct.

10     Q.    Okay.  So the operator is listening and

11  typing at the same time?

12     A.    That's correct, sir.

13     Q.    Possible to make mistakes, would you agree?

14     A.    In the remarks, sure.

15     Q.    Sure.  And so it's based on the remarks that

16  are sent over, and I guess that appears on somebody's

17  screen?

18     A.    That appears on the dispatch side, that's

19  correct.

20     Q.    So dispatch read through remarks, sees what

21  -- how the crime is characterized or categorized,

22  correct?

23     A.    That's correct.

24     Q.    And you have three set categories for

25  crimes, right?

Page 22

1        A.    That's correct.

2        Q.    So the 911 operator not only has to

3    simultaneously type and listen and talk, but also

4    categorize what she's hearing or he hears.

5        A.    Sure, yes.

6        Q.    So that goes to a screen and then based on

7    what you see on the screen, since you say you've done

8    this, you then send that out to police radio or

9    directly to the district or what?

10       A.    That goes through -- at this point, it's a

11   14th District has North Band, so that would be the

12   14th and the 35th, and this is a priority because it's

13   in progress and that would go over a citywide band

14   also.

15       Q.    Okay.  And that's based on the remarks that

16   you read on the screen.

17       A.    And that code, that theft in progress.

18       Q.    Theft in progress.

19       A.    Yes.

20       Q.    Which is something that the 911 operator

21   types in.

22       A.    Yes, it's -- yes.

23       Q.    Okay.  Is there a supervisor who listens to

24   the calls and then can correct or change what shows up

25   on the dispatcher's screen?

Page 23

1          A.    If need be, they can make supplements.

2          Q.    But that's not what's usually done, is it?

3          A.    No.

4                    MR. WITTELS:  Okay.  Thank you.

5                    THE COURT:  Ms. Meehan, do you have any

6     questions?

7                    MS. MEEHAN:  No, Your Honor.

8                    THE COURT:  Is there any follow-up, Mr.

9     Patterson?

10                    MR. PATTERSON:  There is not, Your

11    Honor.

12                    THE COURT:  Ms. Martin?

13                    MS. MARTIN:  No redirect, Your Honor,

14    thank you.

15                    THE COURT:  Ms. Cordilas, that

16    concludes your testimony.  Thank you very much.

17                    Ms. Martin?

18                    MR. ECKERT:  At this time, the

19    Government would rest, Your Honor.

20                    THE COURT:  I'm sorry?

21                    MR. ECKERT:  We don't have anymore

22    additional witnesses to present.

23                    THE COURT:  And so what are you doing?

24                    MR. ECKERT:  We are resting.

25                    THE COURT:  All right.

Page 24

```
1              MR. ECKERT:  Thank you.

2              THE COURT:  That doesn't really mean

3    the Government is taking a rest.  That means the

4    Government's evidence is over.  And I might say, this

5    came as a little bit of a surprise.  I didn't think

6    the Government's case would end this quickly and so I

7    didn't explain this to you last night.

8              All right.  Arguments will, I am

9    certain, have to be presented, but I'd like to do that

10   out of the presence of the jury as is customary and we

11   won't do it now, with the jury in the courthouse.

12             So what we'll do, we'll proceed with

13   the defense cases and defer argument on the issues

14   that are typically presented to the Court at the end

15   of the Government's case.  I'll hear all of the

16   defense testimony and other evidence and then we will

17   hear argument.  And, of course, that will be followed

18   by closing speeches and my charge.

19             All right.  Mr. Patterson, you may

20   proceed with your --

21             MR. PATTERSON:  Your Honor, if I may --

22             THE COURT:  -- case.

23             MR. PATTERSON:  Your Honor, in

24   consultation with my client, Donnie Smith, we will not

25   be presenting any evidence and we would rest.
```

Page 25

```
 1                    THE COURT:  Thank you.  I turn to you,
 2    Mr. Wittels.
 3                    MR. WITTELS:  Your Honor, on behalf of
 4    Mr. Stevens, we rest.
 5                    MS. MEEHAN:  Your Honor, before
 6    beginning Mr. Quinn's defense, I would have a motion
 7    pursuant to Federal Rule of Criminal Procedure Rule 29
 8    on both counts.
 9                    THE COURT:  You heard how we're going
10    to handle that.
11                    MS. MEEHAN:  Right, Your Honor.
12                    THE COURT:  That means not now.
13                    MS. MEEHAN:  Very well.  Just
14    preserving that and I'll my first witness, Your Honor.
15                    THE COURT:  That is what I want you to
16    do.  We'll hear argument on any motions, you'll
17    present any motions you have to me after all of the
18    evidence is presented.
19                    MS. MEEHAN:  Very well.  Defense calls
20    Gisela, G-I-S-E-L-A, Garcia to the stand.
21                    THE CLERK:  Please raise your right
22    hand.
23      GISELA GARCIA, DEFENDANT QUINN'S WITNESS, SWORN
24                    THE CLERK:  Thank you.  Please be
25    seated.  Please state your full name for the record.
```

Page 26

```
 1                   THE WITNESS:  My name is Gisela Garcia.
 2    That's spelled G-I-S-E-L-A, Garcia is spelled G-A-R-C-
 3    I-A.
 4                   THE COURT:  Good morning.
 5                   THE WITNESS:  Good morning.
 6                        DIRECT EXAMINATION
 7    BY MS. MEEHAN:
 8         Q.    Ms. Garcia, where do you work?
 9         A.    I work for the Federal Public Defenders
10    Office of Philadelphia.
11         Q.    And how long have you worked there?
12         A.    It'll be four years in a week.
13         Q.    And what is your job title at the Defender
14    Office?
15         A.    I'm an investigator.
16         Q.    And as part of your duties as an
17    investigator, did you perform any work or review in
18    connection with the case of United States v Donnie
19    Smith, et al, including the case of Mr. Quinn, Maurice
20    Quinn?
21         A.    Yes.
22         Q.    And what was that?
23         A.    Among many things I --
24         Q.    Well, I'll cut to the chase here.  Did you
25    review any store video from the RG Grocery?
```

1          A.    I did.

2          Q.    And was that video provided by the

3     Government?

4          A.    Yes.

5          Q.    And if you could briefly explain, did the

6     video involve different camera angles?

7          A.    Yes.

8          Q.    And would you explain to the members of the

9     jury what you mean by -- what that meant?

10         A.    There were six different camera angles

11    footage from the store, from six different cameras.

12         Q.    And if I could --

13              MS. MEEHAN:  Your Honor, I'd like to --

14    this was previously been marked in our defense trial

15    exhibit binder, D-1 through D-6 and they're different

16    camera video feeds.

17         Q.    So can I ask you to look at D-1?  Do you

18    recognize that?

19         A.    Yes.

20              THE COURT:  What is the exhibit number?

21              MS. MEEHAN:  I'm sorry, D-1, Your

22    Honor.

23              THE COURT:  My exhibit book doesn't

24    have any of these.  It starts with D-8.

25              MS. MEEHAN:  Your Honor, that includes

Page 28

1  D -- I thought the Government was putting the entire

2  video into evidence and they put in a compilation.

3                  MR. ECKERT:  We did offer the entire

4  video.

5                  MS. MEEHAN:  You did?  Okay.

6                  THE COURT:  The entire video was in

7  evidence.

8                  MS. MEEHAN:  Okay.

9                  THE COURT:  What are these exhibits D-1

10  through D-6?

11                  MS. MEEHAN:  These are the different

12  cameras, Your Honor.  If I may have a moment.

13                  Your Honor, I'll just -- if they agree

14  that they're in evidence, I'll just ask to move D-1

15  through D-6.  These are cameras 4, 6, 7, 8, 12 and 13.

16  I'd ask to move them into evidence and --

17                  MR. ECKERT:  We have no objection, Your

18  Honor.

19                  THE COURT:  I'm sorry, I'm not certain

20  what is being moved into evidence.  I note from your

21  exhibit book that you've identified different cameras,

22  4, 6, 7, 8, 12 and 13.

23                  MS. MEEHAN:  Your Honor, may I have a

24  moment with counsel?

25      (Pause)

 1                    MS. MEEHAN:  Your Honor, D-1 is one

 2      camera view from behind the counter, D-2 -- and this

 3      is what I was going through --

 4                    THE COURT:  Now, what are we talking

 5      about now --

 6                    MS. MEEHAN:  -- with Ms. Garcia.

 7                    THE COURT:  -- something that's

 8      stipulated?

 9                    MR. ECKERT:  I mean I think we're

10      talking about the same video, so -- but if they want

11      to move in 1 through 6 we have no issue with that, but

12      I --

13                    THE COURT:  But what is 1 --

14                    MS. MEEHAN:  It's a video --

15                    THE COURT:  What is --

16                    MS. MEEHAN:  -- it's a short video of

17      the -- of RG Grocery, Your Honor, from a certain

18      camera, camera number 4.

19                    THE COURT:  And you're going to show

20      the video?

21                    MS. MEEHAN:  I'm not going to, but I

22      want it to be available to the jurors because I will

23      be referring to various cameras -- views in my closing

24      argument.

25                    THE COURT:  You want it to be available

1    to the jury.

2              MS. MEEHAN:  Yes, Your Honor.  It's --

3    the entire store video is in evidence, Your Honor.

4              THE COURT:  I understand that.

5              MS. MEEHAN:  But it hasn't been

6    differentiated by the Government, by the camera view.

7              THE COURT:  Do you have any photos that

8    demonstrate the camera view?

9              MS. MEEHAN:  I have a disk for -- I

10   could ask to publish that to the jury.  I hadn't

11   gotten that far but.

12             THE COURT:  Well, when you say you want

13   it to be available to the jury, I don't quite

14   understand that.  The entire video is in evidence.

15             MS. MEEHAN:  It --

16             THE COURT:  I don't understand how

17   we're going to individuate these -- well, there are

18   six in total, six and you describe them as camera

19   views.  You'll have to tell me how to do that.  How

20   will you do that?

21             MS. MEEHAN:  Very well, Your Honor.  So

22   if I -- if the witness could answer, this is camera

23   number 4, Your Honor, it's in evidence.  I'd ask that

24   it be published to the jury.  I'm not going to play it

25   now, we would be here --

Page 31

```
 1                    THE COURT:  All right.  Fine.  What's
 2      camera number 4?
 3                    MS. MEEHAN:  D-1.
 4                    THE COURT:  All right.  And you're
 5      going to put D-1 on the screen?
 6                    MS. MEEHAN:  Yes, it should be on the
 7      jury's screen.
 8                    THE COURT:  It's not.  Now it is.
 9                    MS. MEEHAN:  Thank you.
10      BY MS. MEEHAN:
11          Q.   And, Ms. Garcia, what are we --
12                    THE COURT:  Just a moment.
13                    MS. MEEHAN:  Sorry.
14                    THE COURT:  Thanks, Michael.
15          Q.   Ms. Garcia --
16                    MS. MEEHAN:  Or, I'm sorry, I didn't
17      know if Your Honor was ready.
18                    THE COURT:  That's fine.
19          Q.   Ms. Garcia, what are we looking at on the
20      screen?
21          A.   It appears to be camera 4.
22          Q.   And did you download camera 4 of -- in the
23      RD Grocery?
24          A.   Camera 4 of the footage that was acquired
25      from RD Grocery by police.
```

Page 32

1      Q.    Okay.  And did you put this on a disk?

2      A.    I did.

3            MS. MEEHAN:  Okay.  And I will hand the

4   disk to the Court at the conclusion of Ms. Garcia's

5   testimony, Your Honor.  And can we take D-1 down and

6   if you could pull up D-2.  This is part of the G-1

7   that's already in evidence, Your Honor.

8            THE COURT:  Well, I gather that G-1

9   through G-6 are all part of G-1.  D-1 through D-6 is

10  all part of --

11           MS. MEEHAN:  Correct, correct.

12           THE COURT:  -- G-1, the video.

13           MS. MEEHAN:  Correct.  But this

14  differentiates what camera the film is on.  So if

15  we're talking about different things to the jurors at

16  closing and we're going to refer to which -- where

17  they can see it, if they ask to see it, or if they

18  wish to see it.

19           THE COURT:  Well, we'll see about that

20  when we get there.

21           MS. MEEHAN:  Very well.

22           THE COURT:  What's on the screen now?

23           THE WITNESS:  It appears to be footage

24  from camera 6 of RD Grocery.

25  BY MS. MEEHAN:

1        Q.    And did you also include this on the disk?

2        A.    I did.

3              MS. MEEHAN:  And can we pull up D-3?

4        Q.    And can you identify this?

5        A.    This is camera 7 from the footage acquired

6   from RD Grocery which I'd put on the disk as well.

7        Q.    Well, acquired from RD Grocery, was it

8   provided by the Government?

9        A.    Provided by the Government, correct.

10       Q.    Very well.

11             MS. MEEHAN:  And can we put up D-4?

12             THE WITNESS:  This appears to be

13   footage from camera 8.

14       Q.    And the entire --

15       A.    Acquired from RD Grocery by the Government,

16   provided by the Government, excuse me, which I put on

17   the disk as well.

18       Q.    And the entire video from camera 8 as well

19   as cameras 4, 6 and 7 that's on the disk.

20       A.    The whole video, correct.

21       Q.    Very well.

22             MS. MEEHAN:  And call up D-5 please.

23             THE WITNESS:  This is the footage from

24   camera 12, the entirety of which I put on the disk as

25   well.

Page 34

1        Q.   Very well.  Finally, D-6.

2        A.    And this is the footage from camera 13 of RD

3    Grocery provided by the Government, the entirety of

4    which I put on the disk.

5                 MS. MEEHAN:  Thank you, I have nothing

6    further.  Your Honor, I would move -- I'll call it I

7    guess Defense Exhibit 1-A and it contains D-1 through

8    D-6, which is also part of G-1 into evidence.

9                 THE COURT:  You're moving D-1-A?

10                 MS. MEEHAN:  Well, the disk, Your

11   Honor, has D-1 through D-6.

12                 THE COURT:  Well, we'll receive in

13   evidence D-1 through D-6, all of which are on a single

14   disk --

15                 MS. MEEHAN:  Correct.

16                 THE COURT:  -- D-1-A.

17       (Defendant Quinn's Exhibit Nos. D-1-A, D-1

18   through 6 were received)

19                 MS. MEEHAN:  Correct.

20                 THE COURT:  And all of these exhibits

21   are part of the video that we watched during the

22   Government's case.  I think that was Government

23   Exhibit 1, it's 1-A?

24                 MR. ECKERT:  Correct, Your Honor.  The

25   whole video is 1, and the compilation that we watched

Page 35

```
 1   was 1-A.

 2                   THE COURT:  Fine.

 3                   MS. MEEHAN:  Thank you.  I have nothing

 4   further.

 5                   THE COURT:  Is there --

 6                   MR. ECKERT:  No, Your Honor, we don't

 7   have any cross-examination.

 8                   THE COURT:  I'll get it out.  Is there

 9   any cross-examination?

10                   MR. ECKERT:  No, Your Honor, thank you.

11                   THE COURT:  Any cross-examination, Mr.

12   Patterson?

13                   MR. PATTERSON:  No, Your Honor, thank

14   you.

15                   MR. WITTELS:  None.

16                   THE COURT:  Mr. Wittels?

17                   MR. WITTELS:  No, sir.

18                   THE COURT:  All right.  Ms. Garcia,

19   that concludes your testimony.

20                   THE WITNESS:  Thank you.

21                   THE COURT:  Thank you very much.  Well,

22   we'll have to sort out the exhibits.

23                   I'm told, Mr. Eckert, that Government

24   Exhibit 1 was never moved in evidence.  It's not in

25   evidence.  1-A, 1-B, 1-C are in evidence and there are
```

Page 36

1    86 still photos that are in evidence.  But G-1 was not

2    in evidence.  Why don't you explain for me the

3    difference, for me and the jury, the difference

4    between G-1 and G-1-A.

5                    MR. ECKERT:  Your Honor, G-1 is the

6    entire surveillance video.  G-1 is a compilation video

7    that was played to the jury.

8                    THE COURT:  Are you moving G-1?

9                    MR. ECKERT:  We would move it at this

10   time, Your Honor, yes.

11                   THE COURT:  Well, I will treat that as

12   having -- is there any objection to treating that --

13   this motion to move G-1 into evidence?

14                   MR. PATTERSON:  No, Your Honor.

15                   THE COURT:  Treating that as part of

16   the Government's case in chief.

17                   MR. PATTERSON:  No, Your Honor.

18                   MR. WITTELS:  No objection.

19                   MS. MEEHAN:  No, Your Honor.

20                   THE COURT:  No objection.  Fine, then

21   Government Exhibit 1, the entire surveillance video

22   described as complete footage in the Government's

23   exhibit list is received in evidence.

24        (Government's Exhibit No. 1 received)

25                   MR. ECKERT:  Thank you.

Page 37

```
 1                THE COURT:  All right.  And you're
 2    resting now, Ms. Meehan?
 3                MS. MEEHAN:  Oh, I'm sorry.  Yes, on
 4    behalf of Maurice Quinn, the defense rests.
 5                THE COURT:  All right.  Now, I have
 6    some good news.  All of what happened today came as a
 7    bit of a surprise.  And it's a good surprise, but it
 8    leaves the schedule in well, not exactly the way I
 9    would've liked it.
10                The evidence is completed.  The parties
11    have rested.  What remains, argument on some motions
12    that are typically presented at the end of the
13    Government's case, and I'll hear those motions.  But
14    we have closings and my charge.
15                And the charge was subjected to a
16    number of different arguments last night for the first
17    time beginning at about 5:30.  And we haven't finished
18    addressing all of those legal issues.  We stayed until
19    about 7:30 or so but didn't get them done.
20                I asked counsel how they wanted to
21    proceed and we had thought there would be more
22    evidence today, but it turns out not.  And they tell
23    me they'd like to begin their closings on Monday
24    morning.  And I think that's reasonable because I
25    haven't finished addressing the issues that were
```

Page 38

1    presented last night for the first time.

2                    And the long and short of what I'm

3    saying is, that I'm going to excuse you for the day to

4    reconvene on Monday morning at 9:30 when we will start

5    the closing speeches.  The Government will go first,

6    then the defendants, each defendant, and that will be

7    followed by the Government's rebuttal.

8                    Closing arguments or closing speeches

9    are not evidence.  The parties argue in their closing

10   speeches why they think you should find in favor of

11   their clients.  Although not evidence I'm told by

12   many, many jurors that they find closing speeches very

13   important because they help focus the jury on the

14   issues the parties think are significant.  It doesn't

15   mean you have to accept what they say about a

16   significant issue, but it will cause you to focus on

17   those issues.

18                   I'm a little bit apologetic because I

19   don't like gaps in the trial.  And in this case, it's

20   unavoidable.  What does that mean on this cold cloudy

21   afternoon?  I guess its still morning, morning and

22   afternoon, it means that you're in the city if you

23   care to be or you can head home or do whatever.

24                   We'll see you Monday at 9:30.  So final

25   weekend instructions, I think you can probably give

1   them to yourselves, I've said them so many times.  But

2   don't discuss the case among yourselves, even though

3   the evidence is now completed.  Wait until you've

4   heard the closing speeches and my charge and then you

5   will begin your deliberations.

6              Don't talk to anyone about the case.

7   If anyone tries to talk to you about the case, say

8   nothing to them, and report that to me.  And don't

9   read anything that might be written about the case in

10  any newspaper.  Don't watch anything that might be

11  broadcast on television that deals with the case, the

12  same is true of anything that might be broadcast on

13  radio.

14             I have no other instructions for now.

15  Leave your juror notebooks in the jury room and on

16  Monday what we will have is closing arguments and the

17  charge.  And as I told you, I will deliver the charge

18  orally and then give you a number of copies of the

19  charge with a table of contents that will enable you,

20  if you have an issue regarding or a question regarding

21  a particular charge in the indictment, or an essential

22  element, you can go right to the table of contents and

23  pull it out and read it.

24             And if that's not sufficient, if you

25  still have questions, you can send me a note saying,

1    Judge, we need help, please explain whatever and I'll
2    call you back in the courtroom to do that.
3                     So the case is just about over, be a
4    little patient and we'll see you Monday morning at
5    9:30.
6                     THE CLERK:  All rise.
7                     THE COURT:  Have a good weekend.
8         (Jury out)
9                     THE COURT:  Be seated, everyone.
10                    Now, what do we need?  First of all,
11   we'll hear argument before I let you go.  But we need
12   quite a few things.  We need an exhibit list from you,
13   Ms. Meehan, with the exhibits that have been received
14   in evidence noted.  Now, I note we have a list in your
15   exhibit book, but I don't know.  For example, you talk
16   about photos.  I don't think any of your photos were
17   identified.  You had something called Screen Grabs and
18   documents.  I don't think any of that is in evidence,
19   but I want an exhibit list of covering all of the
20   exhibits that are offered.  I don't think any exhibits
21   -- I know no exhibits were offered by the co-
22   defendants.
23                    I want and will decide on a time, I
24   want a completed exhibit list from the Government
25   covering the exhibits that were received in evidence.

Page 41

```
 1    Many were not presented.
 2                    I think we should -- well, are there
 3    any -- we have the charge, but I think we should do
 4    that last.  Before argument on any motions, is there
 5    anything that needs to be presented?  Mr. Eckert?
 6                    MR. ECKERT:  No, Your Honor.
 7                    THE COURT:  Patterson?
 8                    MR. PATTERSON:  I'm sorry, Your Honor,
 9    is this for --
10                    THE COURT:  Anything else that needs to
11    be presented other than argument on motions --
12                    MR. PATTERSON:  No.
13                    THE COURT:  -- and the charge?
14                    MR. PATTERSON:  No.
15                    THE COURT:  Mr. Wittels?
16                    MR. WITTELS:  Nothing, sir.
17                    THE COURT:  Ms. Meehan?
18                    MS. MEEHAN:  You mean with respect to
19    Rule 29?
20                    THE COURT:  No.
21                    MS. MEEHAN:  I'm sorry, I misheard the
22    Court.
23                    THE COURT:  Anything that needs to be
24    addressed other than argument on the motions, the Rule
25    29 motions and the charge.
```

Page 42

1            MS. MEEHAN:  No, Your Honor.

2            THE COURT:  All right.  Then we'll

3    start on the Rule 29 motions.

4            Who goes first?

5            MS. MEEHAN:  Your Honor, I want to

6    apologize I really thought that the rule -- I just

7    read Rule 29 over again and I apologize for raising it

8    at the time I did.  I thought that was necessary to

9    preserve it.  But having reread it, Your Honor is

10   correct, I could have made it before -- at the

11   conclusion of my case, which I'm doing now.

12           Your Honor, I move without argument to

13   -- under Rule 29 to dismiss Count I.  With respect to

14   Count II, I think Count II I think there is a dearth

15   of evidence that Mr. Quinn who is charged under the

16   accomplice liability theory in Count II of aiding and

17   abetting, 924(c), having a gun, during in and -- or

18   brandishing a gun during and in relation to a robbery,

19   there is a dearth of evidence that Mr. Quinn had any

20   advance knowledge, which is a requisite for Mr. Quinn

21   to be found guilty of Count II.  And there's

22   insufficient evidence on this record for that charge

23   to go to the jury as it stands.

24           There may have been a disjuncture, some

25   evidence, and that's arguable of continued

Page 43

1    participation.  But that alone is not sufficient to

2    carry Count II.

3                    THE COURT:  And that's the basis for

4    your motion?

5                    MS. MEEHAN:  Correct, Your Honor.

6                    THE COURT:  Mr. Eckert, do you want to

7    respond?

8                    MR. ECKERT:  Sure.  I would just say

9    that there's a couple of things.  First, there's

10   plenty of circumstantial evidence even before he

11   enters the store for the second time, but all three

12   individuals were outside.

13                   I'll also note that Mr. Stevens says,

14   I'll be back; Mr. Quinn says I'll be back; and in

15   fact, they both -- they returned shortly thereafter.

16   When Mr. Smith and Mr. Stevens come in the store, they

17   brandished guns right away.  Given that all three of

18   them were outside at least for a short time, that

19   would be enough evidence to go to the jury.  But based

20   on the advanced knowledge doctrine, the fact that the

21   robbery itself does not actually happen until well

22   after the guns are brandished.  That also certainly

23   would be sufficient to go to the jury.

24                   The guns of Mr. Smith and Mr. Stevens

25   are brandished right away when they go in the store.

Page 44

1    Mr. Quinn has an example opportunity to walk away at

2    that point, and throughout the process before the

3    money is actually taken from the cash register, which

4    happens well after that.

5                    So on that basis, Your Honor, we submit

6    to the Court that there's enough evidence to go to the

7    jury on Count II.

8                    THE COURT:  All right.  I note that in

9    the charge you presented to me Ms. Meehan has an

10   agreed upon charge, and I'm not saying I'll give it,

11   but let me read it.

12                   If a defendant continues to participate

13   in a crime after a gun was displayed or used by a

14   confederate, you may permissibly infer from the

15   defendant's failure to object or withdraw from the

16   crime at that time that he had advanced knowledge of

17   the confederates' plan.  You are not required to draw

18   this inference, however.  It is entirely up to you to

19   determine the facts.

20                   Now, again I'm not certain that I will

21   include this in the charge.  But certainly an

22   opportunity to withdraw is required under the case law

23   as I understand it before a defendant can be found

24   guilty of aiding and abetting the crime of using or

25   carrying a firearm during and in connection with a

Page 45

1    crime of violence.

2                In this case, there's ample evidence

3    that guns were displayed at a time when Mr. Quinn had

4    an opportunity to withdraw, that is to leave and he

5    did not.  And so your motion on that ground is denied.

6                With respect to Count I that addresses

7    the issues raised on Count II.  With respect to Count

8    I, I believe the Government has presented sufficient

9    evidence that Mr. Quinn was a participant in the Hobbs

10   Act robbery.

11               He took the $100 he claimed was

12   provided to him or in payment for what was provided to

13   him in the form of phony bills, $100 bills, through

14   the ATM machine.

15               So I think there's sufficient evidence

16   to go to the jury with respects to Count I and II

17   regarding Mr. Quinn.  Your motion is denied.

18               Mr. Patterson?

19               MR. PATTERSON:  Thank you, Your Honor.

20   Your Honor, I would move to dismiss Count I.  I

21   believe there's insufficient evidence introduced at

22   trial to support more specifically element number two,

23   that the defendant did knowingly and willfully by

24   robbery.

25               The evidence shows and demonstrates

Page 46

1  that this was not a robbery.  Insofar as my client's

2  participation in the events that occurred on the day

3  in question, he disarmed the store clerk who pulled a

4  firearm, who loaded the firearm, and who had it at his

5  side ready to be used.  We do have evidence that that

6  firearm could have been used to discharge a

7  projectile.

8            I would argue that there's the

9  insufficient evidence insofar as there is no robbery,

10  so therefore, Count I must fall.

11            With respect to Count II, again I would

12  submit that there's insufficient evidence introduced

13  at trial to allow that charge to go to the jury for

14  final deliberation.  Specifically with reference to

15  Counts -- I mean for elements two and elements three,

16  it is the knowingly use and carrying of a firearm.

17            Both fact witnesses and expert

18  witnesses stated that the only firearm that satisfies

19  the definition of ra firearm would be the firearm that

20  was in the possession of the store clerk, first name

21  is Joell (ph).  That firearm based upon the evidence

22  was taken by my client, placed in his right pocket,

23  and I would submit that the evidence introduced on

24  that point was that that gun never left his right

25  pocket until he exited the store.

Page 47

```
 1                    There's been no evidence that the
 2   alleged firearms held by my client when he first came
 3   into the store, that he allegedly pointed at the store
 4   clerk was, in fact, a firearm.  If there's
 5   insufficient evidence to prove that a firearm was, in
 6   fact, the firearm as defined as a firearm, then that
 7   Count II should also fail.  Thank you.
 8                    THE COURT:  Mr. Eckert.
 9                    MR. ECKERT:  Your Honor, with regard to
10   Count I, the intent element, there's been evidence by
11   two of the lay witnesses that Mr. Smith said, "take
12   everything" or words to that effect which would
13   clearly indicate his intent to join the robbery.
14                    Second, he disarms the complaining
15   witness which is the action that facilitated the
16   robbery, that's the only thing that allowed the
17   robbery to occur was after Mr. Smith personally
18   disarmed the complaining witness.
19                    So on both of those two grounds,
20   there's sufficient evidence on Count I.  For Count II,
21   the direct evidence of that would be, of course, the
22   victim's testimony as well as Mr. Sanchez's testimony
23   that the gun appeared real to them.
24                    Secondly, as a circumstantial basis, we
25   would argue to the Court the fact the defendant left -
```

Page 48

1    - Mr. Smith left a Glock in the car that he crashed

2    which cost $600 or over $600 according to Ms.

3    Rodriguez, there's no way that a person would leave a

4    real gun that cost $600 in a car, and then take a fake

5    gun with them.

6              Secondly, after he took the real gun,

7    after he took the real Glock and put it in his pocket,

8    he after that pointed the gun at Mr. Ventura's face.

9    Again, there's no reason anyone would take a real gun

10   and put it in their pocket and then take a fake gun

11   and point it to someone's face.

12             So on all of those bases, Your Honor,

13   we would ask the Court to deny Mr. Smith's motion to

14   Rule 29.  Thank you.

15             THE COURT:  For the reasons advanced by

16   the Government, Mr. Patterson, your Rule 29 motion is

17   denied.

18             I think there's ample evidence.  Mr.

19   Smith's participation in the robbery, starting with

20   the "take everything" comment and the fact that he

21   disarmed Mr. Ventura, kept the weapon, I think that

22   enabled the robbery to proceed.

23             There's also sufficient evidence that

24   he used or carried at least one firearm during and in

25   connection with the robbery.  The store weapon was in

1   his possession from the time he took it from Mr.

2   Ventura until he left it in his car after he crashed.

3   And he had his own weapon, a weapon that was

4   brandished as he entered the store.  And without

5   exhausting all of the evidence, without identifying

6   all of the evidence that supports the Government's

7   argue with respect to his role in the two crimes

8   charged, I think that's sufficient to require the

9   denial of the Rule 29 motion.

10                  Mr. Wittels.

11                  MR. WITTELS:  Your Honor, Mr. Stevens -

12  - I move for dismissal under Rule 29 for the following

13  reason.  Mr. Stevens stands in a somewhat different

14  position than the co-defendants.

15                  The Government's theory and the

16  evidence would have to be that they formed the

17  conspiracy to rob outside and came in to execute it,

18  in order for Mr. Stevens to be part of a robbery.

19                  Because what happens before the money

20  is taken, Mr. Stevens' position vis a vis the other

21  people in the RD Grocery becomes one of trying to

22  resolve the problem.

23                  You saw -- you've seen the video tape.

24  You can judge from his body language and from the

25  testimony of the witness Sanchez that he is trying to

1   solve the problem.  He is trying to diffuse the

2   situation, and in fact, he says to Mr. Sanchez and to

3   Ms. Rodriguez, "I'm trying to fix it, I will get your

4   money back, I'll get your gun back."

5               So he is not a participant in the

6   robbery.  He may be a participant in the argument, but

7   his position becomes one of problem solver before the

8   robbery takes place.

9               You would have to say that that's an

10  act, he's really just covering it up.  He's

11  dissimulating in order to find him as a participant in

12  the robbery.  The argument about the gun very simply

13  is not any evidence that it's a real gun.

14              THE COURT:  Mr. Eckert.

15              MR. ECKERT:  Your Honor, briefly in

16  response to that.  So Mr. Stevens is actually in the

17  store and hears Mr. Quinn demanding money.  He leaves

18  the store and comes back with a firearm.  His intent

19  is perfectly clear, it's to take the property, its to

20  facilitate Mr. Quinn's taking the property of the

21  store.

22              So the fact that he says "I'll be back"

23  gives him all the intent, we would argue, that that

24  should go to the jury.  He also, I would note, there's

25  -- he points his gun at Mr. Ventura, and Mr. Ventura

Page 51

1    is not disarmed until after that point.  It's not as

2    if he just keeps his gun at his side, that's his

3    pointing the weapon at Mr. Ventura.  That's what

4    causes Mr. Ventura to provide his gun to Mr. Smith.

5    That is certainly enough evidence that would get Mr.

6    Stevens to the jury as an aider and abettor.

7                    I also note that he controls the

8    employee, Mr. Sanchez.  There's ample evidence from

9    the video that he puts his hands up and he directs Mr.

10   Sanchez to stay off to the side, which prevents him

11   from intervening in any way.  That would also be

12   sufficient under any aiding and abetting theory for

13   Count I to go to the jury.

14                   With regard to Count II, the strongest

15   circumstantial evidence there would be the fact that

16   as soon as Mr. Quinn is fleeing Mr. Stevens provides

17   his gun to Mr. Quinn.  There's no reason to get rid of

18   a fake gun in that moment.

19                   Mr. Stevens obviously believed and

20   there was evidence in the record that the police were

21   about to be there.  The fact that he feels the need to

22   provide his gun to Mr. Quinn, given that Mr. Quinn is

23   going to immediately leave the store is ample evidence

24   that that firearm is real.

25                   In addition, of course, we rely on the

```
 1   direct evidence of the victim testimony that Mr.
 2   Stevens' firearm appeared real to them.  Thank you.
 3               THE COURT:  Mr. Wittels, for the
 4   reasons advanced by the Government, I'm going to deny
 5   your Rule 29 motion.  I agree that what started out by
 6   Mr. Stevens is an effort to solve the problem
 7   escalated and it escalated into a robbery.
 8               He heard the argument, he left the
 9   store, came back with a gun as argued by the
10   Government.  That is sufficient evidence that although
11   not the strongest evidence in the world, it's
12   sufficient evidence to warrant submitting the Hobbs
13   Act robbery charge to the jury.
14               As far as the gun count is concerned,
15   he had a gun.  The issue you raise is whether it was a
16   real gun.  I think there is sufficient evidence,
17   although the guns were not retained -- obtained,
18   sufficient evidence either -- I'm just trying to
19   think, whether it was Ventura or Emanuel Sanchez who
20   said the gun looked real to him, but in any event,
21   there's evidence that the gun was a real gun.
22               And on that issue, I noted, the
23   Government noted Stevens ended up giving the gun, his
24   gun to Quinn as Quinn was leaving, just as the police
25   sirens were heard and the police car appeared in the
```

Page 53

1   video through the open front door.

2               So for all of those reasons, your Rule

3   29 motion on behalf of Mr. Stevens is denied.

4               All right.  I think what we should do

5   now is see what we can accomplish with respect to the

6   charge.  There's some things that need to be

7   completed.  The charge wasn't completed.  It was

8   dependent upon you to finish.  The bracketed parts,

9   and when a bracketed part of the charge is submitted,

10  because that's the way the Third Circuit model

11  instructions are presented, it's up to counsel to say

12  yes or no on what's bracketed, a little of that.

13              But the major issues are the aiding and

14  abetting charge with respect to Count II and the

15  Pinkerton charge.  So what I'm going to do, I'm not

16  going to ask you about your charging issues yet.  I'll

17  do that later if you have any.  I'm going to cover the

18  few remaining things that need to be completed and

19  then talk about what was submitted late last night.

20              Do you have a copy of the charge dated

21  January 31st?  No?

22              MR. PATTERSON:  No.

23       (Court confers with clerk)

24              THE COURT:  All right.  We'll start

25  with page 11.

Page 54

1              Turn to paragraph 7 or part 7, it's

2   entitled "Audio Visual Recordings - Consensual."

3        (Court confers with clerk)

4              THE COURT:  We were concerned about and

5   this really impacts you, Mr. Patterson.  It's entitled

6   -- the charge is entitled "Audio Visual Recordings -

7   Consensual."  And it reads, "During the trial, you

8   saw, heard audio visual recordings of the defendants

9   made without their knowledge."  And in rereading that,

10  I was concerned that the jury might get the impression

11  that the 911 call was made by the defendant, based on

12  that charge.

13             And so I have decided to add the words

14  "and others."  It will now read, "During the trial,

15  you saw, heard audio visual recordings of the

16  defendants and others," so as not to identify that 911

17  call as having come from the defendant.  That's up to

18  the jury to decide.  Mr. Patterson?

19             MR. PATTERSON:  That's acceptable, Your

20  Honor.

21             THE COURT:  It should be more than

22  acceptable, it should be thank you, Your Honor.

23             MR. PATTERSON:  I was going to say

24  thank you actually.

25             THE COURT:  Okay.  And I was just being

1    facetious.  There's certainly no need to thank me for

2    doing the right thing.

3                        The next thing we need, the

4    stipulations, do you have them?

5                        MR. ECKERT:  We would just ask time to

6    consult, Your Honor, I think that would be -- we would

7    request that.

8                        THE COURT:  Well, we'll -- you'll have

9    plenty of time to consult because I'm going to have to

10   -- well, I'm going to have to spend time on the aiding

11   and abetting charge and then we will reconvene.  And

12   you can remain in the courtroom when I leave the

13   bench, but you're going to have to get the

14   stipulations.

15                       MR. ECKERT:  Understand, Your Honor.

16                       THE COURT:  And decide how you want to

17   present them.

18                       MR. ECKERT:  Right.

19                       THE COURT:  Right now I have no idea of

20   all the things you've stipulated to.  I've never seen

21   stipulations handled in this somewhat casual way.  I

22   mean, Ms. Meehan walked up to the microphone, we've

23   stipulated that during the period before the robbery

24   there were a number of telephone calls between these

25   two numbers.  Is that reduced to writing anywhere?

1              MS. MEEHAN:  Your Honor, it's in my --

2     and I just want to --

3              THE COURT:  No, no, no.  Is that

4     reduced to writing anywhere?

5              MS. MEEHAN:  Well, I'd like to type it,

6     but it is reduced to writing.

7              THE COURT:  Where?  Oh, handwriting?

8              MS. MEEHAN:  Yes.

9              THE COURT:  Oh, I see.  Well, that's

10    not the way --

11             MS. MEEHAN:  Right.

12             THE COURT:  -- I think we should

13    present evidence and that's evidence.

14             MS. MEEHAN:  Well, that was on the fly,

15    Your Honor, because if Your Honor will recall I didn't

16    think that those calls were coming in for any other

17    purpose, but as they related to Mr. Smith --

18             THE COURT:  At least for the --

19             MS. MEEHAN:  -- not as to Mr. Quinn.

20             THE COURT:  -- last two days, you knew

21    that was in -- in any event, an example of what we

22    don't want in a case.  We want all of the stipulations

23    reduced to writing and that will have to be done by --

24    well, I don't know it needs to be done today.  It

25    certainly has to be done by Monday by the time we

Page 57

1    reconvene.

2              Well, let's talk now.  Do we need in

3    the charge either a summary or some other specific

4    reference to the stipulation?

5              MR. ECKERT:  I'm sorry, Your Honor.

6    May I just have a moment to think about that?

7              THE COURT:  Yes.

8              MR. ECKERT:  Thank you.

9        (Pause)

10             MR. ECKERT:  I don't believe we would

11   need a summary.  I think that counsel would be happy -

12   - or not happy, but counsel would certainly be free to

13   argue them in closing, any of the issues.  But I did

14   not -- we don't request the -- a --

15             THE COURT:  All right.  Well, let's --

16   then we'll make it clear.  The parties to each

17   stipulation shall reduce the stipulations to writing

18   and present them to the Court for -- and admit them

19   into evidence no later than Monday morning when we

20   reconvene at 9:30.

21             And that brings to mind how to handle

22   the exhibits.  I direct by Monday morning at 9:30, the

23   Government put its exhibits that were received in

24   evidence into an exhibit book.  That means that you'll

25   remove all of the exhibits that were not received in

Page 58

1    evidence.

2                    Is there an issue as to whether all of

3    those exhibits will go out with the jury?

4                    MR. ECKERT:  I think but the gun, Your

5    Honor.

6                    THE COURT:  Pardon me?

7                    MR. ECKERT:  I think but for the gun,

8    everything would go back.

9                    THE COURT:  Is there any objection to

10   that, Mr. Patterson?

11                   MR. PATTERSON:  No, Your Honor.

12                   THE COURT:  Mr. Wittels?

13                   MR. WITTELS:  No objection.

14                   THE COURT:  Ms. Meehan?

15                   MS. MEEHAN:  No, Your Honor.

16                   THE COURT:  All right.  Well then the

17   Government will compile its exhibits for presentation

18   -- well, for taking back to the jury room.  And that

19   will be presented by February 3rd at 9:30.

20                   All right.  Let's finish -- pardon me?

21       (Court and clerk confer)

22                   THE COURT:  There seems to be a

23   question -- Michael.  About exhibits received -- Ms.

24   Meehan, were any of your exhibits, other than the CD

25   offered in evidence?

Page 59

1              MS. MEEHAN:  Your Honor, I believe 8, 9

2    and 10 were, as well as the Court today admitted D 1-

3    A, which is -- includes D-1 through 6 but not 7.

4              MR. ECKERT:  Right, we had 8, 9, 10

5    being admitted during the Government's case, Your

6    Honor.  I don't mean to interrupt.

7              THE COURT:  All right.  Well then,

8    you'll have 8, 9 and 10 available to give to the jury.

9              MS. MEEHAN:  Thank you.

10             THE COURT:  1 through 7 --

11             MS. MEEHAN:  No, 1 through 6, Your

12   Honor.

13             THE COURT:  1 through 6 were received,

14   but they are compiled into a CD.

15             MS. MEEHAN:  They are, and that I

16   called D 1-A, and I'll hand that to the Court now if

17   it pleases the Court.

18             THE COURT:  Well, it's your exhibit and

19   it's offered in evidence.  But you said you had G or D

20   1-A, first of all, it should be D Quinn when there are

21   three defendants --

22             MS. MEEHAN:  You're right.

23             THE COURT:  -- D-Quinn 1-A is the only

24   exhibit covering the first six, let me just look, the

25   first six exhibits.

Page 60

1           MS. MEEHAN:  Correct, Your Honor, and I
2   labeled Quinn D 1-A, D-1 through 6.
3           THE COURT:  Okay.
4           MS. MEEHAN:  Should I hand that to the
5   court or --
6           THE COURT:  Yes.
7           MS. MEEHAN:  These are two copies, Your
8   Honor of D 1-A and, Your Honor, the Government is
9   aware of these because the Government provided them.
10   It's just that they're each camera individually on
11   this CD.
12           THE COURT:  Michael.  While we're on
13   it, I don't want to -- I want Ms. Meehan to answer the
14   question.  Assuming the jury asks for that exhibit,
15   you see if we give that disk to the jury, it tells
16   them nothing.  What do you propose?
17           MS. MEEHAN:  Well, this was an issue --
18   Your Honor, I was thinking about this last night when
19   I was writing my closing, that there are portions of
20   the video that I will be referring to, and I assume
21   the Government will be doing the same in their
22   closing.
23           And they had still shots, but the video
24   is obviously different from a still shot and if I
25   said, oh, look at time 16:54 it means nothing unless

Page 61

1    you direct them to the camera that's showing that
2    particular activity.  Because on camera 6 there's
3    something going on, but it's a different activity on
4    camera 13 at that same time.  So that was the problem
5    with the compilation that the Government put in, which
6    is why I called Ms. Garcia today to put in the entire
7    video that's in G-1, but it's different -- it's split
8    between the cameras.
9                  So that if the jurors were to say, well
10   we want to look at 16:54 on camera 7, either for the
11   Government frankly or for the defense, they could do
12   so with this -- with what we put in today as D 1-A.
13                  THE COURT:  Tell me how you would do
14   that.
15                  MS. MEEHAN:  Well, how they would do it
16   in any video case, Your Honor.
17                  THE COURT:  They're in the jury room.
18                  MS. MEEHAN:  Right.
19                  THE COURT:  They want to see an
20   exhibit.
21                  MS. MEEHAN:  Correct.
22                  THE COURT:  What do I do?
23                  MS. MEEHAN:  Well, I don't know, I
24   assume that there's video capacity in the jury room,
25   or they can come out and look at it.  If they said,

Page 62

1  well, we'd like to see this again, they come back in,

2  and it's played for them.  They may not ask to see it,

3  they may not, but if they were to do so because they

4  didn't see it long enough either in the Government's

5  closing, this benefits the Government as well frankly,

6  Your Honor, because it's more specific as to what's

7  going -- which camera the activity is taking place at

8  what time.

9              MR. ECKERT:  I didn't mean to talk out

10  of turn.

11              THE COURT:  Go ahead.

12              MR. ECKERT:  Yeah, so I think there's

13  two possibilities to do it.  The first would be to

14  give them a blind computer that they can play

15  themselves.  The second would be to have to assemble

16  them in open court any time they wanted to watch the

17  video.  I've seen it both ways.  Obviously there's a

18  great deal of video evidence in this case, probably

19  more than your average case.

20              So perhaps if -- I've seen the Court is

21  able to supply them a blank computer, that they are

22  able to put the CD in and play it however they wish.

23  Or they can -- if the Court and counsel prefer they

24  can do it in open court and we would know, you know,

25  which specific portions they wanted played.

Page 63

```
 1                THE COURT:  Well, there's nothing on
 2     the video that they can't see.
 3                MR. ECKERT:  Right.
 4                THE COURT:  They can see everything.
 5                MR. ECKERT:  Right.
 6                THE COURT:  But the question is, and
 7     Ms. Meehan still hasn't quite answered it.  They're in
 8     there and they have this disk and they want to see it.
 9     And how do they do it.  And the way we've done it in
10     the past really we've always called them back.  We
11     don't have a computer facility in the jury room.  But
12     that's time consuming.  It requires you to get down
13     here and I'm not sure that's the best way to proceed.
14                So I want you to be thinking about that
15     and telling me, Judge, here are our exhibits, that's
16     not the end of it.  That doesn't work.  We've got to
17     figure out a way to show the exhibits to the jury.
18     And if there's specific requests, I think we have to
19     limit the requests.  We have to give them what they
20     want and we can't do that by giving them the disk and
21     the computer.
22                MR. ECKERT:  Okay.
23                THE COURT:  So I want you to think this
24     through.  This issue comes up time after time, and I
25     just want you to be thinking about it in the context
```

Page 64

1    of this case.

2                    MR. ECKERT:  Very well, Your Honor.

3                    THE COURT:  Okay.  Next, paragraph 34

4    which is one of the conspiracy instructions, acts and

5    statements of co-conspirators.

6                    I'm looking for it in the page of the

7    charge that you have, it's 42 in my charge.  It should

8    be -- no, it's not.

9        (Court confers with clerk)

10                   THE COURT:  Do you have that charge?

11   Look at the table of contents.

12                   MR. ECKERT:  Yes, Your Honor.

13                   THE COURT:  Conspiracy, acts and

14   statements of co-conspirators.

15                   MR. ECKERT:  I do have that, Your

16   Honor.

17                   THE COURT:  First, look at the

18   italicized part, the bracketed part.  I don't think

19   the first sentence is applicable.  Is anything else in

20   that italicized part relevant to this case?

21                   MR. ECKERT:  I don't believe so, Your

22   Honor.

23                   MR. PATTERSON:  No, Your Honor.

24                   THE COURT:  All right.  We'll delete

25   that.

Page 65

```
 1                    Is there anything else in that charge,
 2      that part of the conspiracy charge to which you
 3      object?
 4                    The Government first.
 5                    MR. ECKERT:  No, Your Honor.
 6                    MR. PATTERSON:  No, Your Honor.
 7                    MR. WITTELS:  No, Your Honor.
 8                    MS. MEEHAN:  Your Honor, I just want to
 9      catch up with the Court.  You're talking about the
10      entire italicized paragraph acts -- that starts "acts
11      done or statements made"?
12                    THE COURT:  Yes.
13                    MS. MEEHAN:  Okay.  No objection.
14                    THE COURT:  To deleting it.  All right.
15      I think we'll go over the entire conspiracy charge.
16                    MR. WITTELS:  Judge, defendants would
17      like to go back, if they may.
18                    MR. PATTERSON:  That's correct, Your
19      Honor.
20                    THE COURT:  To what?
21                    MR. WITTELS:  Defendants do not need to
22      be here for the charging discussion and they'd like to
23      go back.
24                    THE COURT:  I don't think we're going
25      to discuss anything else.  So I have no problem with
```

1    it if they wish to go back.  They can remain or they

2    can go back.

3                        MR. PATTERSON:  Mr. Smith would prefer

4    to go back.

5                        MR. WITTELS:  As would Mr. Stevens.

6                        THE COURT:  Mr. Quinn?

7                        MS. MEEHAN:  May I have a moment, Your

8    Honor?

9            (Pause)

10                       MR. PATTERSON:  Irrespective of what

11   the other defendants wish to do, my client does wish

12   to leave.

13                       THE COURT:  Okay.  Well, thank you.

14   Let's wait until we hear from the other defendants.

15           (Pause)

16                       MS. MEEHAN:  Your Honor, I don't have

17   an answer from Mr. Quinn at the moment, so he might as

18   well just say.

19                       THE COURT:  You're -- I'm sorry?

20                       MS. MEEHAN:  I don't have an answer

21   from Mr. Quinn at the moment.  He --

22                       DEFENDANT QUINN:  Your Honor, we having

23   problems again.  I don't know what's up, but me and my

24   attorney been having problems since this trial been

25   going on.

Page 67

1              THE COURT:  Well, we'll hear about that

2     later and you may -- certainly may remain.  The only

3     issue now is whether you remain to address the -- or

4     just to be present as I rule on the issues presented

5     by the jury charge and some changes that were

6     requested late last night.

7          (Pause)

8              DEFENDANT QUINN:  I don't think I've

9     been adequately represented and I feel like I might

10    need to get on the stand.

11             THE COURT:  You might need what?

12             DEFENDANT QUINN:  I might need to get

13    on the stand to represent myself, because I don't feel

14    like I'm being adequately represented.  My attorney is

15    standoffish to me, I'm not having the proper

16    communications with my attorney nor her assistant.

17             THE COURT:  Well, we'll talk about

18    that.

19             DEFENDANT QUINN:  And I'm hearing

20    chuckles like -- we had -- listen, I wrote you, I

21    wrote the clerk of courts, I expressed that I was

22    having a communication issue with my attorney, we was

23    having a breakdown of communication.  She advised me

24    that, no, trust me, I'm going to work and do this,

25    that, and the third, whatever.  My co-defendants

Page 68

1    wanted to come to trial, so I said okay, well, I bit
2    the bullet.
3              But here, we get up here, and as soon
4    as we get up here, even people that's came and sat in
5    the whatever you call it, the stage, the seats or
6    whatever, they even tell me when I'm calling them and
7    this recorder on the phones from the prison saying
8    that, no, your attorney don't like you.  You can tell
9    how standoffish she is with me.  We having a problem,
10   man.  We having a problem.  I can't -- I don't want to
11   hear no verdict without letting this be on the record.
12             THE COURT:  Well, this was raised some
13   time ago by letters and I directed that Ms. Meehan
14   talk to you and she did and the next time we convened
15   in court there was a status hearing and Ms. Meehan
16   reported that the issues had been resolved.  And I
17   asked you whether the issues had been resolved and you
18   said in open court that they had, and I asked you
19   whether you were satisfied with Ms. Meehan as your
20   attorney and you said you were.
21             And that's where the case ended --
22   that's where that issue ended.  If you have new
23   issues, we'll hear them.  But proceeding pro se is
24   something that requires a fairly lengthy hearing, and
25   it's a little late in the day for that hearing.  But

1    that's something we have to explore and that's quite

2    time consuming.  And that will throw a wrench in the

3    timing that we -- I had just put on the record.

4              I think what we'll do, we'll proceed as

5    I said we would proceed.  We're going to get as much

6    done about the charge.  I'm going to hopefully get off

7    the bench and address the difficult -- the more

8    difficult to resolve issues and reconvene, the

9    lawyers, I don't think we need the defendants to try

10   to finish the charge today.

11             And when I -- I'm going to excuse Mr.

12   Smith and Mr. Stevens, they need not stay.  Because

13   you wish to stay, Mr. Quinn, you may.  At the end of

14   this proceeding, I'll tell you how we have to proceed.

15   I'm going to direct that you and Ms. Meehan talk

16   further on this issue.

17             I can tell you that Ms. Meehan is

18   fighting on your behalf as fiercely as the other

19   defendants.  I'm not going to tell you who's fighting

20   more fiercely, it's up to you to figure that out, but

21   she certainly is on her feet objecting as often as

22   anyone else in the courtroom.  And the long and short

23   of it, I will give you an opportunity to express your

24   view, but as far as proceeding pro se in this case and

25   giving a closing argument pro se, I think you ought to

Page 70

1    think twice about that.

2                    And, Ms. Meehan, I direct that when we

3    recess, that you will keep Mr. Quinn here and I direct

4    that you talk to him on this issue.

5                    MS. MEEHAN:  Certainly, Your Honor.

6                    THE COURT:  If he -- well, I'm not

7    going to go there, but we will have a hearing.

8    There's a colloquy that I must give and I will do that

9    and that's again something we'll have to squeeze into

10   the schedule.

11                   Does the Government have any thoughts

12   on this?

13                   MR. ECKERT:  As far as a pro se

14   colloquy, Your Honor, I would just ask to do that

15   today if we could, but I don't know what the ultimate

16   outcome would be, but given the length of that hearing

17   and with the scheduling, I would just ask that if

18   there's a way to do that today.

19                   THE COURT:  Well, we're not going to do

20   it on Monday.

21                   MR. ECKERT:  Right.

22                   THE COURT:  So we'll have to figure out

23   a way to do it, but I want to get the charge done

24   first.

25                   Well, I think what we'll do is address

Page 71

1    the entire accomplice liability charge.  That's not a

2    very long charge with respect to the challenged part,

3    not right now.  Give me a chance to read, because you

4    didn't give me a chance to read anything last night,

5    and I think I might have one or two questions

6    regarding your proposal and I want to read the entire

7    Pinkerton charge.

8                    Has the Government had any -- I don't

9    want to call them second thoughts, we're up to third,

10   fourth or fifth thoughts about the need for a

11   Pinkerton charge with all the conspiracy instructions

12   that are required?

13                   MR. ECKERT:  We have not, Your Honor.

14                   THE COURT:  All right.

15                   MS. MEEHAN:  Your Honor, may I ask a

16   question.  With respect to the accomplice liability

17   charge, would it -- if I were able to ask Mr. Swietzer

18   (ph) to be here to -- because he and Mr. Zalzner (ph)

19   drafted this.

20                   THE COURT:  You've said that 12 times

21   and the answer is no --

22                   MS. MEEHAN:  Very well.

23                   THE COURT:  -- I'm impressed that the

24   defender and the Government are working on a proposed

25   charge, but I can read the law.

Page 72

1           MS. MEEHAN:  Oh, I understand.

2           THE COURT:  And the problem with the

3    proposed charge is, it's out of sync with this case.

4    It just doesn't work in the context of this case.  And

5    so something has to be done.

6           You say in your agreed upon charge in

7    this case, the Government alleges that Quinn aided and

8    abetted Stevens and Smith in committing the offense of

9    using, carrying, or brandishing a firearm, during and

10   in relation to a crime of violence as charged in the

11   indictment.  That statement is wrong.  The Government

12   charges that Quinn, Stevens and Smith aided and

13   abetted the commission of the crime of using -- I

14   think they say using in the indictment, using and

15   carrying and maybe and brandishing.  But brandishing

16   is not part of the criminal charge.  Brandishing is a

17   sentencing issue.  It must be presented to the jury in

18   order for the Court to enhance a sentence because of

19   brandishing.

20           Am I correct on that, Mr. Eckert?

21           MR. ECKERT:  We agree with the Court.

22           THE COURT:  And so this charge is

23   basically not in sync with the case.  And it escapes

24   me how the Government can say we agree to it, and in

25   the next breath say, that's not our theory of the

Page 73

```
 1   case.
 2                   MS. MEEHAN:  It does to me as well,
 3   Your Honor.  I received this instruction from Mr.
 4   Swietzer, who indicated that this was a joint proposal
 5   with the exception of a single paragraph on page 2 at
 6   the top of the page.
 7                   THE COURT:  I read that paragraph on
 8   page 2.
 9                   MS. MEEHAN:  So -- and I cited the
10   Seventh Circuit case, I haven't had an opportunity to
11   read it, U.S. v Armor (ph), but when there's a break I
12   can take a look at that.  And that had to do with
13   brandishing.  So I wasn't present when these details
14   were ironed out between Mr. Zalzner and Mr. Swietzer,
15   which is why I thought if Mr. Swietzer were available
16   and the Court wanted to hear --
17                   THE COURT:  No, that's not going to
18   help me at all.
19                   MS. MEEHAN:  -- further --
20                   THE COURT:  I'm going to decide --
21                   MS. MEEHAN:  Understood.
22                   THE COURT:  -- the case.
23                   MS. MEEHAN:  Thank you, Your Honor.
24                   THE COURT:  I want to hear from the
25   Government again, are you charging as this agreed upon
```

Page 74

1   instruction reads that Smith and Stevens -- well, let

2   me just look back to you, that Quinn aided and abetted

3   Stevens and Smith in committing the offense?

4                    MR. ECKERT:  Right.  So, Your Honor, I

5   think that we would need to modify the portions of

6   that that would foreclose aiding and abetting

7   liability for Mr. Stevens.  I believe Mr. Stevens can

8   be an aider and abettor of Count II for the store gun.

9                    So -- and I don't know that -- I wasn't

10  part of the conversation, but I would -- excuse me,

11  think we can modify this to fit with the theory of the

12  case, and not necessarily change the law that's

13  proposed but still be able to incorporate the theory

14  that applies to Mr. Stevens.

15                   THE COURT:  Well, that's good.  Tell me

16  how or do you want to think about it?

17                   MR. ECKERT:  I would ask for a minute

18  to speak with the folks in my office about that, Your

19  Honor, but I believe it could be done.

20                   THE COURT:  Well, we're going to try to

21  do that and then reconvene I think this afternoon.  I

22  think that's the way to do it.  I'm just debating

23  about how much time we need, and at the rate the

24  morning is -- the morning is gone.  It's a few minutes

25  of 12.

Page 75

1              Let's reconvene at 2 o'clock.  Lawyers

2    only.

3              MR. PATTERSON:  Your Honor, if I just

4    may address an issue.  I -- and I understand that

5    request for jury instruction is fluid based upon the

6    evidence and the testimony that we heard, and I

7    believe Your Honor said that we're always going to

8    keep the jury charges open.

9              I had originally under I believe maybe

10   the first charging conference, or maybe the second, I

11   said that I withdraw the defense of duress and

12   justification and I have no comment on the duress

13   charge.

14             I do have a comment on the

15   justification charge.  My concern with the elements

16   necessary for that defense would be that my client

17   recklessly placed himself in the position to use of

18   force that was required in the defense of others and

19   himself.

20             The evidence that the jury both saw in

21   the video and heard from at least two witnesses my

22   client's wife was in there, when it was his wife,

23   Joell (ph) and the -- Mr. Sanchez.  And that's his

24   testimony from Mr. Sanchez, I believe, just the three

25   of them in the store and Joell has the gun that we now

Page 76

1    know is loaded at his side.

2                    Testimony further revealed that I

3    believe Joell, and I'm sorry about his last name, was

4    going to lock the door, but Mr. Quinn was coming in.

5    So essentially they were going to lock my client's

6    wife inside the story with Joell with a loaded gun,

7    and there's no dispute that this gun is loaded.

8                    So -- and that was the reason that I

9    asked to withdraw that, both the duress and

10   justification.  But, I mean, I would submit now that

11   the evidence has been heard and its admitted that I

12   believe he has a right to a justification instruction

13   insofar as his wife is concerned.

14                   THE COURT:  What's the position of the

15   Government?

16                   MR. ECKERT:  Your Honor, frankly I'm

17   not prepared for this, because I believe that the

18   request for the instruction would be withdrawn.  I --

19   we presented the case as if that instruction would not

20   be given.  I'd ask for the luncheon recess to review

21   the proposed instructions, as well as the case law on

22   this issue is based on a withdrawal.  I have not

23   reviewed it since the time it was submitted.

24                   MR. PATTERSON:  And again, jury

25   instructions are fluid based on what's going to be

Page 77

1    presented at trial.  And I was having a problem with

2    the reckless element insofar as my client putting

3    himself in this position with respect to Mr. Quinn and

4    Mr. Stevens.

5                    I was given all this discovery and

6    obviously beforehand and you're looking at a lot of

7    discovery.  But when it was focused specifically on

8    his wife being there, how can you recklessly put

9    yourself in a position that may require you to use

10   deadly force when your wife's in a store with a guy

11   with a gun?  And I think the evidence absolutely

12   supports it, so that would be -- and again, I withdrew

13   it because I didn't think it was going to be necessary

14   based upon the timing of me withdrawing it.  And now

15   I'm asking for the Court to put that back into the

16   instruction.

17                    And I provided in my submission prior

18   to the trial starting the justification charge, with

19   the language that I think would be appropriate,

20   placing Mr. Smith's name in the bracketed area.  So

21   there's no bracketed areas on my jury charge for

22   justification.

23                    THE COURT:  All right.  We'll look at

24   that.  And we'll reconvene at 2 o'clock.  Is there

25   anything else?

1          MR. ECKERT:  No, Your Honor.

2          THE COURT:  All right.  Ms. Meehan, do

3    you wish to remain now and talk to Mr. Quinn in the

4    courtroom, is that what you have in mind?

5          MS. MEEHAN:  That seems fine, Your

6    Honor, if Your Honor would permit that.

7          THE COURT:  I will.  What we'll do with

8    respect to everyone else, I don't think the Government

9    needs to remain.  I want all counsel to assemble at 2

10   o'clock in the courtroom.  We're going to address the

11   charge, there might be other issues that come up, but

12   I don't think the defendants are necessary.

13         Mr. Patterson?

14         MR. PATTERSON:  That's correct, Your

15   Honor.  My client would rather just go back for

16   purposes of today.

17         THE COURT:  Mr. Wittels?

18         MR. WITTELS:  Yes, he'll go back.

19         THE COURT:  All right.  Then we'll --

20   let me go off the bench now and you remain.  Senior

21   Marshal, that doesn't present a problem for you, does

22   it?

23         MS. MEEHAN:  I'm happy to see my client

24   in the cell room if it makes it easier for the

25   marshals, Your Honor.

Page 79

```
1                  THE COURT:  Would you rather do it in a
2      cell room?
3                  MS. MEEHAN:  Yes, that's fine.  It's
4      easier for them and that would be fine.  Right?  Yes.
5      Thank you, Your Honor.
6                  THE COURT:  All right.  You've got to
7      know then --
8                  MS. MEEHAN:  Very well.
9                  THE COURT:  -- what your intention is
10     and we'll try to squeeze something in.
11                 MS. MEEHAN:  Very well, thank you, Your
12     Honor.
13                 THE COURT:  I don't want to do it on
14     Monday.
15                 MS. MEEHAN:  Understood.
16                 THE COURT:  And we're running out of
17     time today.  And explain the colloquy that is
18     required.
19                 MS. MEEHAN:  Your Honor, may I have a
20     moment?
21          (Pause)
22                 MS. MEEHAN:  Your Honor, I think where
23     the difficulty has been when there's an abrupt
24     decision to be made as to whether they should stay or
25     go and we're talking about things that Mr. Quinn
```

Page 80

1  obviously is interested in hearing about, for example,

2  the conspiracy charge, it's difficult for him to make

3  that decision on the fly and he felt pressured by me

4  to answer and so we've ironed that out, and I

5  apologize to Mr. Quinn for rushing that.  And I think

6  we're ready to proceed and the Court can colloquy Mr.

7  Quinn now.

8                    THE COURT:  Well, we're not going to

9  give him a Peppers colloquy now.

10                    MS. MEEHAN:  No, no, he wants to

11  proceed with the trial with me as his counsel.

12                    THE COURT:  Is that what you want to

13  do, Mr. Quinn?

14                    DEFENDANT QUINN:  Yes, Your Honor,

15  you'll hear no more from me.

16                    THE COURT:  Are you satisfied with Ms.

17  Meehan as your lawyer?

18                    DEFENDANT QUINN:  As of now, yes.

19                    THE COURT:  Okay.  Fine.  Well then,

20  I'm pleased with that decision.

21                    All right.  With that, we'll recess

22  until 2 o'clock.  You may go about your business.

23        (Recessed at 12:01 p.m.; reconvened at 2:21 p.m.)

24                    THE COURT:  Good afternoon, everyone.

25                    MR. ECKERT:  Good afternoon, Your

Page 81

1   Honor.

2            THE COURT:  Be seated, please.

3            I think we'll be able to get through

4   this rather quickly.  And I think we should start for

5   the record we're conducting what hopefully is the last

6   charging conference in this case and I'm going to make

7   my comments with respect to the January 31st, 2020

8   dated jury charge.

9            I'm going to start with the -- well,

10  I'm going to handle the changes in order, not

11  necessarily in order of importance.  Do you all have

12  copies of that January 31st charge?

13           MR. ECKERT:  We do, Your Honor.

14           THE COURT:  Fine.  First, page 11.  I

15  think I covered this earlier.  I'm going to add the

16  words, and others after defendants in the first line

17  to cover the fact that at least one audio recording is

18  challenged as coming from a defendant.  So we added

19  and others.

20           If there's an issue with regard to

21  anything I say, stop me.  So we'll make that change on

22  page 11.

23           Page 13 because there were so many

24  guns, this charge on chain of custody I think should

25  be amended after the -- stating the description of the

Page 82

```
 1   Glock amended to state that this is referred to as
 2   "store gun".  Any objection to that?
 3                  MR. ECKERT:  I apologize for
 4   interrupting, Your Honor, the chain of custody was
 5   discussed, but I don't know that it was really ever
 6   raised as an issue.
 7                  MR. PATTERSON:  I think I was the only
 8   one that mentioned it, one of the witnesses and that
 9   was not to raise the issue of defect in the chain of
10   custody, so my position would be on behalf of Mr.
11   Smith that I don't believe that charge would be
12   necessary.
13                  THE COURT:  All right.  We'll take it
14   out.
15                  MR. PATTERSON:  I'm going to be
16   mentioning chain of custody to get to a certain point
17   in my closing, but it's not to infer that there was a
18   defect in the chain of custody.
19                  MR. WITTELS:  We don't challenge the
20   chain of custody either.
21                  THE COURT:  So we'll take this out?
22                  MR. WITTELS:  Yes.
23                  MR. PATTERSON:  I believe so.
24                  THE COURT:  Out.  Next with respect to
25   the stipulations I've told you I want stipulations in
```

1   writing by Monday at 9:30.  We're going to change the

2   charge to read, "The Government and the defendants

3   have agreed that certain stipulated facts are true.

4   You should therefore treat those stipulated facts as

5   having been proved.  You are not required to do so,

6   however, since you are the sole judges of the facts."

7                    That's a slight modification to the

8   Third Circuit charge.  Any issues?

9                    MR. ECKERT:  No, Your Honor.

10                   THE COURT:  I want you to -- you don't

11  have to respond each time, I want to hear from you,

12  though, if there are any issues, so we'll make those

13  changes.

14                   Next page 19, defendant's testimony

15  goes out.

16                   Next page 27, Hobbs Act, I think we

17  should change it to Hobbs Act robbery.  I didn't put

18  that -- write that in.  Hobbs Act robbery element 1.

19  Last paragraph.  That charge was written when there

20  was one defendant and one victim and that's not true

21  here.

22                   So I decided to insert, you may have --

23  "You may also consider the relationship between Smith,

24  Stevens and Quinn on the one hand, and Joe Ventura and

25  Sanchez on the other hand."  I think it makes it clear

1    that we're talking about the two groups, the two

2    victims and the three defendants.

3                    Next the accomplice liability charge on

4    page 29 it covers the Hobbs Act robbery.  I thought it

5    would be better in the second paragraph, which now

6    reads, "In this case, the Government alleges that

7    Donnie Smith, Abid Stevens and Maurice Quinn aided and

8    abetted someone," and we have in parens "including one

9    of them."

10                   I thought it might make more sense

11   there to change one of them to each other, including

12   each other.  Any issues.  Mr. Eckert?

13                   MR. ECKERT:  My only concern is that it

14   applies that it would have to be both of them and I

15   think it can be one or the other, Your Honor.

16                   THE COURT:  Yes.  What -- well, first

17   of all, I don't know that I've had an aiding and

18   abetting charge when there are multiple defendants.

19   The Third Circuit instructions were obviously written

20   --

21                   MR. ECKERT:  Right.

22                   THE COURT:  -- for a single defendant

23   and it really is almost torturous to try to work this

24   out, but I want this to be as clear as it can be.

25   What do you think we should say there?  "Donnie Smith,

Page 85

1    Abid Stevens and Maurice Quinn aided and abetted

2    someone."  Including one another?  No.

3                  MR. ECKERT:  Yeah, I guess, Your Honor,

4    we request including one of them just because that

5    makes it clear that it can be one or it doesn't have

6    to be both I guess is more accurately stated.

7                  THE COURT:  I'll hear from the

8    defendants.  Mr. Patterson?

9                  MR. PATTERSON:  Your Honor, I'm trying

10   to figure out a response if I can just defer to a

11   colleague.

12                 MR. WITTELS:  Judge, maybe you want to

13   say at least one of them of the others.  That gives

14   the jury the possibility of finding that all three

15   were involved or that two out of three or maybe only

16   one out of three.

17                 THE COURT:  But they can't aid and abet

18   themselves.

19                 MR. WITTELS:  No, but they could find

20   that there was no aiding and abetting.  But they might

21   find that there was aiding and abetting between two of

22   them, but not three of them.

23                 MS. MEEHAN:  Or you could just say a

24   co-defendant.

25                 MR. ECKERT:  That'll be fine, Your

Page 86

1  Honor.

2                THE COURT:  Yeah, there are two

3  responses here.

4                MR. ECKERT:  Oh, I'm sorry.

5                THE COURT:  What do you think?

6                MR. ECKERT:  I think a co-defendant

7  makes sense, but -- really I don't have any objection

8  to either proposal.  I think they both --

9                THE COURT:  Aided and abetted someone,

10  including a co-defendant.

11                MR. ECKERT:  Right.  I think that Ms.

12  Meehan's proposal makes sense based on --

13                THE COURT:  We seem to have used a

14  little further down before we change that.  Take a

15  look at the second element on that same page, page 29.

16  "That Smith, Stevens and Quinn knew that the offense

17  charge was going to be committed or was being

18  committed by someone," and in parens I have "including

19  one of them."  Should we change that too including a

20  co-defendant?

21                MR. ECKERT:  I would agree.

22                THE COURT:  Yeah, we've used including

23  one of them a number of times.

24                MR. ECKERT:  I think that's clear to

25  say co-defendant.  Not causing anymore work for

Page 87

1    anyone.

2                    MR. WITTELS:  That's fine.

3                    MR. PATTERSON:  That's fine, Your

4    Honor.

5                    THE COURT:  And its sort of obvious in

6    the third element, "That Smith, Stevens and Quinn

7    knowingly did some act for the purpose of aiding or

8    assisting someone," I think including a co-defendant

9    works better, it was so obvious, we didn't think of it

10   though.  And the third -- it appears again in the

11   third element, including a co-defendant.

12                   Okay.  On the next page, page 30, in

13   the middle of the page or a little closer to the top,

14   "If the evidence shows that Donnie Smith, Abid Stevens

15   and Maurice Quinn" is the way it reads now, I think it

16   reads better if it is or Maurice Quinn "knew that the

17   offense was being committed or was about to be

18   committed."  But doesn't that also prove that the

19   Government -- well, let me read the whole thing.

20                   "If the evidence shows that Smith,

21   Stevens," and I think it should read or Quinn, "knew

22   that the offense was being committed or was about to

23   be committed, but does not also prove beyond a

24   reasonable doubt that it was Smith, Stevens or Quinn,"

25   not and Quinn, "Quinn's intent of purpose to aid or

1   assist you may not find Smith, Stevens or Quinn guilty

2   of aiding or abetting."

3                    I think that works better.  And I added

4   at the end of that paragraph.  Well, we have another

5   including one of them.  "The Government must prove

6   beyond a reasonable doubt that Smith, Stevens and

7   Quinn in some way participated in the offense

8   committed by someone," and I think there it works

9   including a co-defendant.  "And something Smith,

10  Stevens and Quinn wished to bring about and to make

11  succeed in order for --" I'm changing this, in order

12  for any of them to be aiders and abettors, to be an

13  aider and abettor.

14                    MS. MEEHAN:  Your Honor, if I may?

15                    THE COURT:  Yes.

16                    MS. MEEHAN:  Just going back to the

17  prior sentence, I'm sorry, it just took a few times to

18  read it.  The line, "If the evidence shows that Donnie

19  Smith, Abid Stevens or Maurice Quinn knew," I think

20  that or makes sense and I think the second or makes

21  sense.  But the third or in that sentence if it's left

22  as an or, I think it reads that one of them didn't

23  have the intent, you can't find any of them guilty.

24                    THE COURT:  Let's see.  I'll read the

25  whole thing.  "If the evidence shows that Smith,

Page 89

1    Stevens or Quinn knew the offense was being committed

2    or was about to be committed, but does not also prove

3    beyond a reasonable doubt that it was Smith, Stevens

4    or Quinn's intent and purpose to aid or assist or

5    otherwise associate themselves with the offense."

6              "You may not find Smith, Stevens --"

7    you think it should be or?

8              MS. MEEHAN:  I don't think it should be

9    or.  My suggestion would actually be to remove Donnie

10   Smith, Abid Stevens and Maurice Quinn all three times

11   and say, if you -- if the evidence shows that an

12   individual defendant knew the offense was going to be

13   committed, was about to be committed, but it's not

14   also proved beyond a reasonable doubt, that it was

15   that defendant's intent or purpose to aid, you may not

16   find that defendant guilty of the offense.

17             THE COURT:  So you would take out

18   Donnie Smith as --

19             MS. MEEHAN:  I would take out the names

20   because I think it implies that you either have to

21   find it's all three or --

22             THE COURT:  Well, that's been the

23   problem with the aiding and abetting charge from the

24   get-go.  Is there any objection to that suggestion?

25   I'll read it back.

Page 90

1                    "If the evidence shows that any

2     defendant knew that the --" an individual defendant,

3     Ms. Meehan?

4                    MS. MEEHAN:  Yes, Your Honor.  Thank

5     you.

6                    THE COURT:  If you find that an

7     individual defendant knew that the offense was being

8     committed or was about to be committed, but does not

9     also prove a beyond reasonable doubt that it was, what

10    do you propose there?

11                   MS. MEEHAN:  That individual

12    defendant's intent.

13                   THE COURT:  That it was.  That can be

14    that defendant's?

15                   MS. MEEHAN:  Sure.

16                   THE COURT:  That it was that

17    defendant's intent and purpose to aid or assist or

18    otherwise associate themselves with the offense, you

19    may not find that defendant.  That's better.  Guilty

20    of the offense as an aider and abettor.

21                   Let's read down.  The Government must

22    prove beyond a reasonable doubt that Smith, Stevens

23    and Quinn in some way participated in the offense

24    committed by someone, including a co-defendant as

25    something Smith, Stevens and Quinn wished to bring

1    about and to make succeed in order for any of them to
2    be an aider and abettor.
3                    MS. MEEHAN:  Your Honor, do you see --
4    I think I see the same problem with that sentence.
5    The Government has to prove beyond a reasonable doubt
6    that an individual defendant in some way participated
7    in the offense committed by someone, including a co-
8    defendant as something that defendant wished to bring
9    about and to make succeed.
10                   Otherwise, I think it runs the risk of
11   saying that we needed to prove that all three of them.
12                   THE COURT:  Yeah, well, that's been a
13   problem in order to convert the Third Circuit charge
14   to one that works in this case.  The Government must
15   prove beyond a reasonable doubt that an individual
16   defendant, in some way participated in the events
17   committed by someone, including a co-defendant as
18   something that individual defendant wished to bring
19   about and to make it succeed in order for that
20   defendant to be an aider and abettor.  Agree?
21                   MR. PATTERSON:  Yes, Your Honor.
22                   MS. MEEHAN:  Yes.
23                   MR. WITTELS:  Yes.
24                   THE COURT:  Anything else in this
25   charge, this paragraph, this next paragraph?

Page 92

1                    I think it's fine.  The next page, 32,
2      at the top of the page we referred to the robbery as
3      robbery, interference with interstate commerce by
4      robbery.  Here, I think it makes more sense to talk
5      about robbery which interfered with interstate
6      commerce.  And I'm going to explain to the jury the
7      first time I reference it.  That I will be referring
8      to the robbery in those ways.  A minor change, bottom
9      of this page the word that after the -- before the
10     first element.
11                   So it reads "That a conspiracy
12     existed."
13                   MS. MEEHAN:  Your Honor, you said to
14     stop you when you were on one of the instructions.
15                   THE COURT:  Yes.
16                   MS. MEEHAN:  I would have a general, I
17     think on behalf of all three defendants an objection
18     to the Pinkerton charge.  While we acknowledge that
19     the Court has the authority when a conspiracy is not
20     charged to instruct the jury under Pinkerton, Your
21     Honor has broad discretion and the reason Your Honor
22     has broad discretion is because the facts of every
23     case are different.
24                   To modify or not give the Pinkerton
25     instruction, because they -- to make sure that the

1  jury's not confused and if the other instructions

2  adequately and fairly cover the issues in the case,

3  and I didn't find a case, Your Honor, where it was

4  specifically oh, this evidence was too weak for the

5  Court to instruct under the Pinkerton theory.  But the

6  general premise that if it's overly confusing and the

7  Court decides in its broad discretion that its less

8  confusing without the Pinkerton instruction, the Court

9  does have authority to do so.

10              THE COURT:  Let me see that case.

11              MS. MEEHAN:  Okay.  Well, the general

12  premise is the Maury case, 690 -- it's U.S. v Maury,

13  and basically the holding is a trial judge retains

14  broad discretion in this regard as long as the Court's

15  instructions fairly and accurately -- adequately,

16  pardon me, submit the issues in the case to the jury

17  and it cites some other case.  And that cite is --

18  it's M-A-U-R-Y, 695 F3d 227 and it's Third Circuit

19  2012.

20              And the third -- there's Third Circuit

21  law, Your Honor, that a jury instruction must be

22  structured in a way, and this is really critical I

23  think in this case, Your Honor, because Your Honor

24  said yesterday this seems spontaneous or words to this

25  effect, and we've all -- and I think Your Honor's

1    instinct about the Pinkerton and then the many, many

2    instructions on conspiracy, Your Honor's initial

3    instinct before any really evidence was fully put

4    before the jury is it's really very confusing in this

5    case because the Government has various theories of

6    liability, whether it's the store gun or whether it's

7    the money from the register.  There's the three

8    defendants.  So Your Honor has the discretion to make

9    the determination that the aiding and abetting, the

10   accomplice liability charge is sufficient to put the

11   issues before the jury and forego giving the Pinkerton

12   charge.

13            So -- and that proposition is U.S. v

14   Johnston -- oh, I'm sorry.  Your Honor, and I'm going

15   to cite to the John Stone case, J-O-H-N, S-T-O-N-E,

16   107 F3d 200 and that's a Third Circuit 1997.  "A jury

17   charge must clearly articulate the relevant legal

18   standards," and then there's an example in U.S. v

19   Schneider, "it must therefore be structured in such a

20   way," and this is really important, "so as to avoid

21   confusing," and that's the key word I would say "or

22   misleading the jury."

23            And I really think, Your Honor, with

24   the numerous conspiracy instructions they will have

25   many, many questions about the jury instructions.  So

1    if it is overly confusing and misleading, the Court

2    can make the determination today that it's really not

3    necessary and it might just be overly confusing for

4    this jury.  I have a general objection on behalf of

5    the three of us.

6                    THE COURT:  Mr. Wittels?

7                    MR. WITTELS:  I agree with that, Judge.

8    And I think we have to go by instinct here about

9    making things too confusing for the jury.

10                    I appreciate the Government wants an

11   alternative theory and prosecution, but if it comes at

12   the cost of completely muddying the waters, then we've

13   lost more than we gained, even from the Government's

14   perspective.

15                    THE COURT:  Mr. Patterson?

16                    MR. PATTERSON:  Judge, I would just

17   concur with the statements just made.  And again, I

18   think the ultimate issue is confusion.  I mean, based

19   upon the evidence that's presented in this charge,

20   it's extremely confusing to the jury and unnecessary.

21                    THE COURT:  Well, I share the thought

22   that the Pinkerton charge in this case is a bit

23   confusing.  But confusing is not a ground for

24   excluding a charge if the charge is warranted under

25   the evidence.  So we have to look to the evidence and

Page 96

1   look to what the Government's position is.

2              I prefer to charge this case, submit it

3   to the jury without Pinkerton because I think it

4   complicates the case.  And any charge this long is

5   complicated.  I've had this issue before, I've

6   persuaded at least one AUSA not to proceed on

7   Pinkerton, and my recollection is because I had so

8   very few acquittals that that case resulted in a

9   conviction.  I don't know whether an aider and abettor

10  was a single defendant or as the principal.

11             But I'm concerned and, Ms. Meehan, I'm

12  going to turn to Mr. Eckert in a moment, but I'm

13  concerned that he's articulated in a very sketchy way

14  the basis for the conspiracy charge.  Is it strong and

15  does it jump out at you, is it the first thing you

16  think of when you hear those facts?  And the answer to

17  all of those questions is no, but is it possible that

18  a conspiracy was formed as Mr. Eckert argues?  I'll

19  let him answer that question.

20             MS. MEEHAN:  Your Honor, may I just add

21  one thing.  Your Honor used the word warranted.  And

22  maybe you could say, well, is it warranted, in a broad

23  sense it could be warranted, it could be warranted in

24  most cases, which is why Your Honor has the last say

25  in this, whether -- with all the evidence that Your

Page 97

1   Honor sat through for these three days, whether it's
2   really the right instruction for the jury under this
3   set of facts, so as not to be overly confusing for
4   them.  And really that's what I think, the fact that
5   Your Honor has the discretion because it's Your
6   Honor's determination, looking at the evidence.
7            Whether it's warranted, with
8   practically very little evidence it could be
9   warranted, but that's when it's most confusing for the
10  jury I would argue.  And that's what Your Honor has
11  pinpointed throughout this case.
12           So I think -- I guess we would be
13  asking the Court to utilize its discretion and forego
14  the Pinkerton and the rest of the conspiracy
15  instruction.
16           MR. ECKERT:  So I would just first I
17  guess respond as a matter of facts, Your Honor.  I
18  believe the evidence of Mr. Stevens observing the
19  argument between -- I hesitate to use the term
20  argument, but hearing the dialogue between Mr. Ventura
21  and the victim, and Mr. Quinn would certainly go his
22  intent.
23           The fact that --
24           THE COURT:  Now, wait a minute we're
25  talking about a conspiracy now, an intent to do what?

1            MR. ECKERT:  Well, right.  So that when

2    Stevens leaves the store and then comes back, clearly

3    there's been something formed.  The fact that all of

4    them are outside the store at a particular point would

5    be enough evidence that they formed an agreement

6    outside which you can infer, based on the fact that

7    when Smith and Stevens enter the store, they both

8    immediately draw their weapons.

9            That does -- I mean, that has to happen

10   for some kind of reason.  I agree it's not the first

11   part of our closing, but it certainly is justified

12   under these facts.

13           I would just in looking at the comment

14   to the model instructions, the Third Circuit has

15   sometimes said that there are three exceptions to the

16   Pinkerton rule, that the substantive offense was not

17   within the scope of the unlawful project.

18           Here, clearly that's the entire purpose

19   of them going in the store.  All three of those

20   gentlemen when they went back in the store was with a

21   singular purpose in mind, which was to get money from

22   Mr. Quinn.

23           The second, the offense was not

24   committed in furtherance of the conspiracy.  Here,

25   absolutely it was, the robbery was to benefit Mr.

1    Quinn as discussed, and then third, that the offense
2    was not reasonably foreseeable to defendants, which is
3    to the defendant, which is belied by the fact that
4    they immediately go in the store, draw their weapons
5    and advance in a group advancing and cornering the
6    victim in the back of the store.
7              So we would submit to the Court, those
8    exceptions don't apply.  And while again it's not the
9    primary theory of liability, there's certainly enough
10   evidence to submit it to the jury for the reasons
11   previously stated.
12             THE COURT:  Even with the aiding and
13   abetting charge?
14             MR. ECKERT:  Yes, Your Honor, because
15   the aiding and abetting it's a separate theory of
16   liability.
17             THE COURT:  Well, they're absolutely
18   separate theories of liability.  And what are you
19   saying, there are three ways of proving this crime.
20             MR. ECKERT:  Correct.
21             THE COURT:  Well, under the evidence
22   presented, although I wish I could rule otherwise, my
23   view is that there's just enough to warrant submitting
24   this theory to the jury.  So we will.
25             MS. MEEHAN:  Just note our continued

Page 100

1    objection and we'll object at the appropriate time.

2                    THE COURT:  Oh, again, let me tell you,

3    so that you know, objections to the charge cannot be

4    preserved, will not be preserved by objecting during

5    the charging conference.

6                    MS. MEEHAN:  Very well.

7                    THE COURT:  I get the impression that

8    you don't like the Pinkerton charge.  Neither do I.

9    But we're not -- I'm not excluding it.

10                   Now what you have to do, after the

11   charge is given, when we go to sidebar, I'll ask the

12   question, any objections to the charge, anything else

13   you wish me to charge and then put your objection --

14                   MS. MEEHAN:  Very well, thank you, Your

15   Honor.

16                   THE COURT:  -- on the record.

17                   I'm at the bottom of page 32.  I'm

18   going to insert a that, but the second element "That

19   while Donnie Smith, Stevens, and Quinn were still

20   members of the conspiracy" we say one or more members

21   of the conspiracy including one of them makes no

22   sense.  In the context of this case, I think we should

23   say one of them committed the offense.  There's no

24   issue that anyone else was involved in the conspiracy.

25                   And the next page, this is taken right

Page 101

1   from the conspiracy charge which I really didn't read

2   that carefully.  I did last night and this morning,

3   however.

4              Third element, that the other members

5   of the conspiracy makes no sense.  So we'll change

6   that to that Smith, Stevens or Quinn.  And there's

7   only one objective, so we'll take objective out.

8              Those are my only comments there.  The

9   next page, entitled these are the elements, elements

10  of conspiracy.  Some modifications.  First, the first

11  element, "That one or more persons agreed to commit an

12  offense against the United States as charged."  I'm

13  going to add in Count I of the indictment.

14             The third element, "That Donnie Smith,

15  Stevens and Quinn joined the agreement or conspiracy

16  knowing its objective to commit an offense against the

17  United States and intending to join together with at

18  least one other alleged conspirator."

19             With at least one other alleged

20  conspirator makes no sense.  It's in the Third Circuit

21  instructions, which were directed to a single

22  defendant case.  And a little further down we'll take

23  out "and at least one other alleged conspirator."  The

24  three conspirators could only be Smith, Stevens and

25  Quinn, so I'm going to make those changes, delete

1  those identical phrases where they appear in the third

2  element.

3          Next I have nothing to change about the

4  existence of an agreement, the first element.  On

5  membership in the agreement, which is page 36 of your

6  copy of the charge, I'm going to take out all of the

7  S's.  It seems there's only a goal or an objective.

8  So we'll make those references singular on page 36.

9          Page 37 same thing.  It will be -- it

10 will read objective singular goals singular.

11         And -- all right.  Page 39 singular,

12 objective will be a singular.  And the second sentence

13 of the second paragraph makes no sense.  It reads,

14 "Also, the Government does not have to prove that

15 Smith, Stevens or Quinn personally committed any of

16 the overt acts."  That's a proper instruction where

17 there's a single defendant and other members of the

18 conspiracy.  So we'll delete that.

19         Page 40, success immaterial.  That's

20 fine.  Conspiracy duration, page 41.  Is it necessary

21 to include that charge?

22         MR. ECKERT:  I don't think so on these

23 facts, Your Honor.

24         THE COURT:  We'll take that out.  The

25 charge on page 42, acts and statements of co-

Page 103

1    conspirator.  Is it all right except for the

2    italicized and bracketed portion, we'll take that out.

3                      Next Count II --

4                      MS. MEEHAN:  So, Your Honor, just for

5    the record, the defense on all three -- on behalf of

6    all three defendants object to any conspiracy charge

7    27, 28, 29, 30, 31, 32, Your Honor omitted 33 --

8                      THE COURT:  Why are you doing this?

9    Why are you doing this now?  You've already told me

10   you're going to object.

11                     MS. MEEHAN:  That's fine, okay.

12                     THE COURT:  I've already told you --

13                     MS. MEEHAN:  Very well.

14                     THE COURT:  -- that objecting now does

15   not constitute an objection on the record.  You've

16   told me that you disagree with the conspiracy charge.

17   We've discussed that, we've addressed that at length.

18                     MS. MEEHAN:  Okay.

19                     THE COURT:  I told you what my view is.

20   My view is that the case would be better tried and it

21   would less chance of error and an increased change

22   that the jury would understand the facts a little

23   quicker and there would be less -- just less

24   possibility of confusion without it.  But I think the

25   Government has pointed to some facts which give rise

1    to the need that if requested the Pinkerton and

2    conspiracy charges should be given.  And that's why

3    I'm there.  But you're not accomplishing anything

4    except spending time when you object to something I've

5    told you you must object to at the end of the charge.

6                    MS. MEEHAN:  Understood.  I just wanted

7    to put the numbers of Your Honor's charge on the

8    record.

9                    THE COURT:  It's very simple.  It's all

10   of the charges dealing with Pinkerton and conspiracy.

11                   MS. MEEHAN:  Understood.

12                   THE COURT:  Next Count II, the using,

13   carrying -- using or carrying a firearm and for the

14   record that's the element.  The crime as set forth in

15   the statute 924(c) reads, using and carrying.  It can

16   be established by proving using or carrying.

17                   The first change I wanted to make was

18   the first element, to take out the and and put in an

19   or.  The first element now reads that Smith, Stevens

20   and Quinn committed the crime of Hobbs Act robbery as

21   charged in Count I of the indictment.  They don't all

22   three have to commit that crime with respect to this

23   crime.  That crime, the crime charged in Count I can

24   be committed by any of them.

25                   So we'll change the and to an or in the

Page 105

1  first element.  Now, Ms. Martin, you're standing and
2  you obviously have something to say.
3              MS. MARTIN:  Your Honor, if I may, I
4  saw your change to the or and I started looking at all
5  of the ands.  I think that everything below the first
6  paragraph we could use -- we could replace Donnie
7  Smith, Abid Stevens and/or Maurice Quinn with
8  individual defendant again.  Because otherwise we have
9  the same problem with the ands that exist in the
10 second element and the third element, and the final --
11 the second to last paragraph.
12             THE COURT:  Second, that during and in
13 relation to the commission of that crime, the robbery
14 an individual defendant used or carried.  What's wrong
15 there with Smith, Stevens and Quinn?  You think that
16 requires proof that all three carried?
17             MS. MARTIN:  I do, Your Honor.  So I
18 originally started changing them to ors and in the
19 abundance of a caution, I wouldn't want a juror to
20 look at those and think that we have to prove that all
21 three of them used or carried.
22             THE COURT:  All right.  Any objection
23 to that from any of the defendants?
24             MR. WITTELS:  No.
25             MR. PATTERSON:  No, Your Honor.

```
 1              THE COURT:  Let's see how it will --
 2   we'll read through right now the first one makes
 3   sense.  An individual defendant knowing used or
 4   carried the firearm.  And then it goes on to explain
 5   use or carry.
 6              The third element that an individual
 7   defendant used or carried.  That makes sense.  No
 8   issue.
 9              Page 44, the top, "In determining
10   whether Smith, Stevens and Quinn," does the Government
11   oppose substituting it there?  I don't think it's
12   necessary there.
13              MS. MARTIN:  I would just change the
14   and to an or, Your Honor.
15              THE COURT:  A little further down.
16              MS. MARTIN:  The same thing.  That how
17   close Donnie Smith, Abid Stevens or Maurice Quinn
18   were.
19              THE COURT:  Last paragraph.  And or or,
20   or individual defendant?
21              MS. MARTIN:  I wonder if it just makes
22   sense to use individual defendant, drop the entire
23   thing to make it consistent, so you don't have a juror
24   wondering why we've named the defendants in certain
25   portions of the charge instead individual defendant in
```

1    the others.

2                      THE COURT:  Oh, I don't think they're

3    going to be thinking that but does it work for

4    everything?

5                      MS. MARTIN:  I believe it does.

6                      THE COURT:  You want to change Smith,

7    Steven and Quinn to an individual defendant each time

8    including in the first element?

9                      MS. MARTIN:  I think that that actually

10   makes sense.  First element naming them and the or, to

11   -- it could be individual defendant but that one seems

12   fine to me.

13                     THE COURT:  All right.  Is there any

14   objection to what Ms. Martin proposed?  I think it

15   might make it a little more clearer.  So everywhere

16   else we'll change it to an individual defendant.

17                     All right.  45 no issues.  And this is

18   the charge that I think is the one to which -- as to

19   which there are the most objections.  First my overall

20   comment, the major difference between what was

21   proposed seemingly as a joint proposal, and what we

22   presented fell into two categories.

23                     First, there's the reference in which

24   the Government is presenting the case and Mr. Eckert

25   has said he's not presenting the case in the way that

Page 108

1   it is presented in the proposed charge.  He's not --

2   well, committed to the course that it was Quinn who

3   aided and abetting Stevens and Smith in using or

4   carrying.  That's the one difference.

5               The second difference relates to given

6   an opportunity to withdraw.  Now, there's some

7   language that has to be tweaked and we'll go over it.

8   But I picked one sentence from the proposed charge and

9   proposed to add it to page, it's 47.

10              First paragraph in the middle.  I'll

11  read what we have and what I propose adding and then

12  we'll go back over the entire charge to tweak it the

13  way we've tweaked the other aiding and abetting

14  charge.

15              And I'm quoting from the middle of the

16  first paragraph on page 47.  "To find that Smith,

17  Stevens and Quinn had advanced knowledge that one of

18  the principals would use or carry a firearm during and

19  in relation to the interference with interstate

20  commerce robbery, you must find that the Government

21  proved that Smith, Stevens and Quinn had knowledge of

22  the firearm at a time when they could do something

23  with that knowledge, such as walking away from the

24  criminal venture."

25              And I propose adding a sentence there.

1  Advanced knowledge beforehand such that Smith, Stevens

2  and Quinn had a realistic opportunity to leave the

3  scene of the robbery after learning that a firearm --

4  no.  Advanced knowledge means knowledge beforehand,

5  such that Smith, Stevens or Quinn had a realistic

6  opportunity to leave the scene of the robbery after

7  learning that a firearm would be used or carried.

8              That is really the essence of the

9  heated argument and how it got heated escapes me that

10  was presented yesterday.  I don't agree with the

11  charge that was presented supposedly by agreement of

12  the Government and the defense.  It's not necessary in

13  this case.

14              The things that Ms. Meehan presented

15  can be raised and can be argued and articulated in any

16  reasonable way in argument.  The instruction is clear,

17  advance knowledge means and sufficient time to enable

18  a defendant to walk away and that's the basic -- well,

19  it's not even a basic difference.  It's a little more

20  expansive in this joint submission, but the joint

21  submission doesn't read like a jury charge and I guess

22  that's because it was drafted by two attorneys.  Even

23  though they're two attorneys who are well known to me

24  and who are just excellent, the two chiefs of appeals.

25              Now, that's the way I propose to argue

1    -- to respond to the arguments that have been raised.

2                    MS. MEEHAN:  Your Honor, with respect -

3    -

4                    THE COURT:  On that issue, on that

5    issue is there any objection?  Is there anything else

6    you wish to say?

7                    MS. MEEHAN:  Well, I do think, Your

8    Honor, if you said quit the robbery rather than leave

9    the scene as was proposed by the two attorneys you

10   just referenced is --

11                   THE COURT:  Quit the robbery is

12   something -- it's a phrase I've never used before.  I

13   took that out.  Does the Government think that's a

14   more clear way of expressing this, and isn't leaving

15   the scene the easier thing to prove?

16                   MR. ECKERT:  No, right, I mean, I think

17   they're similar but leaving the scene here is -- I

18   think they're both accurate.  They mean the same

19   thing, to walk away, to walk out of the store.

20                   THE COURT:  Well, I don't usually --

21                   MR. ECKERT:  No, I'm not suggesting

22   that we charge that specifically, I don't mean to

23   suggest that.  But, no, I think the way the Court

24   phrased it is fine.

25                   THE COURT:  Leave the scene of the

1   robbery is the way I put it.  This is an issue that

2   really impacts the defendants and I want to be sure

3   that we convey it, but I thought this conveyed it a

4   little more clearly than quits the robbery.  That's a

5   phrase that I'm not sure all jurors would understand.

6                 And however I phrase it, the defendants

7   will be able to argue on that issue.  You don't have

8   to use my language.  If you want to use the language

9   quits the robbery in your argument you may.  I thought

10  this was more clear.

11                 MS. MEEHAN:  That's fine, Your Honor.

12  I mean, we --

13                 THE COURT:  We're going back over this

14  charge, minor changes though.

15                 MS. MEEHAN:  Right.

16                 THE COURT:  On page 46, second

17  paragraph, "The Government alleges that Smith, Stevens

18  and Quinn aided and abetted someone including --" and

19  we wondered whether that should be changed to instead

20  of one of them including each other.  We made that

21  change on page 29.  I think we should do the same

22  thing there.

23                 Down to the third element "That Smith,

24  Stevens and Quinn were active participants in a

25  robbery that interfered with interstate commerce."  In

```
                                             Page 112
```

1   -- oh, I read it wrong.  "That Smith, Stevens and

2   Quinn were active participants in using and carrying a

3   firearm during a robbery that interfered with

4   interstate commerce and also had advanced knowledge

5   that one of the principals would use a firearm during

6   and in relation to that robbery."

7               Do you want me to read that again?  Can

8   you read my handwriting?

9               MS. MARTIN:  I think so, Your Honor.

10              THE COURT:  It reads that "Smith,

11  Stevens and Quinn were active participants in using

12  and carrying a firearm --" should that be or, "using

13  or carrying a firearm during a robbery that interfered

14  with interstate commerce and also had advanced

15  knowledge that one of the principals would use a

16  firearm during and in relation to that robbery."  I

17  think that works.

18              In the top -- at the top of the page,

19  "To find that Smith, Stevens and Quinn were active

20  participants in using and carrying a firearm during

21  and in relation to a crime of violence, you must find

22  --" I think that more clearly states what we have

23  there.  And the paragraph I'm going to add or the

24  sentence I'm going to add goes at the end of that

25  first full paragraph.

Page 113

1            About the end, minor changes.  I'm

2   going to include -- well, before I rule, Mr. Patterson

3   asked for a charge on justification.  What's the

4   Government's position?  Is the Government in agreement

5   under the evidence?

6            MR. ECKERT:  I think it makes sense,

7   Your Honor.

8            THE COURT:  I do too.  So you don't

9   have to argue.  And we're going to use the charge from

10  the Third Circuit pattern or model instructions.  I'm

11  not sure, I didn't read yours word-for-word and

12  compare it, I read your charge.  We're going to give

13  Third Circuit charge tailored to this case on

14  justification.

15            MR. PATTERSON:  I believe I just added

16  on -- I used the Third Circuit and just filled in the

17  blanks, but I did put charges in Counts I, II and III.

18  I would remove Count III and to --

19            THE COURT:  Okay.  Yes, you pointed

20  that out.

21     (Court confers with clerk)

22            THE COURT:  The -- Ryan has suggested

23  that we tailor the second aiding and abetting charge

24  in referring to individual defendants to what we

25  decided on Count I, the aiding and abetting charge.

Page 114

1   And I'm getting a nod from the Government.  We'll do
2   that.
3                  MS. MARTIN:  Yes, Your Honor, I
4   absolutely agree with Ryan and I was also -- when the
5   Court's finished I just wanted to revisit that first
6   aiding and abetting instruction for that same reason.
7                  THE COURT:  Well, we're going to do it.
8   Are the changes the same or?
9                  MS. MARTIN:  So --
10                  THE COURT:  Well, let's finish --
11                  MS. MARTIN:  We'll, let's finish.
12                  THE COURT:  -- and then we'll go back.
13                  MS. MARTIN:  I apologize.
14                  THE COURT:  On deliberations.  It's
15  amazing what happens when you read something really
16  carefully.  I found one or two, well, not very many.
17  Page 52, "If you want to see any of the exhibits that
18  were admitted in evidence," I'm going to add the
19  phrase, and not provided to you, "you may send me a
20  message."  I think there's only one, I think it's the
21  gun.  And the verdict form, I'm going to make
22  reference to three verdict forms and I think that's
23  all I have.
24                  Now, let's go back to Count I the
25  aiding and abetting charge and I think we're just

Page 115

1    about finished.

2               MR. WITTELS:  Judge, before we leave

3    the exhibit instruction, can we resolve the videos,

4    including the one, give them a computer to look at the

5    video or if they have to come back in the courtroom

6    asking them about a request.  In discussing it, we all

7    thought it would be best for the jury if they could

8    look at the videos in the jury room.  That way they'd

9    be able to discuss among themselves the video, the

10   evidence if they wanted to.

11       (Court confers with clerk)

12               THE COURT:  We're going to ask Milan

13   Hull (ph) to come in.

14               MR. WITTELS:  Okay.

15               THE COURT:  That's a good idea.  Well,

16   certainly there's more video evidence in this case

17   than in most.  And I think it'll slow things down.  If

18   they want to see something, we've got to get everyone

19   together and provide them with the video.

20               MR. WITTELS:  Yeah, and then --

21               THE COURT:  And replay in the

22   courtroom.

23               MR. WITTELS:  Yeah, and then they have

24   to go back in the jury room to discuss it and it could

25   go into deliberations all next week.

1              THE COURT:  No.  No.  That won't

2    happen.  I hope your prediction is wrong.  Well, while

3    we're waiting on that, Ms. Martin --

4              MS. MARTIN:  Yes, Your Honor.

5              THE COURT:  -- what page?

6              MS. MARTIN:  Page 29.  We made all of

7    those changes using individual defendant on page 30

8    and then when I went back and reread it, my suggestion

9    would be to use individual defendant, goes beyond page

10   29 starting with the second element where it names

11   each of the defendants.  I would just change each of

12   the defendant's name to an individual defendant or the

13   individual defendant through the remainder of the

14   charge.

15             THE COURT:  Ms. Hull, we're concerned

16   about the way in which the jury will be able to view

17   the video footage presented during the trial.  And I

18   think we need Ed Morris, unless you know the answer.

19   We'd like a computer up here.

20             MS. HULL:  I do not know the answer.  I

21   have reached out to Ed and his team and I haven't

22   heard back from him.

23             THE COURT:  You've done it today?

24             MS. HULL:  Yes, yes, yes.

25             THE COURT:  Because he was here at the

1  drop of a hat yesterday when we were concerned with

2  how Mr. Smith was going to participate in the trial if

3  he refused to come to the courtroom.  We were already

4  in the process of hooking up a television

5  communication system in the cell block.

6           Well, let's follow-up with Mr. Morris.

7  I won't keep everyone.  If he calls back before we

8  adjourn tonight, then let us know.  Otherwise, try to

9  get an answer.  We have lots of TV footage and we

10 think the jury will want to see it.  We've practically

11 predicted that they will.

12           MS. HULL:  Right.

13           THE COURT:  And we'd like a computer in

14 there.  They may need someone to explain how it works.

15 But he can do that.  Will you take care of that?

16           MS. HULL:  Yeah.  I vaguely recall this

17 morning in another case, I just (indiscernible).

18           THE COURT:  I don't remember.  But

19 you'll get back to us.  We'd like to have this

20 resolved.  Well, we don't really have to have it

21 resolved, first thing Monday morning, but we have to

22 have it resolved by the time the jury begins

23 deliberations.  That was a good point.

24           All right.  Let's go back to page 29.

25 Ms. Martin.

```
 1                MS. MARTIN:  Yes, Your Honor.  At page
 2    29 starting with the second element where it means the
 3    --
 4                THE COURT:  What about in the beginning
 5    in this case?
 6                MS. MARTIN:  I think that it's okay
 7    because that was alleged in the elements or in the
 8    indictment as aiding and abetting for each of the
 9    defendants, so it names them, which they obviously
10    know their names.  But then when you're talking about
11    the actual elements it makes it clear that it applies
12    to one person at a time.
13                THE COURT:  All right.  So the first
14    element should be that someone --
15                MS. MARTIN:  Correct.
16                THE COURT:  -- and you want to add
17    including an individual defendant?
18                MS. MARTIN:  No, Your Honor, starting
19    with the second element where we have Donnie Smith,
20    Abid Stevens and Maurice Quinn, changed that and every
21    subsequent reference to all three of them to an
22    individual defendant or the individual defendant
23    depending on the sentence.
24                THE COURT:  Well, second element should
25    be that an individual defendant.  Third element, that
```

1    an individual defendant.  Knowingly did some act for

2    the purpose of aiding or assisting someone.  And we

3    have including the co-defendant.  That works.  Both

4    times, co-defendant?  Yes.

5                    Third element -- you can't fool Ms.

6    Hull.

7                    MS. HULL:  I bruised my knee.

8                    THE COURT:  Ms. Martin, are you -- I

9    asked you whether we had to change a co-defendant to

10   an individual defendant as it appears in the rest of

11   the third element.

12                   MS. MARTIN:  For the second and third

13   lines?

14                   THE COURT:  Yes.

15                   MS. MARTIN:  I think a co-defendant as

16   we changed it earlier still makes sense.

17                   THE COURT:  All right.  And in the

18   fourth element?

19                   MS. MARTIN:  The fourth element I would

20   change that to the individual defendant.

21                   THE COURT:  That the?

22                   MS. MARTIN:  To make it clear that

23   you're still referring to the same person or if the

24   Court prefers an individual defendant.

25                   THE COURT:  All right.  Let's read the

Page 120

1    third element.  "That an individual defendant

2    knowingly did some act for the purpose of aiding or

3    assisting someone, including a co-defendant in

4    committing the specific events charged with the

5    offense that someone, including a co-defendant commit

6    that specific offense."

7                    Does that work?

8                    MS. MARTIN:  I think it does, Your

9    Honor.

10                   THE COURT:  And then finally the fourth

11   element.  "That Smith, Stevens and Quinn performed an

12   act in furtherance of the offense charged."

13                   MS. MARTIN:  And I would change that to

14   an individual.

15                   THE COURT:  An individual.  Well, it

16   can be more than one individual defendant.

17                   MS. MARTIN:  Well, we're referring to

18   the same person, correct, so it would be that the

19   individual defendant performed an act in furtherance

20   of the offense charged because you're referring to the

21   aider and abettor.

22                   THE COURT:  Yes.  You see the problem,

23   this charge was designed initially Third Circuit model

24   instructions for a single defendant.  What happens if

25   more than someone is in the guise of the jury guilty

1    of committing the offense.  This is using -- no, we're

2    back to of that robbery.

3                    MS. MARTIN:  Your Honor, that's why my

4    suggestion was to leave that the Government alleges in

5    that second paragraph Donnie Smith, Abid Stevens and

6    Maurice Quinn aided and abetted --

7                    THE COURT:  Okay.

8                    MS. MARTIN:  -- so that they know that

9    it's charged as to all three.

10                   THE COURT:  Okay.  Would it better to

11   just say here that a defendant, looking at the second

12   element, that a defendant or that defendant knew that

13   the offense charged was going to be committed?

14                   MS. MARTIN:  That makes sense to me,

15   Your Honor.

16                   THE COURT:  So that's that --

17                   MS. MARTIN:  A defendant?

18                   THE COURT:  Yes.  That a defendant knew

19   that the offense was going to be committed.

20                   MS. MARTIN:  I think the only issue

21   with that, Your Honor, would be that it's not clear

22   that it has to be the same person --

23                   THE COURT:  No.

24                   MS. MARTIN:  -- for the second, third

25   and fourth elements.

Page 122

1            THE COURT:  You're right.

2            Well maybe we should change the

3     paragraph that reads in order to find Smith, Stevens.

4     Well we used a disjunctive, or Quinn.

5            MS. MARTIN:  Yes.

6            THE COURT:  I was thinking maybe we

7     should change that to that a defendant.  We've

8     referred to Smith, Stevens and Quinn in the preceding

9     paragraph.

10            MS. MARTIN:  I think that would work.

11            THE COURT:  In order to find one of

12    them because you refer to them by name in the

13    preceding sentence.  Guilty of Hobbs Act robbery

14    because they -- because he aided and abetted someone.

15    Maybe that should read a co-defendant.

16            Let's read this whole second paragraph.

17    "In this case, the Government alleges that Smith,

18    Stevens and Quinn aided and abetted someone, including

19    a co-defendant, in committing the act of Hobbs Act

20    robbery as charged.  In order to find -- maybe we

21    should take out Smith, Stevens or Quinn, in order to

22    find a defendant guilty of Hobbs Act robbery because

23    they aided and abetted someone in committing the

24    offense, you must find the Government proved.  Maybe

25    we should just say that the defendant committed the

Page 123

1   offense, that a defendant, that someone, including one

2   of the defendants committed the offense.

3                    And then in the next paragraph, that

4   the defendant knew that the offense charged was going

5   to be committed.  The third element that the defendant

6   knowingly did some act.

7                    MS. MARTIN:  Your Honor, I'm about

8   three-fourths of the way through the rest of the

9   instruction.  I think that that works.

10                   THE COURT:  Well, what we'll do, I

11  think we'll be able to finish this tonight.  We're

12  going to get a copy of the charge to you over the

13  weekend, to everyone, and if there are any comments on

14  this we can certainly pick them up -- pick up on them

15  on Monday.  So let's go back.

16                   In order to find, instead of Smith,

17  Stevens or Quinn, a defendant, guilty of Hobbs Act

18  robbery, and then the first element, that someone

19  including one of the defendants.  And I think this

20  should read that the defendant knew that the offense

21  charged was going to be committed or was about to be

22  committed by someone.

23                   Now, were we including the co-

24  defendant.  Third, that the defendant knowing he did

25  some act for the purpose of aiding or abetting, or

1    assisting someone, including a co-defendant, that

2    works there, in committing the offense charged, and

3    with the intent that someone including a co-defendant

4    commit the specific offense charge.

5                    And then I guess -- I think we should

6    go back to the defendant again.  Now, this works.  Do

7    we have to change anything else?

8                    MS. MARTIN:  Your Honor, it appears to

9    me that we would change it to the defendant for the

10   rest of the instruction unless that's what you meant.

11                   THE COURT:  Starting where?

12                   MS. MARTIN:  On page 30.

13                   THE COURT:  Yes.

14                   MS. MARTIN:  Starting whether.

15                   THE COURT:  Change it to a defendant?

16                   MS. MARTIN:  The defendant.

17                   THE COURT:  Had the required knowledge,

18   et cetera.  You may consider both direct and

19   circumstantial evidence including.  I think this

20   should be the defendants.

21                   MS. MARTIN:  I agree.

22                   THE COURT:  However, evidence that -- I

23   guess it should be the defendant here too.  And again

24   to find the defendant.  And here too, "If the evidence

25   shows that the defendant knew offenses being committed

1    was about to be committed but does not also prove

2    beyond a reasonable doubt that it was that defendant's

3    intent and purpose to aid or assist or otherwise

4    associate themselves you may not find that defendant."

5    That works.  "Guilty of the offense as an aider and

6    abettor.  The Government must prove beyond a

7    reasonable doubt that --" should be the defendant, "in

8    some way participated in the offense committed by

9    someone, including a co-defendant as something that

10   the defendant wished to bring about to make succeed in

11   order for that defendant to be an aider or abettor."

12   I think that works.  What about the last paragraph?

13              MS. MARTIN:  I think the defendant

14   works for all of those as well.  Or in the third

15   reference to the defendants and may be set forth.

16              THE COURT:  To show that the defendant

17   performed an act shows affirmative participation by

18   the defendant.  Which at least encouraged someone

19   including a co-defendant I think.  To commit the

20   offense, that is you must find that the defendant

21   acted in some way, aid or assist someone including a

22   co-defendant to commit the offense.  And the

23   defendants act need not further assist every part.

24              And on the top of page 33, one, the

25   defendants.  We've massacred this charge.  I think

Page 126

1    what I'm going to do, I'm not sure about these -- this

2    group on the left, but I'm charging with Ms. Martin

3    and I don't know what plans you've made for this

4    weekend, I'm going to read this charge, you're going

5    to read this charge, you're going -- emerging as the

6    grammarian in the group, but your closing that's a

7    little unfair.  That'll give them, the defense, an

8    advantage.

9               What about the last before I drop this

10   issue?  Also Smith, Stevens and Quinn's acts need not

11   themselves be against the law.  I guess to be

12   consistent we should say the defendants.  All of you

13   are going to have to read this again.  I'm not so sure

14   you've read it once.  The comments I got at the end of

15   the day yesterday told me you had not.  But I want you

16   to read it over the weekend.  You'll hear me read it,

17   and I guess the last time to catch any issues is when

18   I read it, but I like the charge to really be error

19   free and for you to agree that it's error free.

20               Now, I hate to do this, do any of the

21   changes we just made on these pages impact what we did

22   with respect to aiding and abetting as charged in

23   Count II?

24               MS. MARTIN:  I wonder, Your Honor, if

25   just using the defendant in that second count would

1   make sense, if there's a way to do the same thing as

2   Your Honor did with the beginning paragraphs.  Page

3   46.

4               THE COURT:  Yeah, I don't think I have

5   to keep you.  We'll do that and we'll get the charge

6   out to you if not tonight then tomorrow.

7               MS. MARTIN:  That second sentence of

8   the paragraph on page 46 reads the same.  So you could

9   change that to the defendant and then change all of

10  the rest of the references to the defendant and they

11  would be consistent.

12              MS. MEEHAN:  I think that's more

13  confusing, Your Honor, to the jurors but.

14              THE COURT:  Why do you say that?

15              MS. MEEHAN:  Because the Government's

16  theories of -- multiple theories of liability are very

17  confusing and I'll just leave it at that.

18              THE COURT:  Well, that's one of the

19  things we agree on.  Well, I think what we'll do,

20  maybe we ought to spend a few more minutes because the

21  two are inconsistent now.  Right now, I think to be

22  consistent I'm in the second paragraph, "The

23  Government alleges that Smith, Stevens and Quinn aided

24  and abetted someone" and we changed it on page 29 to -

25  - instead of including each other, including a co-

Page 128

1    defendant.

2                    And the next sentence reads, "In order

3    to find --" and I think it makes sense, because we did

4    it before, a defendant guilty of using and carrying.

5    Yes, yes, yes.

6                    Using or carrying a firearm during a

7    crime of violence because they aided and abetted

8    someone in committing the offense, you must find the

9    Government's proved -- first sentence is fine.  The

10   second sentence reads -- no, I think it makes sense to

11   change it to a defendant, but I want to work through

12   it.  I don't see where it would unduly prejudice.  I'm

13   looking at what we just did with respect to Count I.

14                   So beginning on page 46, it -- that --

15   the preceding sentence reads -- let me get to the

16   beginning of the sentence.  "In order to find --" and

17   the paragraph -- page 29 reads, changing 46 to read, a

18   defendant guilty of using or carrying, and then it

19   goes on.  First, that someone including one of the

20   defendants committed one of the offense charged.

21   Second -- now we changed the second element to read

22   that -- and I think it should read, we're talking

23   about in order to prove -- let me get to the beginning

24   of that.

25                   In order to prove a defendant, so we're

1    talking about establishing reliability of any one of

2    the defendants.  And we're changing -- we're moving

3    from the naming of the defendants to the defendant.

4    So the second element should read that the defendant

5    knew that the offense charged was going to be

6    committed by someone including a co-defendant.

7              I don't see how it will confuse things.

8    We're changing the charge to show the jury, to explain

9    to the jury how they must proceed with respect to

10   finding a defendant guilty of aiding and abetting.

11             And I think it works in any event.  I

12   don't think I need keep you here.  We'll change to a

13   defendant and if there's anything -- any tinkering

14   that needs to be done on Monday morning we'll do it.

15             We can spend a few minutes doing that

16   before the closings.  So we'll have to come back to

17   the thing -- the only thing that we haven't finished

18   is the aiding and abetting charge for Count II.  And

19   the only thing we're talking about changing is

20   deleting reference to the three defendants by name,

21   and talking about a defendant because the lead in to

22   that paragraph reads or a lead in to the elements

23   reads, in order to find a defendant guilty, you must -

24   - the Government must prove beyond a reasonable doubt.

25   And then we proceed.

Page 130

1                Okay.  And you still have an
2    opportunity to object on Monday.  Any issues with
3    them?  We've talked a lot about everything else.
4    We've prepared -- I don't know whether you have -- we
5    haven't updated them, but we'll give you copies now.
6    Give you copies, everyone gets copies of three verdict
7    sheets, Mr. Patterson, you get a fourth.
8                MS. MARTIN:  Thanks.
9                MR. PATTERSON:  Thank you.
10       (Pause)
11               THE COURT:  Any issues with the verdict
12   form?  They're identical, three forms for the three
13   defendants with respect to Counts I and II are
14   identical.  There is a separate verdict form for
15   Stevens on Count III.
16               MS. MEEHAN:  Your Honor, I have my
17   general objection that we discussed the other day,
18   I'll leave it at that.
19               THE COURT:  You better refresh my
20   recollection.
21               MS. MEEHAN:  Your Honor, that was if
22   they find Mr. Quinn not guilty on Count I --
23               THE COURT:  Oh.
24               MS. MEEHAN:  -- they don't move to
25   Count II, but Your Honor indicated that if that were

Page 131

1    happen you might consider setting aside the verdict or
2    we would discuss it.
3                     THE COURT:  Oh, it hasn't been briefed
4    and it is an interesting issue.  And if you press it,
5    it's easy to remedy.  If you're right, we just vacate
6    the or set aside the conviction.  If I don't submit it
7    to the Government and it should have been submitted to
8    the Government, no way to remedy.
9                     MS. MEEHAN:  Very well.
10                    THE COURT:  All right.  But make that
11   objection again at the time of sentencing.
12                    MS. MEEHAN:  Very well.
13                    THE COURT:  Sentencing -- at the time
14   of the charge.
15                    MS. MEEHAN:  Thank you, Your Honor.
16                    THE COURT:  Mr. Patterson?
17                    MR. PATTERSON:  Nothing, Your Honor,
18   thank you.
19                    MR. WITTELS:  I agree with Ms. Meehan
20   and that I agree with Your Honor as to how to handle
21   it.
22                    THE COURT:  All right.  Mr. Eckert?
23                    MR. ECKERT:  I'm fine, Your Honor.
24                    THE COURT:  Is there anything else that
25   we have to do?

Page 132

1            MR. ECKERT:  Not from the Government,
2   Your Honor.
3            MS. MEEHAN:  Your Honor, are we
4   permitted to leave our items over the weekend in the
5   courtroom?
6            THE COURT:  Yes.  Michael will lock the
7   courtroom.  Michael?
8            The answer is you can leave it here.
9            MS. MEEHAN:  Thank you, Your Honor.
10           MR. ECKERT:  Your Honor, may I raise
11   one, it doesn't have anything to do with -- it's
12   something of issue.  I'm supposed to go on military
13   leave on Tuesday night and I would have Ms. Rasolphia
14   (ph), Chief of Violent Crime to be able to replace me
15   during deliberations if the Court would permit that.
16           MR. WITTELS:  No objection.
17           MR. ECKERT:  Ms. Martin will be here as
18   well, I'm sure more than capable of doing whatever it
19   is that I would be doing.  But Mr. Rasolphia certainly
20   offered and directed me to inform the Court, if the
21   Court were to permit it he would be --
22           THE COURT:  I certainly have no
23   objection, but I'm going to remind you as I was
24   reminded, I did this because jury deliberations in a
25   case involving -- I think it was violations of the

Page 133

1   Arms Export Control Act to Iran, I wanted to leave and
2   we checked the -- while the jury was deliberated, and
3   we checked the rules.  The rules require the judge who
4   substitutes be thoroughly familiar with the case.  I
5   don't know that that's actually necessary in this
6   case, but I was shocked.  I learned the rule as I was
7   citing myself on one of the Caribbean Islands where
8   I'd planed to be.  As it turned out the jury did not
9   return a verdict in the five days I was away and they
10  did after I got back.
11              But telescopic, you might take a look
12  at the rule.
13              MR. ECKERT:  I will, Your Honor.  I
14  would just ask that he certainly supervise this case,
15  since from the claims filed against Mr. Quinn -- I
16  mean, not that he's familiar with it as we are, but he
17  is familiar with it, Your Honor, but I'll look up the
18  rule.  I appreciate it.
19              THE COURT:  Right.  But it's not really
20  necessary.  Ms. Martin has been here during the entire
21  trial and she's -- you know, she might assume or
22  ascend to the position of court grammarian if she's
23  found her way through this tortuous issue of
24  transforming a charge designed for a single defendant
25  involving inner play of defendants into one that makes

Page 134

1   sense.  And I think it's beginning to make a little

2   more sense to me.  And I thank you for that.

3              Anything else we have to talk about

4   tonight?

5              MR. ECKERT:  No, Your Honor, thank you.

6              MR. PATTERSON:  No, Your Honor, thank

7   you.

8              MR. WITTELS:  Judge, just by way of

9   it's a small world, I've been looking at Judge

10  Galotner's (ph) portrait, I know you clerked for him,

11  my father and Judge Galotner were on the Philadelphia

12  Record together, a newspaper and he actually married

13  my mother and father back in 1937.

14             THE COURT:  Well, he became a good

15  friend.  I knew his son Phil who's a Trinity brother

16  of mine.  I did not know his other son very well, the

17  one that went on to be I think president of a college

18  or a law school, New England law school.  But the

19  bottom line it was a good clerk-ship.

20             MR. WITTELS:  He was a good man.

21             THE COURT:  We were remarking about

22  offices in the old courthouse.  My office was either

23  the smallest office in the judiciary or the largest

24  closet, it was terrible, absolutely terrible.

25             All right.  On that note, I'm not going

Page 135

1   to keep anyone.  We're in recess until Monday morning

2   at 9:30.  We'll start with closing statements.  How

3   long do you expect to be by the way?

4              MS. MARTIN:  I never want to under-

5   estimate, so I'm going to say an hour, but I think

6   realistically 45 minutes.

7              MR. PATTERSON:  I think with the

8   justification charge, it could increase the time I'm

9   going to be required, probably 40, 35 minutes, 40

10  minutes.

11             MR. WITTELS:  I doubt I'd go over a

12  half an hour, Judge, I don't make long closings.

13             MS. MEEHAN:  40 to 45 minutes, Your

14  Honor.

15             THE COURT:  So we're talking about an

16  hour and a half, two, maybe close to three hours.

17  Hopefully we can finish before lunch.  All right.

18  We're adjourned.

19             ALL:  Thank you, Your Honor.

20             THE COURT:  Have a good weekend.

21             THE CLERK:  All rise.

22  (Proceedings recessed at 3:54 p.m., January 31st,

23  2020, to reconvene at 9:30 a.m., February 3, 2020.)

24                      *  *  *  *  *

25

Page 136

1                       CERTIFICATION

2

3          I, Sheila G. Orms, certify that the

4     foregoing is a correct transcript from the official

5     electronic sound recording of the proceedings in the

6     above-entitled matter.

7

8     _____

9     SHEILA ORMS, APPROVED TRANSCRIPTIONIST

10

11    Dated:  November 4, 2020

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**[& - 6:11]**                                                                 Page 1

| & | |
|---|---|
| **&** | 1:16 |

| **0** | |
|---|---|
| **00350** | 1:3,3,4 |

| **1** | |
|---|---|

**1** 1:3 4:5,7,7 7:4
8:14 9:24 27:15
27:17,21 28:9,14
29:1,11,13 31:3,5
32:5,6,8,9,9,12
34:7,7,8,9,11,13
34:16,17,17,23,23
34:25 35:1,24,25
35:25,25 36:1,4,4
36:5,6,8,13,21,24
59:2,3,10,11,13,16
59:20,23 60:2,2,8
61:7,12 83:18
**1-888-777-6690**
1:25 2:25
**10** 6:25 59:2,4,8
**100** 45:11,13
**107** 94:16
**10:12** 1:6
**10:31:58** 18:22
**10:33:40** 18:22
**10:33:57** 19:3
**10:34:58** 19:3
**10:35:03** 19:7
**10:35:30** 19:7
**10:36:13** 19:25
**10:36:52** 19:25
**10:37:09** 20:10
**10:37:41** 20:10
**11** 7:4 53:25 81:14
81:22
**12** 7:5 28:15,22
33:24 71:20 74:25
**1250** 1:12

**12:01** 80:23
**13** 3:3 28:15,22
34:2 61:4 81:23
**1301** 1:18
**14** 19:17
**1429** 1:17
**14th** 22:11,12
**16:54** 60:25 61:10
**18** 4:4
**1800** 1:24 2:24
**1801** 1:24 2:24
**18045** 1:15
**19** 83:14
**19102** 1:18
**19103** 1:24 2:24
**19106** 1:12 2:5
**1937** 134:13
**1997** 94:16

| **2** | |
|---|---|

**2** 1:3 29:2 32:6
73:5,8 75:1 77:24
78:9 80:22
**20** 3:4
**200** 94:16
**2012** 93:19
**2019** 16:3 18:12
**2020** 1:5 81:7
135:23,23 136:11
**215-686-3128** 16:4
**227** 93:18
**22nd** 16:3 18:12
**23** 3:7
**24** 3:8
**25** 3:9
**26** 3:5
**27** 83:16 103:7
**28** 103:7
**29** 3:11 25:7 41:19
41:25 42:3,7,13
48:14,16 49:9,12
52:5 53:3 84:4

86:15 103:7
111:21 116:6,10
117:24 118:2
127:24 128:17
**2:19** 1:3,3,4
**2:21** 80:23

| **3** | |
|---|---|

**3** 1:4 33:3 135:23
**30** 7:1,16 87:12
103:7 116:7
124:12
**31** 1:5 103:7
**3128** 19:18
**31st** 53:21 81:7,12
135:22
**32** 92:1 100:17
103:7
**33** 103:7 125:24
**34** 4:7 64:3
**35** 135:9
**3513** 1:14
**35th** 22:12
**36** 4:5 18:12 102:5
102:8
**37** 3:10 102:9
**39** 102:11
**3:54** 1:6 135:22
**3rd** 58:19

| **4** | |
|---|---|

**4** 28:15,22 29:18
30:23 31:2,21,22
31:24 33:11,19
136:11
**40** 14:22,25 15:2
102:19 135:9,9,13
**41** 102:20
**42** 3:12 64:7
102:25
**43** 3:12

**44** 106:9
**45** 3:13,14 107:17
135:6,13
**46** 111:16 127:3,8
128:14,17
**47** 3:14 15:17
108:9,16
**48** 3:15
**49** 3:16

| **5** | |
|---|---|

**5** 4:4 5:9 17:6
18:11,13,16,21
19:2,4,6,9,23,24
20:5,9 33:22
**50** 3:16
**52** 3:17 114:17
**53** 3:18 20:3,8
**54** 18:25
**540** 2:3
**55** 19:5,11
**5:30** 37:17
**5:43** 18:12
**5:58** 19:5,11

| **6** | |
|---|---|

**6** 4:7 16:3 20:3,4
27:15 28:10,15,15
28:22 29:11 32:9
32:9,24 33:19
34:1,8,11,13,18
59:3,11,13 60:2
61:2
**600** 48:2,2,4
**601** 2:4
**615** 1:11
**690** 93:12
**695** 93:18
**6:02:41** 19:23
**6:11** 20:3,6

**7**

**7**  28:15,22 33:5,19
54:1,1 59:3,10
61:10
**7:30**  37:19

**8**

**8**  27:24 28:15,22
33:13,18 59:1,4,8
**86**  36:1

**9**

**9**  8:8 59:1,4,8
**911**  4:4 5:9 13:9
13:11,14,16 14:2,3
14:13,13,14,17
16:18 17:20,21
18:1,11,21 19:2,6
19:24 20:9,25
22:2,20 54:11,16
**924**  42:17 104:15
**9:30**  38:4,24 40:5
57:20,22 58:19
83:1 135:2,23

**a**

**a.m.**  1:6 18:22,22
19:3,3,7,7,25,25
20:10,10 135:23
**abet**  85:17
**abetted**  72:8,13
74:2 84:8 85:1
86:9 111:18 121:6
122:14,18,23
127:24 128:7
**abetting**  6:20 7:10
9:5 10:23,25
42:17 44:24 51:12
53:14 55:11 74:6
84:18 85:20,21
88:2 89:23 94:9
99:13,15 108:3,13
113:23,25 114:6

114:25 118:8
123:25 126:22
129:10,18
**abettor**  11:2 51:6
74:8 88:13 90:20
91:2,20 96:9
120:21 125:6,11
**abettors**  88:12
**abid**  1:5 84:7 85:1
87:14 88:19 89:10
105:7 106:17
118:20 121:5
**able**  9:2 62:21,22
71:17 74:13 81:3
111:7 115:9
116:16 123:11
132:14
**abrupt**  79:23
**absolutely**  10:5
77:11 98:25 99:17
114:4 134:24
**abundance**  105:19
**accept**  38:15
**acceptable**  54:19
54:22
**accomplice**  42:16
71:1,16 84:3
94:10
**accomplish**  53:5
**accomplishing**
104:3
**accurate**  15:5
110:18
**accurately**  85:6
93:15
**acknowledge**
92:18
**acquired**  31:24
33:5,7,15
**acquittals**  96:8

**act**  45:10 50:10
52:13 83:16,17,18
84:4 87:7 104:20
119:1 120:2,12,19
122:13,19,19,22
123:6,17,25
125:17,23 133:1
**acted**  125:21
**action**  47:15
**active**  111:24
112:2,11,19
**activity**  61:2,3
62:7
**acts**  64:4,13 65:10
65:10 102:16,25
126:10
**actual**  15:13
118:11
**add**  11:14 54:13
81:15 96:20
101:13 108:9
112:23,24 114:18
118:16
**added**  81:18 88:3
113:15
**adding**  11:16
108:11,25
**addition**  51:25
**additional**  23:22
**address**  11:13
67:3 69:7 70:25
75:4 78:10
**addressed**  41:24
103:17
**addresses**  45:6
**addressing**  37:18
37:25
**adequately**  67:9
67:14 93:2,15
**adjourn**  117:8

**adjourned**  135:18
**admit**  57:18
**admitted**  59:2,5
76:11 114:18
**advance**  42:20
99:5 109:17
**advanced**  43:20
44:16 48:15 52:4
108:17 109:1,4
112:4,14
**advancing**  99:5
**advantage**  126:8
**advised**  6:8 67:23
**affirmative**  125:17
**afternoon**  7:24
8:16,17 9:8 38:21
38:22 74:21 80:24
80:25
**agent**  20:1
**ago**  68:13
**agree**  21:13 28:13
52:5 72:21,24
86:21 91:20 95:7
98:10 109:10
114:4 124:21
126:19 127:19
131:19,20
**agreed**  7:10 11:1,8
44:10 72:6 73:25
83:3 101:11
**agreement**  98:5
101:15 102:4,5
109:11 113:4
**ahead**  7:17 18:18
62:11
**aid**  85:17 87:25
89:4,15 90:17
125:3,21
**aided**  18:3 72:7,12
74:2 84:7 85:1
86:9 108:3 111:18

121:6 122:14,18
122:23 127:23
128:7
**aider** 11:2 51:6
74:8 88:13 90:20
91:2,20 96:9
120:21 125:5,11
**aiders** 88:12
**aiding** 6:20 7:10
9:5 10:22,25
42:16 44:24 51:12
53:13 55:10 74:6
84:17 85:20,21
87:7 88:2 89:23
94:9 99:12,15
108:13 113:23,25
114:6,25 118:8
119:2 120:2
123:25 126:22
129:10,18
**al** 26:19
**alleged** 47:2
101:18,19,23
118:7
**allegedly** 47:3
**alleges** 72:7 84:6
111:17 121:4
122:17 127:23
**allow** 46:13
**allowed** 47:16
**alternative** 95:11
**alternatives** 8:9
9:23
**amazing** 114:15
**amended** 81:25
82:1
**america** 1:3
**ample** 45:2 48:18
51:8,23
**ands** 105:5,9

**angles** 27:6,10
**answer** 30:22
60:13 66:17,20
71:21 80:4 96:16
96:19 116:18,20
117:9 132:8
**answered** 63:7
**answers** 20:25
**anticipate** 5:12
**anymore** 13:16
23:21 86:25
**apologetic** 38:18
**apologize** 14:1
17:16 42:6,7 80:5
82:3 114:13
**appeals** 109:24
**appear** 102:1
**appearances** 1:9
2:1
**appeared** 47:23
52:2,25
**appears** 21:16,18
31:21 32:23 33:12
87:10 119:10
124:8
**applicable** 64:19
**applies** 74:14
84:14 118:11
**apply** 99:8
**appreciate** 95:10
133:18
**appropriate** 5:21
77:19 100:1
**approved** 136:9
**area** 77:20
**areas** 77:21
**arguable** 42:25
**argue** 11:23 38:9
46:8 47:25 49:7
50:23 57:13 97:10
109:25 111:7

113:9
**argued** 52:9
109:15
**argues** 96:18
**argument** 24:13
24:17 25:16 29:24
37:11 40:11 41:4
41:11,24 42:12
50:6,12 52:8
69:25 97:19,20
109:9,16 111:9
**arguments** 24:8
37:16 38:8 39:16
110:1
**armor** 73:11
**arms** 133:1
**articulate** 94:17
**articulated** 96:13
109:15
**ascend** 133:22
**ashley** 1:10
**aside** 131:1,6
**asked** 6:21 7:8
8:24 11:3 37:20
68:17,18 76:9
113:3 119:9
**asking** 8:21,22
77:15 97:13 115:6
**asks** 60:14
**assemble** 62:15
78:9
**assigned** 13:9,12
**assignment** 16:17
16:24
**assist** 88:1 89:4
90:17 125:3,21,23
**assistant** 67:16
**assisting** 87:8
119:2 120:3 124:1
**associate** 14:10
89:5 90:18 125:4

**association** 2:2
**assume** 60:20
61:24 133:21
**assuming** 60:14
**atlantic** 1:23 2:23
**atm** 45:14
**attorney** 66:24
67:14,16,22 68:8
68:20
**attorney's** 1:11
**attorneys** 109:22
109:23 110:9
**audio** 13:10 54:2,6
54:8,15 81:17
**ausa** 96:6
**authority** 92:19
93:9
**automatically**
18:5
**available** 29:22,25
30:13 59:8 73:15
**average** 62:19
**avoid** 94:20
**aware** 60:9

**b**

**b** 4:1,4 5:9 15:17
17:6 18:11,13,16
18:21,24 19:2,4,6
19:9,17,23,24 20:3
20:4,5,9 35:25
**back** 7:4 9:8 10:20
17:1 19:12,14,21
40:2 43:14,14
50:4,4,18,22 52:9
58:8,18 62:1
63:10 65:17,23
66:1,2,4 74:2
77:15 78:15,18
88:16 89:25 98:2
98:20 99:6 108:12
111:13 114:12,24

[back - case]

115:5,24 116:8,22
117:7,19,24 121:2
123:15 124:6
129:16 133:10
134:13
**band** 22:11,13
**barnaby** 1:16
**based** 21:15 22:6
22:15 43:19 46:21
54:11 75:5 76:22
76:25 77:14 86:12
95:18 98:6
**bases** 48:12
**basic** 109:18,19
**basically** 9:19,20
72:23 93:13
**basis** 43:3 44:5
47:24 96:14
**beginning** 25:6
37:17 118:4 127:2
128:14,16,23
134:1
**begins** 17:20,21
117:22
**behalf** 17:10,11
20:14 25:3 37:4
53:3 69:18 82:10
92:17 95:4 103:5
**belied** 99:3
**believe** 10:10 45:8
45:21 57:10 59:1
64:21 74:7,19
75:7,9,24 76:3,12
76:17 82:11,23
97:18 107:5
113:15
**believed** 51:19
**bench** 9:22 55:13
69:7 78:20
**benefit** 98:25

**benefits** 62:5
**best** 63:13 115:7
**better** 84:5 87:9
87:16 88:3 90:19
103:20 121:10
130:19
**beyond** 87:23 88:6
89:3,14 90:9,22
91:5,15 116:9
125:2,6 129:24
**bills** 45:13,13
**binder** 27:15
**bit** 24:5 37:7 38:18
68:1 95:22
**blank** 62:21
**blanks** 113:17
**blind** 62:14
**block** 117:5
**body** 49:24
**book** 27:23 28:21
40:15 57:24
**bosses** 16:16
**bottom** 6:24 8:8
92:8 100:17
134:19
**bracketed** 53:8,9
53:12 64:18 77:20
77:21 103:2
**brandished** 43:17
43:22,25 49:4
**brandishing** 42:18
72:9,15,15,16,19
73:13
**break** 73:11
**breakdown** 67:23
**breath** 72:25
**breathe** 10:17
**briefed** 131:3
**briefly** 27:5 50:15
**bring** 16:25 88:10
90:25 91:8,18

125:10
**brings** 57:21
**broad** 92:21,22
93:7,14 96:22
**broadcast** 39:11
39:12
**brother** 134:15
**bruised** 119:7
**bullet** 68:2
**business** 14:21
15:11 80:22

**c**

**c** 1:13,16 5:1 12:22
26:2 35:25 42:17
104:15
**cad** 18:3
**call** 4:4 5:7,9
13:15 14:2,3,13
16:16,16,19,22
17:1,19,21 18:2,12
18:21,24 19:2,6,12
19:14,18,24 20:9
33:22 34:6 40:2
54:11,17 68:5
71:9
**called** 7:10 8:2
40:17 59:16 61:6
63:10
**caller** 16:23
**calling** 14:14 68:6
**calls** 12:13 14:7,10
14:17,23 15:14
16:18 17:3,25
18:1 20:25 22:24
25:19 55:24 56:16
117:7
**camera** 27:6,10,16
29:2,18,18 30:6,8
30:18,22 31:2,21
31:22,24 32:14,24
33:5,13,18,24 34:2

60:10 61:1,2,4,10
62:7
**cameras** 27:11
28:12,15,21 29:23
33:19 61:8
**capable** 132:18
**capacity** 61:24
**car** 48:1,4 49:2
52:25
**care** 38:23 117:15
**carefully** 101:2
114:16
**caribbean** 133:7
**carried** 48:24
105:14,16,21
106:4,7 109:7
**carry** 43:2 106:5
108:18
**carrying** 44:25
46:16 72:9,15
104:13,13,15,16
108:4 112:2,12,13
112:20 128:4,6,18
**case** 6:3 7:8 11:9
15:8 24:6,15,22
26:18,19 34:22
36:16 37:13 38:19
39:2,6,7,9,11 40:3
42:11 44:22 45:2
56:22 59:5 61:16
62:18,19 64:1,20
68:21 69:24 72:3
72:4,7,23 73:1,10
73:22 74:12 76:19
76:21 81:6 84:6
91:14 92:23 93:2
93:3,10,12,16,17
93:23 94:5,15
95:22 96:2,4,8
97:11 100:22
101:22 103:20

107:24,25 109:13
113:13 115:16
117:17 118:5
122:17 132:25
133:4,6,14
**cases**   7:16 24:13
96:24
**cash**   44:3
**casual**   55:21
**catch**   65:9 126:17
**categories**   21:24
107:22
**categorize**   22:4
**categorized**   21:21
**cause**   38:16
**causes**   51:4
**causing**   86:25
**caution**   105:19
**cci**   16:23
**cd**   58:24 59:14
60:11 62:22
**cell**   78:24 79:2
117:5
**center**   2:4 13:15
**certain**   24:9 28:19
29:17 44:20 82:16
83:3 106:24
**certainly**   6:18
43:22 44:21 51:5
55:1 56:25 57:12
67:2 69:21 70:5
97:21 98:11 99:9
115:16 123:14
132:19,22 133:14
**certification**   136:1
**certify**   136:3
**cetera**   124:18
**chain**   81:24 82:4,9
82:16,18,20
**challenge**   82:19

**challenged**   71:2
81:18
**chance**   71:3,4
103:21
**change**   6:16,20
22:24 74:12 81:21
83:1,17 84:11
86:14,19 92:8
101:5 102:3
103:21 104:17,25
105:4 106:13
107:6,16 111:21
116:11 119:9,20
120:13 122:2,7
124:7,9,15 127:9,9
128:11 129:12
**changed**   111:19
118:20 119:16
127:24 128:21
**changes**   67:5
81:10 83:13
101:25 111:14
113:1 114:8 116:7
126:21
**changing**   88:11
105:18 128:17
129:2,8,19
**characterized**
21:21
**charge**   3:18 6:16
6:17,19,21 7:6,10
7:18 8:1,2,6,15
9:3,5,9,11,25
10:13,20,25 11:1,5
11:8,14,16 24:18
37:14,15 39:4,17
39:17,19,21 41:3
41:13,25 42:22
44:9,10,21 46:13
52:13 53:6,7,9,14
53:15,20 54:6,12

55:11 57:3 64:7,7
64:10 65:1,2,15
67:5 69:6,10
70:23 71:1,2,7,11
71:17,25 72:3,6,16
72:22 75:13,15
77:18,21 78:11
80:2 81:8,12,24
82:11 83:2,8,19
84:3,18 86:17
89:23 91:13,25
92:18 94:10,12,17
95:19,22,24,24
96:2,4,14 99:13
100:3,8,11,12,13
101:1 102:6,21,25
103:6,16 104:5,7
106:25 107:18
108:1,8,12,14
109:11,21 110:22
111:14 113:3,9,12
113:13,23,25
114:25 116:14
120:23 123:12
124:4 125:25
126:4,5,18 127:5
129:8,18 131:14
133:24 135:8
**charged**   42:15
49:8 72:10 92:20
101:12 104:21,23
120:4,12,20 121:9
121:13 122:20
123:4,21 124:2
126:22 128:20
129:5
**charges**   72:12
75:8 104:2,10
113:17
**charging**   11:11
12:1 53:16 65:22

73:25 75:10 81:6
100:5 126:2
**chase**   26:24
**checked**   133:2,3
**chestnut**   1:11
**chief**   36:16 132:14
**chiefs**   109:24
**choice**   8:13 9:7
**choices**   7:23
**chuckles**   67:20
**circuit**   11:16
53:10 73:10 83:8
84:19 91:13 93:18
93:20 94:16 98:14
101:20 113:10,13
113:16 120:23
**circumstantial**
43:10 47:24 51:15
124:19
**cite**   93:17 94:15
**cited**   73:9
**cites**   93:17
**citing**   133:7
**city**   38:22
**citywide**   22:13
**civilians**   16:14
**claimed**   45:11
**claims**   133:15
**clear**   50:19 57:16
83:25 84:24 85:5
86:24 109:16
110:14 111:10
118:11 119:22
121:21
**clearer**   107:15
**clearly**   47:13
94:17 98:2,18
111:4 112:22
**clerk**   5:2 12:4,15
12:18 25:21,24
40:6 46:3,20 47:4

53:23 54:3 58:21
64:9 67:21 113:21
115:11 134:19
135:21
**clerked**  134:10
**client**  24:24 46:22
47:2 66:11 75:16
77:2 78:15,23
**client's**  46:1 75:22
76:5
**clients**  38:11
**close**  106:17
135:16
**closer**  87:13
**closet**  134:24
**closing**  24:18
29:23 32:16 38:5
38:8,8,9,12 39:4
39:16 57:13 60:19
60:22 62:5 69:25
82:17 98:11 126:6
135:2
**closings**  7:18,25
9:9,11,24 10:12
37:14,23 129:16
135:12
**cloudy**  38:20
**code**  22:17
**cold**  38:20
**colleague**  85:11
**collectively**  17:6
**college**  134:17
**colloquy**  5:21 70:8
70:14 79:17 80:6
80:9
**come**  7:4 8:5 9:8
19:14 43:16 54:17
61:25 62:1 68:1
78:11 115:5,13
117:3 129:16

**comes**  50:18 63:24
95:11 98:2
**coming**  56:16 76:4
81:18
**comment**  48:20
75:12,14 98:13
107:20
**comments**  81:7
101:8 123:13
126:14
**commerce**  92:3,6
108:20 111:25
112:4,14
**commission**  72:13
105:13
**commit**  101:11,16
104:22 120:5
124:4 125:19,22
**committed**  86:17
86:18 87:17,18,22
87:23 88:8 89:1,2
89:13,13 90:8,8,24
91:7,17 98:24
100:23 102:15
104:20,24 108:2
121:13,19 122:25
123:2,5,21,22
124:25 125:1,8
128:20 129:6
**committing**  72:8
74:3 120:4 121:1
122:19,23 124:2
128:8
**communicating**
14:4
**communication**
14:24 67:22,23
117:5
**communications**
67:16

**company**  1:23
2:23
**compare**  113:12
**compilation**  28:2
34:25 36:6 61:5
**compile**  58:17
**compiled**  59:14
**complainant**
19:21 21:3
**complaining**  47:14
47:18
**complete**  36:22
**completed**  8:15
37:10 39:3 40:24
53:7,7,18
**completely**  95:12
**complicated**  96:5
**complicates**  96:4
**computer**  14:24
18:3 62:14,21
63:11,21 115:4
116:19 117:13
**concern**  75:15
84:13
**concerned**  52:14
54:4,10 76:13
96:11,13 116:15
117:1
**concludes**  23:16
35:19
**conclusion**  6:3
32:4 42:11
**concur**  95:17
**conducting**  81:5
**confederate**  44:14
**confederates**
44:17
**confer**  10:6 58:21
**conference**  3:18
11:12 12:2 75:10
81:6 100:5

**conferred**  5:19
**confers**  53:23 54:3
64:9 113:21
115:11
**confidential**  16:23
**conflict**  7:9 11:5
**confuse**  129:7
**confused**  20:22
93:1
**confusing**  93:6,8
94:4,21 95:1,3,9
95:20,23,23 97:3,9
127:13,17
**confusion**  95:18
103:24
**connection**  26:18
44:25 48:25
**consensual**  54:2,7
**consider**  11:16
83:23 124:18
131:1
**consistent**  106:23
126:12 127:11,22
**conspiracy**  49:17
64:4,13 65:2,15
71:11 80:2 92:11
92:19 94:2,24
96:14,18 97:14,25
98:24 100:20,21
100:24 101:1,5,10
101:15 102:18,20
103:6,16 104:2,10
**conspirator**
101:18,20,23
103:1
**conspirators**  64:5
64:14 101:24
**constitute**  103:15
**consult**  55:6,9
**consultation**  24:24

| | | | |
|---|---|---|---|
| **consuming**  63:12 | 120:18 136:4 | 30:4,7,12,16 31:1 | 90:16 91:12,24 |
| 69:2 | **cosgrove**  2:6 | 31:4,8,12,14,18 | 92:15,19 93:5,7,8 |
| **contact**  19:20 | **cost**  48:2,4 95:12 | 32:4,8,12,19,22 | 93:10 95:1,6,15,21 |
| **contains**  34:7 | **counsel**  10:6 28:24 | 34:9,12,16,20 35:2 | 97:13,24 99:7,12 |
| **contd**  2:1 | 37:20 53:11 57:11 | 35:5,8,11,16,18,21 | 99:17,21 100:2,7 |
| **contents**  39:19,22 | 57:12 62:23 78:9 | 36:8,11,15,20 37:1 | 100:16 102:24 |
| 64:11 | 80:11 | 37:5 40:7,9 41:7 | 103:8,12,14,19 |
| **context**  63:25 72:4 | **count**  6:20 7:11 | 41:10,13,15,17,20 | 104:9,12 105:12 |
| 100:22 | 9:6 10:23 42:13 | 41:22,23 42:2 | 105:22 106:1,15 |
| **continue**  14:1 | 42:14,14,16,21 | 43:3,6 44:6,8 47:8 | 106:19 107:2,6,13 |
| 19:22 | 43:2 44:7 45:6,7,7 | 47:25 48:13,15 | 110:4,11,20,23,25 |
| **continued**  42:25 | 45:16,20 46:10,11 | 50:14 52:3 53:23 | 111:13,16 112:10 |
| 99:25 | 47:7,10,20,20 | 53:24 54:3,4,21,25 | 113:8,19,21,22 |
| **continues**  44:12 | 51:13,14 52:14 | 55:8,16,19 56:3,7 | 114:7,10,12,14 |
| **control**  133:1 | 53:14 74:8 101:13 | 56:9,12,18,20 57:7 | 115:11,12,15,21 |
| **controls**  51:7 | 103:3 104:12,21 | 57:15,18 58:6,9,12 | 116:1,5,15,23,25 |
| **convened**  68:14 | 104:23 113:18,25 | 58:14,16,21,22 | 117:13,18 118:4 |
| **conversation** | 114:24 126:23,25 | 59:2,7,10,13,16,17 | 118:13,16,24 |
| 74:10 | 128:13 129:18 | 59:18,23 60:3,5,6 | 119:8,14,17,21,24 |
| **convert**  91:13 | 130:15,22,25 | 60:12 61:13,17,19 | 119:25 120:10,15 |
| **convey**  111:3 | **counter**  29:2 | 61:22 62:11,16,20 | 120:22 121:7,10 |
| **conveyed**  111:3 | **counts**  25:8 46:15 | 62:23,24 63:1,4,6 | 121:16,18,23 |
| **conviction**  96:9 | 113:17 130:13 | 63:23 64:3,9,10,13 | 122:1,6,11 123:10 |
| 131:6 | **couple**  43:9 | 64:17,24 65:9,12 | 124:11,13,15,17 |
| **copies**  39:18 60:7 | **course**  14:21 | 65:14,20,24 66:6 | 124:22 125:16 |
| 81:12 130:5,6,6 | 15:11 24:17 47:21 | 66:13,19 67:1,11 | 127:4,14,18 |
| **copy**  53:20 102:6 | 51:25 108:2 | 67:17 68:12,15,18 | 130:11,19,23 |
| 123:12 | **court**  1:1,23 2:23 | 70:6,19,22 71:14 | 131:3,10,13,16,22 |
| **cordilas**  3:3 12:14 | 5:3,5,11,15,18,24 | 71:20,23 72:2,18 | 131:24 132:6,15 |
| 12:17,21 13:4,6 | 6:4,10,12,15 8:22 | 72:21,22 73:7,16 | 132:20,21,22 |
| 15:24 19:10 23:15 | 8:24 10:5,8,16 | 73:17,20,22,24 | 133:19,22 134:14 |
| **cornering**  99:5 | 11:21 12:6,9,12,23 | 74:15,20 76:14 | 134:21 135:15,20 |
| **correct**  5:9 14:6,8 | 13:1 15:19,22 | 77:15,23 78:2,7,17 | **court's**  3:13,15,17 |
| 14:11 15:4 21:1,2 | 17:8,10,14,17 | 78:19 79:1,6,9,13 | 93:14 114:5 |
| 21:9,12,19,22,23 | 18:13,18,20 19:1 | 79:16 80:6,8,12,16 | **courthouse**  24:11 |
| 22:1,24 32:11,11 | 20:4,7,13,16 23:5 | 80:19,24 81:2,14 | 134:22 |
| 32:13 33:9,20 | 23:8,12,15,20,23 | 82:13,21,24 83:10 | **courtroom**  40:2 |
| 34:15,19,24 42:10 | 23:25 24:2,14,22 | 84:16,22 85:7,17 | 55:12 69:22 78:4 |
| 43:5 60:1 61:21 | 25:1,9,12,15 26:4 | 86:2,5,9,13,22 | 78:10 115:5,22 |
| 65:18 72:20 78:14 | 27:20,23 28:6,9,19 | 87:5 88:15,24 | 117:3 132:5,7 |
| 99:20 118:15 | 29:4,7,13,15,19,25 | 89:17,22 90:6,13 | |

**courts** 67:21
**cover** 5:8 53:17
  81:17 93:2
**covered** 81:15
**covering** 40:19,25
  50:10 59:24
**covers** 84:4
**cr** 1:3,3,4
**crashed** 48:1 49:2
**crime** 21:21 44:13
  44:16,24 45:1
  72:10,13 99:19
  104:14,20,22,23
  104:23,23 105:13
  112:21 128:7
  132:14
**crimes** 21:25 49:7
**criminal** 25:7
  72:16 108:24
**critical** 93:22
**cross** 3:2 20:13,18
  35:7,9,11
**currently** 13:7
**curtis** 2:4
**custodian** 5:8
**custody** 81:24
  82:4,10,16,18,20
**customary** 24:10
**cut** 26:24

**d**

**d** 3:1 4:7 5:1 12:22
  27:15,15,17,21,24
  28:1,9,10,14,15
  29:1,2 31:3,5 32:5
  32:6,9,9 33:3,11
  33:22 34:1,7,8,9
  34:11,11,13,13,16
  34:17,17 59:2,3,16
  59:19,20,23 60:2,2
  60:8 61:12

**dated** 53:20 81:8
  136:11
**day** 1:7 38:3 46:2
  68:25 126:15
  130:17
**days** 14:22 15:1,2
  56:20 97:1 133:9
**deadly** 77:10
**deal** 62:18
**dealing** 104:10
**deals** 39:11
**dearth** 42:14,19
**debating** 74:22
**decide** 9:1 40:23
  54:18 55:16 73:20
**decided** 54:13
  83:22 113:25
**decides** 93:7
**decision** 79:24
  80:3,20
**defect** 82:9,18
**defendant** 1:6,13
  1:16 2:2 3:8,9,10
  4:6 25:23 34:17
  38:6 44:12,23
  45:23 47:25 54:11
  54:17 66:22 67:8
  67:12,19 80:14,18
  81:18 83:20 84:22
  85:24 86:6,10,20
  86:25 87:8,11
  88:9 89:12,16
  90:2,2,7,19,24
  91:6,8,8,16,17,18
  91:20 96:10 99:3
  101:22 102:17
  105:8,14 106:3,7
  106:20,22,25
  107:7,11,16
  109:18 116:7,9,12
  116:13 118:17,22

118:22,25 119:1,3
119:4,9,10,15,20
119:24 120:1,3,5
120:16,19,24
121:11,12,12,17
121:18 122:7,15
122:19,22,25
123:1,4,5,17,20,24
123:24 124:1,3,6,9
124:15,16,23,24
124:25 125:4,7,9
125:10,11,13,16
125:18,19,20,22
126:25 127:9,10
128:1,4,11,18,25
129:3,4,6,10,13,21
129:23 133:24
**defendant's** 44:15
  83:14 89:15 90:12
  90:14,17 116:12
  125:2
**defendants** 17:8
  38:6 40:22 49:14
  54:8,16 59:21
  65:16,21 66:11,14
  67:25 69:9,19
  78:12 81:16 83:2
  84:2,18 85:8
  92:17 94:8 99:2
  103:6 105:23
  106:24 111:2,6
  113:24 116:11
  118:9 123:2,19
  124:20 125:15,23
  125:25 126:12
  128:20 129:2,3,20
  130:13 133:25
**defender** 2:2
  26:13 71:24
**defenders** 26:9

**defense** 6:7 10:11
  11:14 24:13,16
  25:6,19 27:14
  34:7 37:4 61:11
  75:11,16,18 103:5
  109:12 126:7
**defer** 24:13 85:10
**defined** 47:6
**definition** 46:19
**delete** 64:24
  101:25 102:18
**deleting** 65:14
  129:20
**deliberated** 133:2
**deliberating** 9:14
**deliberation** 46:14
**deliberations** 9:14
  39:5 114:14
  115:25 117:23
  132:15,24
**deliver** 39:17
**demanding** 50:17
**demonstrate** 30:8
**demonstrates**
  45:25
**denial** 49:9
**denied** 45:5,17
  48:17 53:3
**deny** 48:13 52:4
**department** 13:9
  16:9,13
**dependent** 53:8
**depending** 18:5
  118:23
**describe** 30:18
**described** 36:22
**description** 81:25
**designed** 120:23
  133:24
**desk** 16:8,14,15,22
  19:18

**details**  73:13
**detectives**  13:18
**determination**
  94:9 95:2 97:6
**determine**  44:19
**determining**  106:9
**dialogue**  97:20
**diametrically**  7:9
**difference**  36:3,3
  107:20 108:4,5
  109:19
**different**  9:20 27:6
  27:10,11,15 28:11
  28:21 32:15 37:16
  49:13 60:24 61:3
  61:7 92:23
**differentiated**
  30:6
**differentiates**
  32:14
**difficult**  69:7,8
  80:2
**difficulty**  79:23
**diffuse**  50:1
**direct**  3:2 13:2
  26:6 47:21 52:1
  57:22 61:1 69:15
  70:2,3 124:18
**directed**  68:13
  101:21 132:20
**directly**  22:9
**directs**  51:9
**disagree**  103:16
**disarmed**  46:3
  47:18 48:21 51:1
**disarms**  47:14
**discharge**  46:6
**discovery**  77:5,7
**discretion**  92:21
  92:22 93:7,14
  94:8 97:5,13

**discuss**  39:2 65:25
  115:9,24 131:2
**discussed**  82:5
  99:1 103:17
  130:17
**discussing**  115:6
**discussion**  65:22
**disjunctive**  122:4
**disjuncture**  42:24
**disk**  30:9 32:1,4
  33:1,6,17,19,24
  34:4,10,14 60:15
  63:8,20
**dismiss**  42:13
  45:20
**dismissal**  49:12
**dispatch**  13:20,22
  14:6 16:18 17:25
  18:1,3,4,24 21:8
  21:18,20
**dispatched**  13:15
**dispatcher**  13:9,11
  13:14 18:7 19:20
**dispatcher's**  22:25
**dispatchers**  16:13
**dispatches**  14:18
**displayed**  44:13
  45:3
**dispute**  76:7
**dissimulating**
  50:11
**district**  1:1,1,8
  18:5,6 22:9,11
**dixon**  1:16
**doctrine**  43:20
**documents**  40:18
**doing**  7:20,21
  23:23 42:11 55:2
  60:21 103:8,9
  129:15 132:18,19

**donnie**  1:5 24:24
  26:18 84:7,25
  87:14 88:18 89:9
  89:18 100:19
  101:14 105:6
  106:17 118:19
  121:5
**don't**  65:24
**door**  53:1 76:4
**doubt**  87:24 88:6
  89:3,14 90:9,22
  91:5,15 125:2,7
  129:24 135:11
**download**  31:22
**drafted**  71:19
  109:22
**dramatic**  6:20
**dramatically**
  11:15
**draw**  44:17 98:8
  99:4
**drive**  1:14
**drop**  106:22 117:1
  126:9
**dubois**  1:7
**duration**  102:20
**duress**  75:11,12
  76:9
**duties**  26:16

**e**

**e**  1:7,10 3:1 4:1 5:1
  5:1 25:20 26:2
  94:15
**earlier**  19:15
  81:15 119:16
**early**  7:24 9:8
  10:12
**easier**  78:24 79:4
  110:15
**eastern**  1:1

**easton**  1:15
**easy**  131:5
**eckert**  1:10 3:12
  3:14,16 5:10,13,17
  7:8 10:3,14 11:3
  11:20 12:9,11
  23:18,21,24 24:1
  28:3,17 29:9
  34:24 35:6,10,23
  36:5,9,25 41:5,6
  43:6,8 47:8,9
  50:14,15 55:5,15
  55:18 57:5,8,10
  58:4,7 59:4 62:9
  62:12 63:3,5,22
  64:2,12,15,21 65:5
  70:13,21 71:13
  72:20,21 74:4,17
  76:16 78:1 80:25
  81:13 82:3 83:9
  84:12,13,21 85:3
  85:25 86:4,6,11,21
  86:24 96:12,18
  97:16 98:1 99:14
  99:20 102:22
  107:24 110:16,21
  113:6 131:22,23
  132:1,10,17
  133:13 134:5
**ed**  116:18,21
**educate**  7:2
**effect**  47:12 93:25
**effort**  52:6
**either**  8:13 52:18
  57:3 61:10 62:4
  82:20 86:8 89:20
  134:22
**electronic**  136:5
**element**  39:22
  45:22 47:10 77:2
  83:18 86:15 87:6

**[element - facts]**

87:11 92:10
100:18 101:4,11
101:14 102:2,4
104:14,18,19
105:1,10,10 106:6
107:8,10 111:23
116:10 118:2,14
118:19,24,25
119:5,11,18,19
120:1,11 121:12
123:5,18 128:21
129:4
**elements**  46:15,15
75:15 101:9,9
118:7,11 121:25
129:22
**emanuel**  52:19
**emerging**  126:5
**employed**  13:7,8
**employee**  51:8
**enable**  39:19
109:17
**enabled**  48:22
**encouraged**
125:18
**ended**  52:23 68:21
68:22
**england**  134:18
**enhance**  72:18
**enter**  18:2 98:7
**entered**  18:4 49:4
**enters**  43:11
**entire**  28:1,3,6
30:3,14 33:14,18
36:6,21 61:6
65:10,15 71:1,6
98:18 106:22
108:12 133:20
**entirely**  44:18
**entirety**  33:24
34:3

**entitled**  54:2,5,6
101:9 136:6
**error**  103:21
126:18,19
**escalated**  52:7,7
**escapes**  72:23
109:9
**esq**  1:10,10,13,16
2:2
**esr**  2:6
**essence**  9:3 109:8
**essential**  39:21
**essentially**  76:5
**established**  104:16
**establishing**  129:1
**estimate**  135:5
**et**  26:19 124:18
**event**  52:20 56:21
129:11
**events**  46:2 91:16
120:4
**evidence**  5:22 6:2
7:22 8:10 11:25
18:14 24:4,16,25
25:18 28:2,7,14,16
28:20 30:3,14,23
32:7 34:8,13
35:24,25,25 36:1,2
36:13,23 37:10,22
38:9,11 39:3
40:14,18,25 42:15
42:19,22,25 43:10
43:19 44:6 45:2,9
45:15,21,25 46:5,9
46:12,21,23 47:1,5
47:10,20,21 48:18
48:23 49:5,6,16
50:13 51:5,8,15,20
51:23 52:1,10,11
52:12,16,18,21
56:13,13 57:19,24

58:1,25 59:19
62:18 75:6,20
76:11 77:11 87:14
87:20 88:18,25
89:11 90:1 93:4
94:3 95:19,25,25
96:25 97:6,8,18
98:5 99:10,21
113:5 114:18
115:10,16 124:19
124:22,24
**exactly**  18:6 37:8
**examination**  13:2
20:18 26:6 35:7,9
35:11
**examine**  20:13
**example**  40:15
44:1 56:21 80:1
94:18
**excellent**  109:24
**exception**  73:5
**exceptions**  98:15
99:8
**excluding**  95:24
100:9
**excuse**  7:23,24
8:13,17 9:10
10:12 33:16 38:3
69:11 74:10
**excused**  9:24
10:19,19
**excusing**  7:22
**execute**  49:17
**exhausting**  49:5
**exhibit**  5:9 18:11
18:16,21 19:2,6,24
20:9 27:15,20,23
28:21 34:7,17,23
35:24 36:21,23,24
40:12,15,19,24
57:24 59:18,24

60:14 61:20 115:3
**exhibits**  28:9
34:20 35:22 40:13
40:20,20,21,25
57:22,23,25 58:3
58:17,23,24 59:25
63:15,17 114:17
**exist**  105:9
**existed**  92:12
**existence**  102:4
**exited**  46:25
**expansive**  109:20
**expect**  135:3
**expert**  46:17
**explain**  24:7 27:5
27:8 36:2 40:1
79:17 92:6 106:4
117:14 129:8
**explore**  69:1
**export**  133:1
**express**  69:23
**expressed**  67:21
**expressing**  110:14
**extremely**  95:20

**f**

**f3d**  93:18 94:16
**face**  48:8,11
**facetious**  55:1
**facilitate**  50:20
**facilitated**  47:15
**facility**  63:11
**fact**  6:9,11 9:13
11:7 43:15,20
46:17 47:4,6,25
48:20 50:2,22
51:15,21 81:17
97:4,23 98:3,6
99:3
**facts**  44:19 83:3,4
83:6 92:22 96:16
97:3,17 98:12

102:23 103:22,25
**fail** 47:7
**failure** 44:15
**fairly** 68:24 93:2
93:15
**fake** 48:4,10 51:18
**fall** 46:10
**familiar** 15:7,10
15:14 16:5 133:4
133:16,17
**far** 16:4 30:11
52:14 69:24 70:13
**father** 134:11,13
**favor** 38:10
**february** 58:19
135:23
**federal** 25:7 26:9
**feeds** 27:16
**feel** 67:9,13
**feels** 51:21
**feet** 69:21
**fell** 107:22
**felt** 80:3
**fiercely** 69:18,20
**fifth** 71:10
**fighting** 69:18,19
**figure** 63:17 69:20
70:22 85:10
**filed** 133:15
**filled** 113:16
**film** 32:14
**final** 38:24 46:14
105:10
**finally** 20:1 34:1
120:10
**find** 38:10,12
50:11 85:19,21
88:1,23 89:6,16,21
90:6,19 93:3
108:16,20 112:19
112:21 122:3,11

122:20,22,24
123:16 124:24
125:4,20 128:3,8
128:16 129:23
130:22
**finding** 85:14
129:10
**fine** 10:14 31:1,18
35:2 36:20 78:5
79:3,4 80:19
81:14 85:25 87:2
87:3 92:1 102:20
103:11 107:12
110:24 111:11
128:9 131:23
**finish** 7:6 8:15
9:13 53:8 58:20
69:10 114:10,11
123:11 135:17
**finished** 7:7 37:17
37:25 114:5 115:1
129:17
**firearm** 44:25
46:4,4,6,16,18,19
46:19,21 47:4,5,6
47:6 48:24 50:18
51:24 52:2 72:9
104:13 106:4
108:18,22 109:3,7
112:3,5,12,13,16
112:20 128:6
**firearms** 47:2
**first** 8:10 12:1
18:11 25:14 37:16
38:1,5 40:10 42:4
43:9 46:20 47:2
59:20,24,25 62:13
64:17,19 65:4
70:24 75:10 81:14
81:16 84:16 92:7
92:10 96:15 97:16

98:10 101:10,10
102:4 104:17,18
104:19 105:1,5
106:2 107:8,10,19
107:23 108:10,16
112:25 114:5
117:21 118:13
123:18 128:9,19
**fit** 74:11
**fits** 7:19
**five** 1:7 133:9
**fix** 50:3
**fleeing** 51:16
**flexibility** 10:17
**fluid** 75:5 76:25
**fly** 56:14 80:3
**focus** 38:13,16
**focused** 77:7
**folks** 74:18
**follow** 9:1 23:8
117:6
**followed** 24:17
38:7
**following** 49:12
**fool** 119:5
**footage** 27:11
31:24 32:23 33:5
33:13,23 34:2
36:22 116:17
117:9
**force** 75:18 77:10
**foreclose** 74:6
**forego** 94:11 97:13
**foregoing** 136:4
**foreseeable** 99:2
**form** 14:9 45:13
114:21 130:12,14
**formed** 49:16
96:18 98:3,5
**forms** 114:22
130:12

**forth** 104:14
125:15
**found** 42:21 44:23
114:16 133:23
**four** 9:23 26:12
**fourth** 71:10
119:18,19 120:10
121:25 130:7
**fourths** 123:8
**frankly** 61:11 62:5
76:16
**free** 57:12 126:19
126:19
**fresh** 10:12
**friend** 134:15
**front** 19:18 53:1
**full** 12:19 25:25
112:25
**fully** 94:3
**further** 20:12 34:6
35:4 69:16 73:19
76:2 86:14 101:22
106:15 125:23
**furtherance** 98:24
120:12,19

**g**

**g** 5:1 25:20 26:2,2
32:6,8,9,9,12 34:8
36:1,4,4,5,6,8,13
59:19 61:7 136:3
**gained** 95:13
**galotner** 134:11
**galotner's** 134:10
**gaps** 38:19
**garcia** 3:5 25:20
25:23 26:1,2,8
29:6 31:11,15,19
35:18 61:6
**garcia's** 32:4
**gather** 32:8

**general** 13:20
92:16 93:6,11
95:4 130:17
**gentlemen** 98:20
**getting** 114:1
**gisela** 3:5 25:20,23
26:1
**give** 7:5 8:3 9:2
10:16 14:14 16:16
18:7 19:12 21:6
38:25 39:18 44:10
59:8 60:15 62:14
63:19 69:23 70:8
71:3,4 80:9 92:24
103:25 113:12
115:4 126:7 130:5
130:6
**given** 8:6 11:10
43:17 51:22 70:16
76:20 77:5 100:11
104:2 108:5
**gives** 50:23 85:13
**giving** 21:5 52:23
63:20 69:25 94:11
**glock** 48:1,7 82:1
**go** 10:1,20 18:4,6
18:18 22:13 38:5
39:22 40:11 42:23
43:19,23,25 44:6
45:16 46:13 50:24
51:13 58:3,8
62:11 65:15,17,23
66:1,2,4 70:7
78:15,18,20 79:25
80:22 89:24 95:8
97:21 99:4 100:11
108:7,12 114:12
114:24 115:24,25
117:24 123:15
124:6 132:12
135:11

**goal** 9:24 102:7
**goals** 102:10
**goes** 21:7 22:6,10
42:4 83:15 106:4
112:24 116:9
128:19
**going** 7:11 8:4,10
11:15 19:10,12,18
19:19 25:9 29:3
29:19,21 30:17,24
31:5 32:16 38:3
51:23 52:4 53:15
53:16,17 54:23
55:9,10,13 61:3
62:7 65:24 66:25
67:24 69:5,6,11,15
69:19 70:7,19
73:17,20 74:20
75:7 76:4,5,25
77:13 78:10 80:8
81:6,9,10,15 82:15
83:1 86:17 88:16
89:12 92:6 94:14
96:12 98:19
100:18 101:13,25
102:6 103:10
107:3 111:13
112:23,24 113:2,9
113:12 114:7,18
114:21 115:12
117:2 121:13,19
123:4,12,21 126:1
126:4,4,5,13 129:5
132:23 134:25
135:5,9
**good** 5:3,4 7:14
12:6,8,23,24 13:4
13:5 20:20,21
26:4,5 37:6,7 40:7
74:15 80:24,25
115:15 117:23

134:14,19,20
135:20
**gotten** 30:11
**government** 1:10
3:7 5:7 6:8 11:22
11:22,24 12:13
23:19 24:3 27:3
28:1 30:6 33:8,9
33:15,16 34:3,22
35:23 36:21 38:5
40:24 45:8 48:16
52:4,10,23 57:23
58:17 60:8,9,21
61:5,11 62:5 65:4
70:11 71:8,24
72:7,11,24 73:25
76:15 78:8 83:2
84:6 87:19 88:5
90:21 91:5,14
94:5 95:10 102:14
103:25 106:10
107:24 108:20
109:12 110:13
111:17 113:4
114:1 121:4
122:17,24 125:6
127:23 129:24
131:7,8 132:1
**government's** 4:3
6:3 7:7 11:5 12:17
17:6 18:11,16,21
19:2,6,24 20:9
24:4,6,15 34:22
36:16,22,24 37:13
38:7 49:6,15 59:5
62:4 95:13 96:1
113:4 127:15
128:9
**grabs** 40:17
**grammarian**
126:6 133:22

**great** 62:18
**greenberg** 1:17
**grocery** 26:25
29:17 31:23,25
32:24 33:6,7,15
34:3 49:21
**ground** 45:5 95:23
**grounds** 47:19
**group** 10:9 99:5
126:2,6
**groups** 84:1
**guess** 8:7 21:16
34:7 38:21 85:3,6
97:12,17 109:21
124:5,23 126:11
126:17
**guilty** 42:21 44:24
88:1,23 89:16
90:19 120:25
122:13,22 123:17
125:5 128:4,18
129:10,23 130:22
**guise** 120:25
**gun** 42:17,18
44:13 46:24 47:23
48:4,5,6,8,9,10
50:4,12,13,25 51:2
51:4,17,18,22 52:9
52:14,15,16,20,21
52:21,23,24 58:4,7
74:8 75:25 76:6,7
77:11 82:2 94:6
114:21
**guns** 43:17,22,24
45:3 52:17 81:24
**guy** 77:10

**h**

**h** 4:1 94:15
**half** 135:12,16
**hand** 12:16 16:4
25:22 32:3 59:16

60:4 83:24,25
**handle**  9:5 14:24
  14:25 25:10 57:21
  81:10 131:20
**handled**  7:2 55:21
**hands**  51:9
**handwriting**  56:7
  112:8
**hang**  16:25 17:3
**hanging**  7:20
**happen**  43:21 98:9
  116:2 131:1
**happened**  37:6
**happens**  44:4
  49:19 114:15
  120:24
**happy**  57:11,12
  78:23
**hat**  117:1
**hate**  126:20
**he'll**  78:18
**head**  38:23
**hear**  8:9,10,10
  9:25 10:24 11:25
  19:12 24:15,17
  25:16 37:13 40:11
  66:14 67:1 68:11
  68:23 73:16,24
  80:15 83:11 85:7
  96:16 126:16
**heard**  25:9 39:4
  52:8,25 54:8,15
  75:6,21 76:11
  116:22
**hearing**  3:11 7:21
  22:4 67:19 68:15
  68:24,25 70:7,16
  80:1 97:20
**hears**  22:4 50:17
**heated**  109:9,9

**held**  47:2
**help**  20:22 38:13
  40:1 73:18
**hesitate**  97:19
**hobbs**  45:9 52:12
  83:16,17,18 84:4
  104:20 122:13,19
  122:22 123:17
**holding**  93:13
**home**  10:1,25
  38:23
**honor**  5:4,10,14
  5:17,19,25 6:5,6
  10:4,7,15 11:20
  12:8,11,25 15:16
  15:20 17:4,15
  20:6,15,17 23:7,11
  23:13,19 24:21,23
  25:3,5,11,14 27:13
  27:22,25 28:12,13
  28:18,23 29:1,17
  30:2,3,21,23 31:17
  32:5,7 34:6,11,24
  35:6,10,13 36:5,10
  36:14,17,19 41:6,8
  42:1,5,9,12 43:5
  44:5 45:19,20
  47:9 48:12 49:11
  50:15 54:20,22
  55:6,15 56:1,15,15
  57:5 58:5,11,15
  59:1,6,12 60:1,8,8
  60:18 61:16 62:6
  64:2,12,16,22,23
  65:5,6,7,8,19 66:8
  66:16,22 70:5,14
  71:13,15 73:3,23
  74:4,19 75:3,7
  76:16 78:1,6,6,15
  78:25 79:5,12,19
  79:22 80:14 81:1

81:13 82:4 83:9
  84:15 85:3,9 86:1
  87:4 88:14 90:4
  91:3,21 92:13,21
  92:21 93:3,21,23
  93:23 94:8,14,23
  96:20,21,24 97:1,5
  97:10,17 99:14
  100:15 102:23
  103:4,7 105:3,17
  105:25 106:14
  110:2,8 111:11
  112:9 113:7 114:3
  116:4 118:1,18
  120:9 121:3,15,21
  123:7 124:8
  126:24 127:2,13
  130:16,21,25
  131:15,17,20,23
  132:2,3,9,10
  133:13,17 134:5,6
  135:14,19
**honor's**  93:25 94:2
  97:6 104:7
**honorable**  1:7
**hooking**  117:4
**hope**  20:22 116:2
**hopefully**  69:6
  81:5 135:17
**hour**  135:5,12,16
**hours**  8:6 135:16
**hull**  12:2 115:13
  116:15,20,24
  117:12,16 119:6,7

**i**

**idea**  55:19 115:15
**identical**  102:1
  130:12,14
**identified**  19:15
  28:21 40:17

**identify**  33:4
  54:16
**identifying**  49:5
**ii**  6:20 7:11 9:6
  10:23 42:14,14,16
  42:21 43:2 44:7
  45:7,16 46:11
  47:7,20 51:14
  53:14 74:8 103:3
  104:12 113:17
  126:23 129:18
  130:13,25
**iii**  113:17,18
  130:15
**immaterial**  102:19
**immediately**  6:19
  6:21 51:23 98:8
  99:4
**impact**  126:21
**impacts**  54:5
  111:2
**implies**  89:20
**importance**  81:11
**important**  38:13
  94:20
**impressed**  71:23
**impression**  54:10
  100:7
**incident**  14:10
**include**  33:1 44:21
  102:21 113:2
**includes**  27:25
  59:3
**including**  26:19
  84:8,11 85:2,4
  86:10,18,19,22
  87:8,11 88:5,9
  90:24 91:7,17
  100:21 107:8
  111:18,20 115:4
  118:17 119:3

120:3,5 122:18
123:1,19,23 124:1
124:3,19 125:9,19
125:21 127:25,25
128:19 129:6
**inconsistent** 11:9
127:21
**incorporate** 74:13
**increase** 135:8
**increased** 103:21
**independently**
9:17
**indicate** 47:13
**indicated** 73:4
130:25
**indictment** 39:21
72:11,14 101:13
104:21 118:8
**indiscernible**
117:17
**individual** 89:12
90:2,7,11 91:6,15
91:18 105:8,14
106:3,6,20,22,25
107:7,11,16
113:24 116:7,9,12
116:13 118:17,22
118:22,25 119:1
119:10,20,24
120:1,14,15,16,19
**individually** 60:10
**individuals** 16:18
19:11 43:12
**individuate** 30:17
**infer** 44:14 82:17
98:6
**inference** 44:18
**inform** 132:20
**information** 14:15
14:25 16:17,23
17:1 18:2

**initial** 17:19 94:2
**initially** 120:23
**inner** 133:25
**insert** 83:22
100:18
**inside** 76:6
**insofar** 46:1,9
76:13 77:2
**instinct** 94:1,3
95:8
**instruct** 92:20
93:5
**instruction** 10:22
73:3 74:1 75:5
76:12,18,19 77:16
92:25 93:8,21
97:2,15 102:16
109:16 114:6
115:3 123:9
124:10
**instructions** 9:4
38:25 39:14 53:11
64:4 71:11 76:21
76:25 84:19 92:14
93:1,15 94:2,24,25
98:14 101:21
113:10 120:24
**insufficient** 42:22
45:21 46:9,12
47:5
**intending** 101:17
**intends** 5:7
**intent** 47:10,13
50:18,23 87:25
88:23 89:4,15
90:12,17 97:22,25
124:3 125:3
**intention** 79:9
**interested** 80:1
**interesting** 11:4
131:4

**interests** 9:19,20
**interfered** 92:5
111:25 112:3,13
**interference** 92:3
108:19
**internally** 11:9
**interrupt** 59:6
**interrupting** 82:4
**interstate** 92:3,5
108:19 111:25
112:4,14
**intervening** 51:11
**introduced** 45:21
46:12,23
**investigator** 26:15
26:17
**involve** 27:6
**involved** 85:15
100:24
**involving** 132:25
133:25
**iran** 133:1
**ironed** 73:14 80:4
**irrespective** 66:10
**islands** 133:7
**issue** 6:16 29:11
38:16 39:20 52:15
52:22 58:2 60:17
63:24 67:3,22
68:22 69:16 70:4
72:17 75:4 76:22
81:20 82:6,9
95:18 96:5 100:24
106:8 110:4,5
111:1,7 121:20
126:10 131:4
132:12 133:23
**issues** 11:13 24:13
37:18,25 38:14,17
45:7 53:13,16
57:13 67:4 68:16

68:17,23 69:8
78:11 83:8,12
84:12 93:2,16
94:11 107:17
126:17 130:2,11
**it'll** 18:6 26:12
115:17
**italicized** 64:18,20
65:10 103:2
**items** 132:4
**it's** 109:12

**j**

**j** 2:2 94:15
**jan** 1:7
**january** 1:5 53:21
81:7,12 135:22
**jd** 1:3,3,4
**job** 18:7 26:13
**joe** 83:24
**joell** 46:21 75:23
75:25 76:3,6
**john** 94:15
**johnston** 94:14
**join** 47:13 101:17
**joined** 101:15
**joint** 73:4 107:21
109:20,20
**judge** 1:8 7:16
40:1 49:24 63:15
65:16 85:12 93:13
95:7,16 115:2
133:3 134:8,9,11
135:12
**judges** 83:6
**judiciary** 134:23
**jump** 96:15
**juror** 39:15
105:19 106:23
**jurors** 12:8 29:22
32:15 38:12 61:9
111:5 127:13

**jury**   1:7 6:22,24
  7:3,13,13,22 8:6
  8:12,14,17 9:8,10
  9:24 10:1,12,18,19
  12:5 13:6 15:21
  15:25 24:10,11
  27:9 30:1,10,13,24
  36:3,7 38:13
  39:15 40:8 42:23
  43:19,23 44:7
  45:16 46:13 50:24
  51:6,13 52:13
  54:10,18 58:3,18
  59:8 60:14,15
  61:17,24 63:11,17
  67:5 72:17 75:5,8
  75:20 76:24 77:21
  81:8 85:14 92:6
  92:20 93:16,21
  94:4,11,16,22,25
  95:4,9,20 96:3
  97:2,10 99:10,24
  103:22 109:21
  115:7,8,24 116:16
  117:10,22 120:25
  129:8,9 132:24
  133:2,8
**jury's**   31:7 93:1
**justification**   75:12
  75:15 76:10,12
  77:18,22 113:3,14
  135:8
**justified**   98:11

**k**

**keep**   14:20 70:3
  75:8 117:7 127:5
  129:12 135:1
**keeps**   51:2
**kept**   14:22,25
  15:10 48:21

**key**   94:21
**kind**   98:10
**knee**   119:7
**knew**   56:20 86:16
  87:16,21 88:19
  89:1,12 90:2,7
  121:12,18 123:4
  123:20 124:25
  129:5 134:15
**know**   7:15 18:13
  31:17 40:15,21
  56:24 61:23 62:24
  62:24 66:23 70:15
  74:9 76:1 79:7
  82:5 84:17 96:9
  100:3 116:18,20
  117:8 118:10
  121:8 126:3 130:4
  133:5,21 134:10
  134:16
**knowing**   101:16
  106:3 123:24
**knowingly**   45:23
  46:16 87:7 119:1
  120:2 123:6
**knowledge**   42:20
  43:20 44:16 54:9
  108:17,21,23
  109:1,4,4,17 112:4
  112:15 124:17
**known**   109:23

**l**

**l**   12:21,22 25:20
  26:2
**labeled**   60:2
**lacheen**   1:16
**lacking**   11:14
**language**   49:24
  77:19 108:7 111:8
  111:8

**largest**   134:23
**late**   53:19 67:6
  68:25
**law**   1:14 44:22
  71:25 74:12 76:21
  93:21 126:11
  134:18,18
**lawyer**   7:17 80:17
**lawyers**   13:18
  69:9 75:1
**lay**   47:11
**lead**   9:13 129:21
  129:22
**learned**   133:6
**learning**   109:3,7
**leave**   39:15 45:4
  48:3 51:23 55:12
  66:12 109:2,6
  110:8,25 115:2
  121:4 127:17
  130:18 132:4,8,13
  133:1
**leaves**   10:21 37:8
  50:17 98:2
**leaving**   52:24
  110:14,17
**left**   46:24 47:25
  48:1 49:2 52:8
  88:21 126:2
**legal**   37:18 94:17
**length**   70:16
  103:17
**lengthy**   68:24
**letters**   68:13
**letting**   68:11
**liability**   42:16
  71:1,16 74:7 84:3
  94:6,10 99:9,16,18
  127:16
**liked**   37:9

**limit**   63:19
**line**   6:24 8:8 81:16
  88:18 134:19
**lines**   119:13
**list**   36:23 40:12,14
  40:19,24
**listen**   13:16 22:3
  67:20
**listening**   21:10
**listens**   22:23
**little**   6:25 7:4
  10:16 20:22 24:5
  38:18 40:4 53:12
  68:25 86:14 87:13
  97:8 101:22
  103:22 106:15
  107:15 109:19
  111:4 126:7 134:1
**llp**   1:17
**loaded**   46:4 76:1,6
  76:7
**location**   21:6
**lock**   76:4,5 132:6
**long**   5:11 6:12
  26:11 38:2 62:4
  69:22 71:2 93:14
  96:4 135:3,12
**look**   8:1 16:25
  27:17 59:24 60:25
  61:10,25 64:11,17
  73:12 74:2 77:23
  86:15 95:25 96:1
  105:20 115:4,8
  133:11,17
**looked**   52:20
**looking**   16:2 31:19
  64:6 77:6 97:6
  98:13 105:4
  121:11 128:13
  134:9

**lost**  95:13
**lot**  77:6 130:3
**lots**  117:9
**lunch**  135:17
**luncheon**  76:20

**m**

**m**  93:18
**machine**  45:14
**major**  53:13
  107:20
**making**  95:9
**man**  68:10 134:20
**maranna**  2:2
**march**  16:2 18:12
**marked**  17:5
  27:14
**market**  1:24 2:24
**married**  134:12
**marshal**  78:21
**marshals**  78:25
**martin**  1:10 3:3
  12:13,25 13:3
  15:16,20,23 17:4
  17:13,15,18 18:10
  18:17,19,23 19:4,8
  19:22 20:1,5,8,11
  23:12,13,17 105:1
  105:3,17 106:13
  106:16,21 107:5,9
  107:14 112:9
  114:3,9,11,13
  116:3,4,6 117:25
  118:1,6,15,18
  119:8,12,15,19,22
  120:8,13,17 121:3
  121:8,14,17,20,24
  122:5,10 123:7
  124:8,12,14,16,21
  125:13 126:2,24
  127:7 130:8
  132:17 133:20

135:4
**massacred**  125:25
**matter**  97:17
  136:6
**maurice**  1:5 26:19
  37:4 84:7 85:1
  87:15,16 88:19
  89:10 105:7
  106:17 118:20
  121:6
**maury**  93:12,12
**mean**  13:11,12
  24:2 27:9 29:9
  38:15,20 41:18
  46:15 55:22 59:6
  62:9 76:10 95:18
  98:9 110:16,18,22
  111:12 133:16
**means**  24:3 25:12
  38:22 57:24 60:25
  109:4,17 118:2
**meant**  27:9 124:10
**meehan**  2:2 3:5,12
  6:4,5,11,14 8:20
  8:23 23:5,7 25:5
  25:11,13,19 26:7
  27:13,21,25 28:5,8
  28:11,23 29:1,6,14
  29:16,21 30:2,5,9
  30:15,21 31:3,6,9
  31:10,13,16 32:3
  32:11,13,21,25
  33:3,11,22 34:5,10
  34:15,19 35:3
  36:19 37:2,3
  40:13 41:17,18,21
  42:1,5 43:5 44:9
  55:22 56:1,5,8,11
  56:14,19 58:14,15
  58:24 59:1,9,11,15
  59:22 60:1,4,7,13

60:17 61:15,18,21
  61:23 63:7 65:8
  65:13 66:7,16,20
  68:13,15,19 69:15
  69:17 70:2,5
  71:15,22 72:1
  73:2,9,19,21,23
  78:2,5,23 79:3,8
  79:11,15,19,22
  80:10,17 85:23
  88:14,16 89:8,19
  90:3,4,11,15 91:3
  91:22 92:13,16
  93:11 96:11,20
  99:25 100:6,14
  103:4,11,13,18
  104:6,11 109:14
  110:2,7 111:11,15
  127:12,15 130:16
  130:21,24 131:9
  131:12,15,19
  132:3,9 135:13
**meehan's**  8:2
  11:24 86:12
**members**  27:8
  100:20,20 101:4
  102:17
**membership**
  102:5
**mentioned**  82:8
**mentioning**  82:16
**message**  114:20
**michael**  2:6 31:14
  58:23 60:12 132:6
  132:7
**michele**  3:3 12:14
  12:17,21
**microphone**  55:22
**mid**  1:23 2:23
**middle**  87:13
  108:10,15

**milan**  115:12
**military**  132:12
**mind**  57:21 78:4
  98:21
**mine**  134:16
**minor**  92:8 111:14
  113:1
**minute**  74:17
  97:24
**minutes**  5:13 6:14
  7:1 74:24 127:20
  129:15 135:6,9,10
  135:13
**misheard**  41:21
**misleading**  94:22
  95:1
**mistakes**  21:13
**model**  53:10 98:14
  113:10 120:23
**modification**  83:7
**modifications**
  101:10
**modify**  74:5,11
  92:24
**moment**  28:12,24
  31:12 51:18 57:6
  66:7,17,21 79:20
  96:12
**monday**  7:23 8:18
  9:9,10,11,14,25
  10:1,13 37:23
  38:4,24 39:16
  40:4 56:25 57:19
  57:22 70:20 79:14
  83:1 117:21
  123:15 129:14
  130:2 135:1
**money**  44:3 49:19
  50:4,17 94:7
  98:21

**morning**  5:3,4,20
  6:8 7:22 10:13
  11:13 12:6,8,23,24
  13:4,5 20:20,21
  26:4,5 37:24 38:4
  38:21,21 40:4
  57:19,22 74:24,24
  101:2 117:17,21
  129:14 135:1
**morris**  116:18
  117:6
**mother**  134:13
**motion**  3:11 8:12
  25:6 36:13 43:4
  45:5,17 48:13,16
  49:9 52:5 53:3
**motions**  8:11,21
  8:23,25 11:23,25
  25:16,17 37:11,13
  41:4,11,24,25 42:3
**move**  12:1 28:14
  28:16 29:11 34:6
  36:9,13 42:12
  45:20 49:12
  130:24
**moved**  28:20
  35:24
**moving**  34:9 36:8
  129:2
**muddying**  95:12
**multiple**  16:14
  84:18 127:16

**n**

**n**  3:1 5:1 94:15,15
**name**  12:19,20
  25:25 26:1 46:20
  76:3 77:20 116:12
  122:12 129:20
**named**  106:24
**names**  89:19
  116:10 118:9,10

**naming**  107:10
  129:3
**national**  1:23 2:23
**necessarily**  74:12
  81:11
**necessary**  42:8
  75:16 77:13 78:12
  82:12 95:3 102:20
  106:12 109:12
  133:5,20
**need**  14:16 23:1
  40:1,10,11,12
  51:21 53:6,18
  55:1,3 57:2,11
  65:21 67:10,11,12
  69:9,12 71:10
  74:5,23 104:1
  116:18 117:14
  125:23 126:10
  129:12
**needed**  91:11
**needs**  16:19 41:5
  41:10,23 56:24
  78:9 129:14
**neither**  100:8
**never**  35:24 46:24
  55:20 110:12
  135:4
**new**  6:19 8:2
  68:22 134:18
**news**  37:6
**newspaper**  39:10
  134:12
**nicole**  1:10
**night**  8:3,7 24:7
  37:16 38:1 53:19
  60:18 67:6 71:4
  101:2 132:13
**nod**  114:1
**non**  6:8,11

**normal**  14:20
  15:11
**north**  22:11
**nos**  34:17
**note**  28:20 39:25
  40:14 43:13 44:8
  50:24 51:7 99:25
  134:25
**notebooks**  39:15
**noted**  40:14 52:22
  52:23
**notwithstanding**
  11:7
**november**  136:11
**number**  15:15
  16:3,5,10,11,16,20
  17:1 19:15,19
  27:20 29:18 30:23
  31:2 37:16 39:18
  45:22 55:24 86:23
**numbers**  55:25
  104:7
**numerous**  94:24

**o**

**o**  5:1 12:22 94:15
  94:15
**o'clock**  7:4,5,5
  8:14 9:24 75:1
  77:24 78:10 80:22
**object**  44:15 65:3
  100:1 103:6,10
  104:4,5 130:2
**objecting**  69:21
  100:4 103:14
**objection**  17:7,9
  28:17 36:12,18,20
  58:9,13 65:13
  82:2 86:7 89:24
  92:17 95:4 100:1
  100:13 103:15
  105:22 107:14

110:5 130:17
  131:11 132:16,23
**objections**  17:10
  17:11 100:3,12
  107:19
**objective**  101:7,7
  101:16 102:7,10
  102:12
**observing**  97:18
**obtain**  15:3
**obtained**  52:17
**obvious**  87:5,9
**obviously**  51:19
  60:24 62:17 77:6
  80:1 84:19 105:2
  118:9
**occur**  47:17
**occurred**  46:2
**offense**  72:8 74:3
  86:16 87:17,22
  88:7 89:1,5,12,16
  90:7,18,20,23 91:7
  98:16,23 99:1
  100:23 101:12,16
  120:5,6,12,20
  121:1,13,19
  122:24 123:1,2,4
  123:20 124:2,4
  125:5,8,20,22
  128:8,20 129:5
**offenses**  124:25
**offer**  28:3
**offered**  40:20,21
  58:25 59:19
  132:20
**office**  1:11 26:10
  26:14 74:18
  134:22,23
**officers**  13:22 14:4
  16:16 18:8

offices   1:14 134:22
official   136:4
oh   8:7,20 37:3
  56:7,9 60:25 72:1
  86:4 93:4 94:14
  100:2 107:2 112:1
  130:23 131:3
okay   14:20 15:7
  16:1,2,10 17:22
  18:9 19:14 20:24
  21:7,10 22:15,23
  23:4 28:5,8 32:1,3
  54:25 60:3 63:22
  64:3 65:13 66:13
  68:1 80:19 87:12
  93:11 103:11,18
  113:19 115:14
  118:6 121:7,10
  130:1
old   134:22
omitted   103:7
once   18:4 126:14
open   53:1 62:16
  62:24 68:18 75:8
openings   7:18
operations   16:8,14
  16:22
operator   2:6 14:13
  20:25 21:2,3,10
  22:2,20
opportunity   7:5
  8:3 44:1,22 45:4
  69:23 73:10 108:6
  109:2,6 130:2
oppose   106:11
opposed   7:9
option   10:11
orally   39:18
orchulli   20:2
order   49:18 50:11
  72:18 81:10,11

88:11,11 91:1,13
  91:19 122:3,11,20
  122:21 123:16
  125:11 128:2,16
  128:23,25 129:23
originally   75:9
  105:18
orms   136:3,9
ors   105:18
ought   69:25
  127:20
outcome   70:16
outside   43:12,18
  49:17 98:4,6
overall   107:19
overly   93:6 95:1,3
  97:3
overt   102:16

## p

p   5:1
p.m.   1:6 16:3
  18:12 80:23,23
  135:22
pa   1:4,12,15,18,24
  2:5,24
page   53:25 64:6
  73:5,6,8 81:14,22
  81:23 83:14,16
  84:4 86:15,15
  87:12,12,13 92:1,2
  92:9 100:17,25
  101:9 102:5,8,9,11
  102:19,20,25
  106:9 108:9,16
  111:16,21 112:18
  114:17 116:5,6,7,9
  117:24 118:1
  124:12 125:24
  127:2,8,24 128:14
  128:17

pages   126:21
paperwork   13:18
paragraph   54:1
  64:3 65:10 73:5,7
  83:19 84:5 88:4
  91:25,25 102:13
  105:6,11 106:19
  108:10,16 111:17
  112:23,25 121:5
  122:3,9,16 123:3
  125:12 127:8,22
  128:17 129:22
paragraphs   127:2
pardon   6:10 15:20
  58:6,20 93:16
parens   84:8 86:18
part   11:12 26:16
  32:6,9,10 34:8,21
  36:15 49:18 53:9
  54:1 64:18,18,20
  65:2 71:2 72:16
  74:10 98:11
  125:23
participant   45:9
  50:5,6,11
participants
  111:24 112:2,11
  112:20
participate   44:12
  117:2
participated   88:7
  90:23 91:6,16
  125:8
participation   43:1
  46:2 48:19 125:17
particular   14:10
  16:17 39:21 61:2
  98:4
parties   37:10 38:9
  38:14 57:16

parts   53:8
patient   40:4
pattern   113:10
patterson   1:13,14
  3:14 5:18,19 10:7
  10:10 17:9 20:14
  23:9,10 24:19,21
  24:23 35:12,13
  36:14,17 41:7,8,12
  41:14 45:18,19
  48:16 53:22 54:5
  54:18,19,23 58:10
  58:11 64:23 65:6
  65:18 66:3,10
  75:3 76:24 78:13
  78:14 82:7,15,23
  85:8,9 87:3 91:21
  95:15,16 105:25
  113:2,15 130:7,9
  131:16,17 134:6
  135:7
pause   10:2,6 12:3
  28:25 57:9 66:9
  66:15 67:7 79:21
  130:10
payment   45:12
pennsylvania   1:1
people   7:20 14:2
  49:21 68:4
peppers   80:9
perfectly   50:19
perform   26:17
performed   120:11
  120:19 125:17
period   55:23
permissibly   44:14
permit   78:6
  132:15,21
permitted   132:4
person   19:19 48:3
  118:12 119:23

120:18 121:22
**personally**  47:17
  102:15
**persons**  101:11
**perspective**  95:14
**persuaded**  96:6
**pertaining**  16:24
**ph**  46:21 71:18,18
  73:11 75:23
  115:13 132:14
  134:10
**phil**  134:15
**philadelphia**  1:4
  1:12,18,24 2:3,5
  2:24 13:8 16:12
  26:10 134:11
**phone**  15:15,24
  16:3,5,10,11,15,19
  17:23 19:19
**phones**  68:7
**phony**  45:13
**photos**  30:7 36:1
  40:16,16
**phrase**  110:12
  111:5,6 114:19
**phrased**  110:24
**phrases**  102:1
**pick**  123:14,14
**picked**  108:8
**picks**  17:23
**pinkerton**  53:15
  71:7,11 92:18,20
  92:24 93:5,8 94:1
  94:11 95:22 96:3
  96:7 97:14 98:16
  100:8 104:1,10
**pinpointed**  97:11
**place**  50:8 62:7
**placed**  15:17
  46:22 75:17

**placing**  77:20
**plaintiff**  1:3
**plan**  44:17
**planed**  133:8
**plans**  126:3
**play**  17:5,13,19
  18:10,23 19:9
  20:2 30:24 62:14
  62:22 133:25
**played**  18:21 19:2
  19:6,24 20:9 36:7
  62:2,25
**please**  5:5 12:7,15
  12:18,19 14:1
  18:10 19:23 20:2
  25:21,24,25 33:22
  40:1 81:2
**pleased**  80:20
**pleases**  59:17
**plenty**  43:10 55:9
**pocket**  46:22,25
  48:7,10
**point**  22:10 44:2
  46:24 48:11 51:1
  82:16 98:4 117:23
**pointed**  47:3 48:8
  103:25 113:19
**pointing**  51:3
**points**  50:25
**police**  13:8 14:16
  16:8,12 22:8
  31:25 51:20 52:24
  52:25
**portion**  15:17
  18:11,24 19:4,9
  20:2 103:2
**portions**  60:19
  62:25 74:5 106:25
**portrait**  134:10
**position**  11:6
  49:14,20 50:7

75:17 76:14 77:3
  77:9 82:10 96:1
  113:4 133:22
**possession**  46:20
  49:1
**possibilities**  62:13
**possibility**  85:14
  103:24
**possible**  21:13
  96:17
**practically**  97:8
  117:10
**preceding**  122:8
  122:13 128:15
**predicted**  117:11
**prediction**  116:2
**prefer**  62:23 66:3
  96:2
**prefers**  119:24
**prejudice**  128:12
**premise**  93:6,12
**prepared**  76:17
  130:4
**presence**  24:10
**present**  6:2 23:22
  25:17 55:17 56:13
  57:18 67:4 73:13
  78:21
**presentation**  8:2
  58:17
**presented**  6:17
  8:11 10:25 24:9
  24:14 25:18 37:12
  38:1 41:1,5,11
  44:9 45:8 53:11
  58:19 67:4 72:17
  76:19 77:1 95:19
  99:22 107:22
  108:1 109:10,11
  109:14 116:17

**presenting**  24:25
  107:24,25
**presents**  11:4
**preserve**  42:9
**preserved**  100:4,4
**preserving**  25:14
**president**  134:17
**press**  131:4
**pressured**  80:3
**prevents**  51:10
**previously**  27:14
  99:11
**primarily**  7:7
**primary**  99:9
**principal**  96:10
**principals**  11:3
  108:18 112:5,15
**prior**  77:17 88:17
**priority**  22:12
**prison**  68:7
**pro**  68:23 69:24,25
  70:13
**probably**  8:15,16
  38:25 62:18 135:9
**problem**  7:3 14:15
  49:22 50:1,7 52:6
  61:4 65:25 68:9
  68:10 72:2 77:1
  78:21 89:23 91:4
  91:13 105:9
  120:22
**problems**  66:23,24
**procedure**  25:7
**proceed**  8:25 9:7
  11:18,24 12:10
  17:17 24:12,20
  37:21 48:22 63:13
  69:4,5,14 80:6,11
  96:6 129:9,25
**proceeding**  68:23
  69:14,24

**proceedings**
  135:22 136:5
**process**  44:2 117:4
**progress**  22:13,17
  22:18
**project**  98:17
**projectile**  46:7
**proof**  105:16
**proper**  13:18
  67:15 102:16
**property**  50:19,20
**proposal**  10:21
  71:6 73:4 86:8,12
  107:21
**propose**  7:21
  60:16 90:10
  108:11,25 109:25
**proposed**  71:24
  72:3 74:13 76:21
  107:14,21 108:1,8
  108:9 110:9
**proposition**  94:13
**prosecution**  95:11
**prove**  47:5 87:18
  87:23 88:5 89:2
  90:9,22 91:5,11,15
  102:14 105:20
  110:15 125:1,6
  128:23,25 129:24
**proved**  83:5 89:14
  108:21 122:24
  128:9
**provide**  51:4,22
  115:19
**provided**  27:2
  33:8,9,16 34:3
  45:12,12 60:9
  77:17 114:19
**provides**  51:16
**providing**  7:18

**proving**  99:19
  104:16
**public**  26:9
**publish**  30:10
**published**  15:21
  30:24
**pull**  32:6 33:3
  39:23
**pulled**  46:3
**purpose**  56:17
  87:7,25 89:4,15
  90:17 98:18,21
  119:2 120:2
  123:25 125:3
**purposes**  78:16
**pursuant**  25:7
**put**  28:2 31:5 32:1
  33:6,11,16,24 34:4
  48:7,10 57:23
  61:5,6,12 62:22
  69:3 77:8,15
  83:17 94:3,10
  100:13 104:7,18
  111:1 113:17
**puts**  51:9
**putting**  28:1 77:2

**q**

**quarter**  8:8
**question**  19:10
  39:20 46:3 58:23
  60:14 63:6 71:16
  96:19 100:12
**questions**  20:15
  23:6 39:25 71:5
  94:25 96:17
**quicker**  103:23
**quickly**  24:6 81:4
**quinn**  1:5 2:2 3:10
  6:6 11:1 17:11
  26:19,20 37:4
  42:15,19,20 43:14

  44:1 45:3,9,17
  50:17 51:16,17,22
  51:22 52:24,24
  56:19 59:20,23
  60:2 66:6,17,21,22
  67:8,12,19 69:13
  70:3 72:7,12 74:2
  76:4 77:3 78:3
  79:25 80:5,7,13,14
  80:18 83:24 84:7
  85:1 86:16 87:6
  87:15,16,21,24,25
  88:1,7,10,19 89:1
  89:10 90:23,25
  97:21 98:22 99:1
  100:19 101:6,15
  101:25 102:15
  104:20 105:7,15
  106:10,17 107:7
  108:2,17,21 109:2
  109:5 111:18,24
  112:2,11,19
  118:20 120:11
  121:6 122:4,8,18
  122:21 123:17
  127:23 130:22
  133:15
**quinn's**  4:6 25:6
  25:23 34:17 50:20
  87:25 89:4 126:10
**quit**  110:8,11
**quite**  30:13 40:12
  63:7 69:1
**quits**  111:4,9
**quoting**  108:15

**r**

**r**  5:1 12:22 26:2
  93:18
**r.c.**  1:14
**ra**  46:19

**radio**  22:8 39:13
**raise**  12:15 25:21
  52:15 82:9 132:10
**raised**  45:7 68:12
  82:6 109:15 110:1
**raising**  42:7
**ran**  8:6
**rasolphia**  132:13
  132:19
**rate**  74:23
**rd**  31:23,25 32:24
  33:6,7,15 34:2
  49:21
**reached**  116:21
**read**  8:3 21:20
  22:16 39:9,23
  42:7 44:11 54:14
  71:3,4,6,25 73:7
  73:11 83:2 87:19
  87:21 88:18,24
  89:25 90:21 101:1
  102:10 106:2
  108:11 109:21
  112:1,7,8 113:11
  113:12 114:15
  119:25 122:15,16
  123:20 126:4,5,13
  126:14,16,16,18
  128:17,21,22
  129:4
**reads**  54:7 74:1
  84:6 87:15,16
  88:22 92:11
  102:13 104:15,19
  112:10 122:3
  127:8 128:2,10,15
  128:17 129:22,23
**ready**  11:18 12:9
  31:17 46:5 80:6
**real**  47:23 48:4,6,7
  48:9 50:13 51:24

52:2,16,20,21
**realistic** 109:2,5
**realistically** 135:6
**really** 7:17 9:4
  24:2 42:6 50:10
  54:5 63:10 82:5
  84:23 86:7 93:22
  94:3,4,20,23 95:2
  97:2,4 101:1
  109:8 111:2
  114:15 117:20
  126:18 133:19
**reason** 48:9 49:13
  51:17 76:8 92:21
  98:10 114:6
**reasonable** 37:24
  87:24 88:6 89:3
  89:14 90:9,22
  91:5,15 109:16
  125:2,7 129:24
**reasonably** 99:2
**reasons** 48:15 52:4
  53:2 99:10
**rebuttal** 38:7
**recall** 56:15
  117:16
**receive** 14:13,23
  34:12
**received** 4:2 18:14
  18:16 34:18 36:23
  36:24 40:13,25
  57:23,25 58:23
  59:13 73:3
**recess** 70:3 76:20
  80:21 135:1
**recessed** 80:23
  135:22
**reckless** 77:2
**recklessly** 75:17
  77:8

**recognize** 27:18
**recollection** 96:7
  130:20
**reconvene** 38:4
  55:11 57:1,20
  69:8 74:21 75:1
  77:24 135:23
**reconvened** 80:23
**record** 5:8 12:20
  14:17 25:25 42:22
  51:20 68:11 69:3
  81:5 100:16 103:5
  103:15 104:8,14
  134:12
**recorded** 14:7,19
  17:24
**recorder** 68:7
**recording** 81:17
  136:5
**recordings** 15:3,8
  54:2,6,8,15
**records** 15:25
**recross** 3:2
**redirect** 3:2 23:13
**reduce** 57:17
**reduced** 55:25
  56:4,6,23
**refer** 32:16 122:12
**reference** 46:14
  57:4 92:7 107:23
  114:22 118:21
  125:15 129:20
**referenced** 110:10
**references** 102:8
  127:10
**referred** 82:1 92:2
  122:8
**referring** 29:23
  60:20 92:7 113:24
  119:23 120:17,20

**refresh** 130:19
**refused** 117:3
**regard** 47:9 51:14
  81:20 93:14
**regarding** 6:16
  39:20,20 45:17
  71:6
**region** 1:23 2:23
**register** 44:3 94:7
**related** 56:17
**relates** 108:5
**relation** 42:18
  72:10 105:13
  108:19 112:6,16
  112:21
**relationship** 83:23
**relevant** 64:20
  94:17
**reliability** 129:1
**relief** 10:18
**rely** 51:25
**remain** 55:12 66:1
  67:2,3 78:3,9,20
**remainder** 116:13
**remaining** 53:18
**remains** 37:11
**remarking** 134:21
**remarks** 21:5,14
  21:15,20 22:15
**remedy** 131:5,8
**remember** 117:18
**remind** 132:23
**reminded** 132:24
**remove** 57:25 89:9
  113:18
**removing** 11:17
**replace** 105:6
  132:14
**replay** 115:21
**report** 39:8

**reported** 68:16
**reporting** 1:23
  2:23
**represent** 67:13
**represented** 11:8
  67:9,14
**reproduce** 13:17
**reproduced** 15:8
**reproduction**
  13:10,13 17:20
**request** 55:7 57:14
  75:5 76:18 85:4
  115:6
**requested** 15:2
  67:6 104:1
**requests** 13:17
  63:18,19
**require** 49:8 77:9
  133:3
**required** 44:17,22
  71:12 75:18 79:18
  83:5 124:17 135:9
**requires** 63:12
  68:24 105:16
**requisite** 42:20
**reread** 42:9 116:8
**rereading** 54:9
**resolve** 49:22 69:8
  115:3
**resolved** 68:16,17
  117:20,21,22
**respect** 7:2 9:6
  41:18 42:13 45:6
  45:7 46:11 49:7
  53:5,14 71:2,16
  77:3 78:8 81:7
  82:24 104:22
  110:2 126:22
  128:13 129:9
  130:13

respects  45:16
respond  43:7
  83:11 97:17 110:1
response  50:16
  85:10
responses  86:3
rest  6:2 11:22
  23:19 24:3,25
  25:4 97:14 119:10
  123:8 124:10
  127:10
rested  37:11
resting  23:24 37:2
rests  3:7,8,9,10
  11:24 37:4
resulted  96:8
retained  52:17
retains  93:13
return  16:19
  133:9
returned  43:15
revealed  76:2
review  18:7 26:17
  26:25 76:20
reviewed  76:23
revisit  114:5
rg  26:25 29:17
rid  51:17
right  5:6,15 6:15
  10:3 11:18 12:15
  13:16 15:13 16:4
  19:22 21:25 23:25
  24:8,19 25:11,21
  31:1,4 35:18 37:1
  37:5 39:22 42:2
  43:17,25 44:8
  46:22,24 53:4,24
  55:2,18,19 56:11
  57:15 58:16,20
  59:4,7,22 61:18
  63:3,5 64:24

65:14 70:21 71:3
  71:14 74:4 76:12
  77:23 78:2,19
  79:4,6 80:21
  82:13 84:21 86:11
  97:2 98:1 100:25
  102:11 103:1
  105:22 106:2
  107:13,17 110:16
  111:15 117:12,24
  118:13 119:17,25
  122:1 127:21
  131:5,10,22
  133:19 134:25
  135:17
ringing  17:3
rings  17:2
rise  5:2 12:4 40:6
  103:25 135:21
risk  9:12,12 91:10
rob  49:17
robbery  42:18
  43:21 45:10,24
  46:1,9 47:13,16,17
  48:19,22,25 49:18
  50:6,8,12 52:7,13
  55:23 83:17,18
  84:4 92:2,3,4,5,8
  98:25 104:20
  105:13 108:20
  109:3,6 110:8,11
  111:1,4,9,25 112:3
  112:6,13,16 121:2
  122:13,20,22
  123:18
robert  1:10,13
rodriguez  48:3
  50:3
role  49:7
room  7:13 39:15
  58:18 61:17,24

63:11 78:24 79:2
  115:8,24
rule  3:11 25:7,7
  41:19,24 42:3,6,7
  42:13 48:14,16
  49:9,12 52:5 53:2
  67:4 98:16 99:22
  113:2 133:6,12,18
rules  133:3,3
ruling  3:13,15,17
running  79:16
runs  9:12 91:10
rushing  80:5
ryan  113:22 114:4

                s
s  4:1 5:1 12:22
  25:20 26:2 94:15
s's  102:7
sanchez  49:25
  50:2 51:8,10
  52:19 75:23,24
  83:25
sanchez's  47:22
sat  68:4 97:1
satisfied  68:19
  80:16
satisfies  46:18
saw  49:23 54:8,15
  75:20 105:4
saying  7:1 19:20
  38:3 39:25 44:10
  68:7 91:11 99:19
says  11:14 43:13
  43:14 50:2,22
scene  109:3,6
  110:9,15,17,25
schedule  5:6 6:22
  37:8 70:10
scheduling  70:17
schneider  94:19

school  134:18,18
scope  98:17
screen  15:17 18:5
  21:17 22:6,7,16,25
  31:5,7,20 32:22
  40:17
se  68:23 69:24,25
  70:13
seated  5:5 12:7,19
  25:25 40:9 81:2
seats  68:5
second  43:11
  47:14 62:15 71:9
  75:10 84:5 86:15
  88:20 98:23
  100:18 102:12,13
  105:10,11,12
  108:5 111:16
  113:23 116:10
  118:2,19,24
  119:12 121:5,11
  121:24 122:16
  126:25 127:7,22
  128:10,21,21
  129:4
secondly  47:24
  48:6
seconds  18:12,25
  19:5,11 20:3,8
section  15:24
see  16:3 22:7
  32:17,17,18,19
  38:24 40:4 53:5
  56:9 60:15 61:19
  62:1,2,4 63:2,4,8
  78:23 88:24 91:3
  91:4 93:10 106:1
  114:17 115:18
  117:10 120:22
  128:12 129:7

seemingly 107:21
seen 15:25 49:23
  55:20 62:17,20
sees 21:20
send 22:8 39:25
  114:19
senior 78:20
sense 7:19 84:10
  86:7,12 88:20,21
  92:4 96:23 100:22
  101:5,20 102:13
  106:3,7,22 107:10
  113:6 119:16
  121:14 127:1
  128:3,10 134:1,2
sent 21:16
sentence 64:19
  72:18 88:17,21
  91:4 102:12 108:8
  108:25 112:24
  118:23 122:13
  127:7 128:2,9,10
  128:15,16
sentencing 72:17
  131:11,13
separate 99:15,18
  130:14
sergeant 17:2
  19:17,17
set 21:24 97:3
  104:14 125:15
  131:6
setting 131:1
seventh 73:10
shape 14:9
share 95:21
sharing 7:15
sheets 130:7
sheila 136:3,9
ship 134:19

shocked 133:6
short 6:7 29:16
  38:2 43:18 69:22
shortly 43:15
shot 60:24
shots 60:23
show 29:19 63:17
  125:16 129:8
showing 61:1
shows 22:24 45:25
  87:14,20 88:18,25
  89:11 90:1 124:25
  125:17
side 5:23 10:11
  14:6 16:4 18:24
  21:18 46:5 51:2
  51:10 76:1
sidebar 100:11
sigh 10:18
significant 38:14
  38:16
similar 110:17
simple 104:9
simply 50:12
simultaneously
  22:3
single 34:13 73:5
  84:22 96:10
  101:21 102:17
  120:24 133:24
singular 98:21
  102:8,10,10,11,12
sir 12:24 20:21
  21:12 35:17 41:16
sirens 52:25
situation 50:2
six 27:10,11 30:18
  30:18 59:24,25
sketchy 96:13
slight 83:7

slow 115:17
small 15:17 134:9
smallest 134:23
smith 1:5,13 3:8
  5:20 11:2 20:14
  24:24 26:19 43:16
  43:24 47:11,17
  48:1 51:4 56:17
  66:3 69:12 72:8
  72:12 74:1,3
  82:11 83:23 84:7
  84:25 86:16 87:6
  87:14,20,24 88:1,6
  88:9,19,25 89:3,6
  89:10,18 90:22,25
  98:7 100:19 101:6
  101:14,24 102:15
  104:19 105:7,15
  106:10,17 107:6
  108:3,16,21 109:1
  109:5 111:17,23
  112:1,10,19 117:2
  118:19 120:11
  121:5 122:3,8,17
  122:21 123:16
  126:10 127:23
smith's 48:13,19
  77:20
sole 83:6
solve 50:1 52:6
solved 7:3
solver 50:7
somebody's 21:16
someone's 48:11
somewhat 49:13
  55:21
son 134:15,16
soon 17:2,23 51:16
  68:3
sorry 8:20 13:25
  20:5 23:20 27:21

28:19 31:13,16
  37:3 41:8,21 57:5
  66:19 76:3 86:4
  88:17 94:14
sort 35:22 87:5
sound 136:5
sounds 6:25 9:18
southwood 1:14
speak 10:8 74:18
specific 57:3 62:6
  62:25 63:18 120:4
  120:6 124:4
specifically 45:22
  46:14 77:7 93:4
  110:22
speeches 24:18
  38:5,8,10,12 39:4
spell 12:19
spelled 26:2,2
spend 7:11 55:10
  127:20 129:15
spending 104:4
spill 9:15
split 61:7
spoken 6:6
spontaneous 93:24
squeeze 70:9
  79:10
stage 68:5
stand 12:14 25:20
  67:10,13
standards 94:18
standing 105:1
standoffish 67:15
  68:9
stands 42:23 49:13
start 6:22 10:12
  38:4 42:3 53:24
  81:4,9 135:2
started 52:5 105:4
  105:18

starting   48:19
  77:18 116:10
  118:2,18 124:11
  124:14
starts   27:24 65:10
state   12:19 25:25
  82:1
stated   6:1 46:18
  85:6 99:11
statement   72:11
statements   64:5
  64:14 65:11 95:17
  102:25 135:2
states   1:1,3,8
  26:18 101:12,17
  112:22
stating   81:25
status   68:15
statute   104:15
stay   9:22 51:10
  69:12,13 79:24
stayed   37:18
steven   107:7
stevens   1:5,16 3:9
  6:1 11:2 17:11
  25:4 43:13,16,24
  49:11,13,18,20
  50:16 51:6,16,19
  52:2,6,23 53:3
  66:5 69:12 72:8
  72:12 74:1,3,7,7
  74:14 77:4 83:24
  84:7 85:1 86:16
  87:6,14,21,24 88:1
  88:6,10,19 89:1,3
  89:6,10 90:22,25
  97:18 98:2,7
  100:19 101:6,15
  101:24 102:15
  104:19 105:7,15
  106:10,17 108:3

108:17,21 109:1,5
  111:17,24 112:1
  112:11,19 118:20
  120:11 121:5
  122:3,8,18,21
  123:17 126:10
  127:23 130:15
stipulated   29:8
  55:20,23 83:3,4
stipulation   57:4
  57:17
stipulations   55:4
  55:14,21 56:22
  57:17 82:25,25
stone   94:15
stop   81:21 92:14
store   26:25 27:11
  30:3 43:11,16,25
  46:3,20,25 47:3,3
  48:25 49:4 50:17
  50:18,21 51:23
  52:9 74:8 75:25
  77:10 82:2 94:6
  98:2,4,7,19,20
  99:4,6 110:19
story   76:6
street   1:11,17,24
  2:4,24 13:23 14:5
  16:21 18:8
strong   96:14
strongest   51:14
  52:11
structured   93:22
  94:19
subjected   37:15
submission   77:17
  109:20,21
submit   44:5 46:12
  46:23 76:10 93:16
  96:2 99:7,10
  131:6

submitted   53:9,19
  76:23 131:7
submitting   52:12
  99:23
subsequent   118:21
substantive   98:16
substitutes   133:4
substituting
  106:11
succeed   88:11
  91:1,9,19 125:10
success   102:19
sufficient   39:24
  43:1,23 45:8,15
  47:20 48:23 49:8
  51:12 52:10,12,16
  52:18 94:10
  109:17
suggest   110:23
suggested   113:22
suggesting   110:21
suggestion   89:9,24
  116:8 121:4
suite   1:12,18,24
  2:3,24
summary   57:3,11
supervise   133:14
supervisor   16:21
  22:23
supervisors   16:15
supplements   23:1
supply   62:21
support   45:22
supports   49:6
  77:12
supposed   132:12
supposedly   109:11
sure   21:14,15 22:5
  43:8 63:13 90:15
  92:25 111:2,5
  113:11 126:1,13

132:18
surprise   24:5 37:7
  37:7
surveillance   36:6
  36:21
swietzer   71:17
  73:4,14,15
sworn   12:17 25:23
sync   72:3,23
system   14:22,24
  18:3 117:5

t

t   4:1 94:15
table   39:19,22
  64:11
tailor   113:23
tailored   113:13
take   5:12 6:13
  10:11 11:23 18:1
  32:5 47:11 48:4,9
  48:10,20 50:19
  73:12 82:13,21
  86:14 89:17,19
  101:7,22 102:6,24
  103:2 104:18
  117:15 122:21
  133:11
taken   44:3 46:22
  49:20 100:25
takers   14:2
takes   50:8
talk   5:6 9:17,23
  10:3 13:22 14:2
  22:3 39:6,7 40:15
  53:19 57:2 62:9
  67:17 68:14 69:15
  70:4 78:3 92:4
  134:3
talked   130:3
talking   8:19 9:4
  13:21 21:3 29:4

29:10 32:15 65:9
79:25 84:1 97:25
118:10 128:22
129:1,19,21
135:15
**talks** 11:1
**tape** 49:23
**tapes** 13:16
**team** 116:21
**telephone** 55:24
**telescopic** 133:11
**television** 39:11
117:4
**tell** 13:6 17:19
30:19 37:22 61:13
68:6,8 69:14,17,19
74:15 100:2
**telling** 7:14 63:15
**tells** 60:15
**ten** 5:13 6:14
**term** 97:19
**terrible** 134:24,24
**testifying** 5:21 6:1
6:7
**testimony** 7:1,18
9:25 19:16 23:16
24:16 32:5 35:19
47:22,22 49:25
52:1 75:6,24 76:2
83:14
**thank** 6:4,5 10:15
12:18 17:12,15
18:19 20:7,11,17
23:4,14,16 24:1
25:1,24 31:9 34:5
35:3,10,13,20,21
36:25 45:19 47:7
48:14 52:2 54:22
54:24 55:1 57:8
59:9 66:13 73:23
79:5,11 90:4

100:14 130:9
131:15,18 132:9
134:2,5,6 135:19
**thanks** 31:14
130:8
**theft** 22:17,18
**theories** 94:5
99:18 127:16,16
**theory** 6:23 7:8
11:4 42:16 49:15
51:12 72:25 74:11
74:13 93:5 95:11
99:9,15,24
**thing** 47:16 55:2,3
87:19 88:25 96:15
96:21 102:9
106:16,23 110:15
110:19 111:22
117:21 127:1
129:17,17,19
**things** 26:23 32:15
40:12 43:9 53:6
53:18 55:20 79:25
95:9 109:14
115:17 127:19
129:7
**think** 5:7 7:17 8:5
8:14,24 9:16
11:21 24:5 29:9
34:22 37:24 38:10
38:14,25 40:16,18
40:20 41:2,3
42:14,14 45:15
48:18,21 49:8
52:16,19 53:4
55:6 56:12,16
57:6,11 58:4,7
62:12 63:18,23
64:18 65:15,24
67:8 69:4,9,25
70:1,25 71:5

72:14 74:5,11,16
74:21,22 77:11,13
77:19 78:8,12
79:22 80:5 81:3,4
81:15,24 82:7
83:16,25 84:15,25
86:5,6,8,11,24
87:8,9,15,21 88:3
88:8,19,20,22 89:7
89:8,20 91:4,10
92:1,4,17 93:23,25
94:23 95:8,18
96:3,16 97:4,12
100:22 102:22
103:24 105:5,15
105:20 106:11
107:2,9,14,18
110:7,13,16,18,23
111:21 112:9,17
112:22 113:6
114:20,20,22,25
115:17 116:18
117:10 118:6
119:15 120:8
121:20 122:10
123:9,11,19 124:5
124:19 125:12,13
125:19,25 127:4
127:12,19,21
128:3,10,22
129:11,12 132:25
134:1,17 135:5,7
**thinking** 60:18
63:14,25 107:3
122:6
**third** 11:16 53:10
67:25 71:9 83:8
84:19 87:6,10,11
88:21 91:13 93:18
93:20,20 94:16
98:14 99:1 101:4

101:14,20 102:1
105:10 106:6
111:23 113:10,13
113:16 118:25
119:5,11,12 120:1
120:23 121:24
123:5,24 125:14
**thoroughly** 133:4
**thought** 6:18 7:25
8:8,20 10:24 28:1
37:21 42:6,8
73:15 84:4,10
95:21 111:3,9
115:7
**thoughts** 70:11
71:9,10
**three** 11:12 16:14
21:24 43:11,17
46:15 59:21 75:24
84:2 85:14,15,16
85:22 89:10,21
91:11 92:17 94:7
95:5 97:1 98:15
98:19 99:19
101:24 103:5,6
104:22 105:16,21
114:22 118:21
121:9 123:8
129:20 130:6,12
130:12 135:16
**throw** 69:2
**ticket** 17:21
**till** 8:7
**time** 5:22 7:11 8:7
8:14 11:23 17:4
21:11 23:18 36:10
37:17 38:1 40:23
42:8 43:11,18
44:16 45:3 49:1
55:5,9,10 56:25
60:25 61:4 62:8

62:16 63:12,24,24
68:13,14 69:2
74:23 76:23 79:17
83:11 92:7 100:1
104:4 107:7
108:22 109:17
117:22 118:12
126:17 131:11,13
135:8
**times** 39:1 71:20
86:23 88:17 89:10
119:4
**timing** 69:3 77:14
**tinker** 11:15
**tinkering** 129:13
**title** 26:13
**today** 5:6 6:23
7:25 8:25 9:9,25
37:6,22 56:24
59:2 61:6,12
69:10 70:15,18
78:16 79:17 95:2
116:23
**told** 6:22 35:23
38:11 39:17 82:25
103:9,12,16,19
104:5 126:15
**tomorrow** 8:16,17
127:6
**tonight** 117:8
123:11 127:6
134:4
**top** 73:6 87:13
92:2 106:9 112:18
112:18 125:24
**tortuous** 133:23
**torturous** 84:23
**total** 30:18
**transcript** 136:4
**transcriptionist**
136:9

**transforming**
133:24
**treat** 36:11 83:4
**treating** 36:12,15
**trial** 1:7 27:14
38:19 45:22 46:13
54:7,14 66:24
68:1 77:1,18
80:11 93:13
116:17 117:2
133:21
**trials** 7:2
**tried** 7:15 103:20
**tries** 39:7
**trinity** 134:15
**troublesome** 10:22
**true** 39:12 83:3,20
**trust** 67:24
**try** 9:7 11:11 69:9
74:20 79:10 84:23
117:8
**trying** 49:21,25
50:1,3 52:18 85:9
**tuesday** 9:15
132:13
**turn** 25:1 54:1
62:10 96:12
**turned** 133:8
**turns** 37:22
**tv** 117:9
**tweak** 108:12
**tweaked** 108:7,13
**twice** 70:1
**two** 7:23 8:9 9:23
10:11 45:22 46:15
47:11,19 49:7
55:25 56:20 60:7
62:13 71:5 75:21
84:1,1 85:15,21
86:2 107:22
109:22,23,24

110:9 114:16
127:21 135:16
**type** 22:3 56:5
**types** 22:21
**typically** 24:14
37:12
**typing** 21:3,11

**u**

**u** 93:18
**u.s.** 1:11 73:11
93:12 94:13,18
**ultimate** 70:15
95:18
**unavoidable** 38:20
**understand** 30:4
30:14,16 44:23
55:15 72:1 75:4
103:22 111:5
**understood** 73:21
79:15 104:6,11
**unduly** 128:12
**unfair** 126:7
**unit** 13:10,13
**united** 1:1,3,8
26:18 101:12,17
**unlawful** 98:17
**unnecessary** 95:20
**updated** 130:5
**use** 46:16 75:17
77:9 97:19 105:6
106:5,22 108:18
111:8,8 112:5,15
113:9 116:9
**uses** 16:11
**usually** 23:2
110:20
**utilize** 97:13

**v**

**v** 26:18 73:11
93:12 94:13,18

**vacate** 131:5
**vaguely** 117:16
**various** 29:23 94:5
**ventura** 48:21
49:2 50:25,25
51:3,4 52:19
83:24 97:20
**ventura's** 48:8
**venture** 108:24
**verdict** 68:11
114:21,22 130:6
130:11,14 131:1
133:9
**veritext** 1:23 2:23
**victim** 52:1 83:20
97:21 99:6
**victim's** 47:22
**victims** 84:2
**video** 4:5 26:25
27:2,6,16 28:2,4,6
29:10,14,16,20
30:3,14 32:12
33:18,20 34:21,25
36:6,6,21 49:23
51:9 53:1 60:20
60:23 61:7,16,24
62:17,18 63:2
75:21 115:5,9,16
115:19 116:17
**videos** 4:7 115:3,8
**view** 29:2 30:6,8
69:24 99:23
103:19,20 116:16
**views** 9:20 29:23
30:19
**violations** 132:25
**violence** 45:1
72:10 112:21
128:7
**violent** 132:14

**vis**  49:20,20
**visual**  54:2,6,8,15
**vs**  1:4

**w**

**w**  2:3
**wait**  39:3 66:14
  97:24
**waiting**  116:3
**walk**  44:1 109:18
  110:19,19
**walked**  55:22
**walking**  108:23
**walnut**  1:17 2:4
**want**  9:16,17
  10:17,20 25:15
  29:10,22,25 30:12
  40:19,23,24 42:5
  43:6 55:16 56:2
  56:22,22 60:13,13
  61:10,19 63:8,14
  63:20,23,25 65:8
  68:10 70:23 71:6
  71:9 73:24 74:16
  78:9 79:13 80:12
  82:25 83:10,11
  84:24 85:12
  105:19 107:6
  111:2,8 112:7
  114:17 115:18
  117:10 118:16
  126:15 128:11
  135:4
**wanted**  37:20
  62:16,25 68:1
  73:16 104:6,17
  114:5 115:10
  133:1
**wants**  80:10 95:10
**warrant**  52:12
  99:23

**warranted**  95:24
  96:21,22,23,23
  97:7,9
**watch**  39:10 62:16
**watched**  34:21,25
**waters**  95:12
**way**  6:16 7:19 8:5
  9:5,8 10:25 14:9
  15:10 37:8 48:3
  51:11 53:10 55:21
  56:10 63:9,13,17
  70:18,23 74:22
  87:15 88:7 90:23
  91:6,16 93:22
  94:20 96:13
  107:25 108:13
  109:16,25 110:14
  110:23 111:1
  115:8 116:16
  123:8 125:8,21
  127:1 131:8
  133:23 134:8
  135:3
**ways**  62:17 92:8
  99:19
**we've**  55:22 63:9
  63:10,16 80:4
  86:22 93:25 95:12
  103:17,17 106:24
  108:13 115:18
  117:10 122:7
  125:25 130:3,4
**weak**  93:4
**weapon**  48:21,25
  49:3,3 51:3
**weapons**  98:8 99:4
**week**  26:12 115:25
**weekend**  38:25
  40:7 123:13 126:4
  126:16 132:4
  135:20

**went**  98:20 116:8
  134:17
**we're**  115:12
**wife**  75:22,22 76:6
  76:13 77:8
**wife's**  77:10
**willfully**  45:23
**wish**  32:18 62:22
  66:1,11,11 69:13
  78:3 99:22 100:13
  110:6
**wished**  88:10
  90:25 91:8,18
  125:10
**withdraw**  44:15
  44:22 45:4 75:11
  76:9 108:6
**withdrawal**  76:22
**withdrawing**
  77:14
**withdrawn**  76:18
**withdrew**  77:12
**witness**  5:7,8 6:7,9
  6:11 11:22 12:17
  12:21,24 15:18
  17:5 20:12 25:14
  25:23 26:1,5
  30:22 32:23 33:12
  33:23 35:20 47:15
  47:18 49:25
**witnesses**  3:2 5:16
  5:22 11:19 23:22
  46:17,18 47:11
  75:21 82:8
**wittels**  1:16,16 3:4
  3:16 5:24,25 17:7
  20:16,17,19 23:4
  25:2,3 35:15,16,17
  36:18 41:15,16
  49:10,11 52:3
  58:12,13 65:7,16

**65**:21 66:5 78:17
  78:18 82:19,22
  85:12,19 87:2
  91:23 95:6,7
  105:24 115:2,14
  115:20,23 131:19
  132:16 134:8,20
  135:11
**wonder**  106:21
  126:24
**wondered**  111:19
**wondering**  106:24
**word**  92:9 94:21
  96:21 113:11,11
**words**  47:12 54:13
  81:16 93:24
**work**  8:4 13:14
  16:12,13,15 26:8,9
  26:17 63:16 67:24
  72:4 84:23 86:25
  107:3 120:7
  122:10 128:11
**worked**  26:11
**working**  71:24
**works**  87:9 88:3,8
  91:14 112:17
  117:14 119:3
  123:9 124:2,6
  125:5,12,14
  129:11
**world**  52:11 134:9
**would've**  37:9
**wrench**  69:2
**write**  83:18
**writing**  55:25 56:4
  56:6,23 57:17
  60:19 83:1
**written**  39:9 83:19
  84:19
**wrong**  72:11
  105:14 112:1

**[wrong - zalzner]**                                                    Page 28

| |
|---|
| 116:2 |
| **wrote**   67:20,21 |

| **x** |
|---|
| **x**   3:1 4:1 |

| **y** |
|---|
| **y**   93:18 |
| **yeah**   16:21 19:17 |
| 62:12 85:3 86:2 |
| 86:22 91:12 |
| 115:20,23 117:16 |
| 127:4 |
| **years**   7:16 26:12 |
| **yesterday**   6:17 7:7 |
| 93:24 109:10 |
| 117:1 126:15 |

| **z** |
|---|
| **zalzner**   71:18 |
| 73:14 |