IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | : | : | CRIMINAL NO. 19-350-02 |
| v. | : | : | |
| | : | : | |
| ABID STEVENS | : | : | (DuBois J.) |

**SENTENCING MEMORANDOM AND MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE ON BEHALF OF DEFENDANT ABID STEVENS**

TO THE HONORABLE, JAN E. DuBOIS JUDGE OF THE SAID COURT:

Defendant, above named, by counsel, files this sentencing memorandum.

**I.     INTRODUCTION AND ISSUES**

The purpose of this introductory section twofold. First to give the court a context within which to view the defendant and his crime.

## II.     APPLICABLE GUIDELINE CALCULATION

The PSR calculate the total offense level with adjustments as 24 and the criminal history category as VI. This yields a guideline range of 100 to 125 months' imprisonment. Due to the consecutive mandatory minimum of 84 months on count 2, the effective guideline range, according to the PSR is 184 to 209 months. For the reasons set forth below, Mr. Stevens believes the proper guideline range is 63 to 78 months for the Hobbs Act robbery plus 84 consecutive on Count 2, yielding a total guideline range of 147 to 162 months.

.The presentence investigator asserts that as four level upward adjustment is warranted pursuant to section 2 B.3.1 (b) (4) (A) of the Sentencing Guidelines. That subsection provides for a four level upward adjustment where the victim is abducted in order to facilitate the commission of the offense. The presentence investigator reasons that because the victim moved a short distance (from in front of the counter to behind the counter and vice versa) that he was abducted within the meaning of this subsection. This is a completely erroneous reading of that subsection as is not supported by the case law or even by common sense. First, this reading of the subsection flies in the face of the plain meaning of the enhancement described in section 2B3.1 (b)( 4). Webster's Dictionary defines the

2

word abduct as to take away some distance by force. This implies that the victim in this case was moved some distance by force or threat of force. As the videos clearly demonstrate, that did not happen. The victim in this case did not move any significance distance nor was he forced to move by threat of force or by force. If he moved at all, it was by his own volition from in front of the cashier area to behind the cash register, a matter of a few feet.

Second, the case relied on by the presentence investigator, United States v. Reynos, 680 F. 3d 283 (3rd Cir. 2012) is not applicable for several reasons. To begin with, the case is clearly an outlier, and has not been followed by other cases. Even if it was to be considered sound precedent, both the facts and the law of the case clearly make it distinguishable from the case at bar. In Reynos, the victims of the robbery were moved by force from inside a bathroom at the rear of the store to the front of the store. Reynos kicked in the locked door of the bathroom and forced the occupants to move from that bathroom to the front of the store, clearly a change in location. The victims were forced, at point of gun, to emerge from a separately secured part of the store, to wit, a bathroom where the door had been closed, to the front of the store. While that distance was not great (about thirty four feet by most estimations) it was clearly from one place to

another. In the case at bar, the victim was not moved from a separately secured part of the store to the cash register. The Court in <u>Reynos</u> adopted a flexible standard, one the is heavily depended on the facts of the case. Central to the court's analysis was the concept of a change in location. The Court meant to ease any distinction between moving someone from inside a building to outside a building or from inside a car to inside a building and instead create a flexible standard that focused on whether or not the victim was moved by force or threat of force some significant distance from one discretions location to another regardless of whether that was from inside a building or lotion to outside, etc. so the it would be clear someone could be abducted by being moved from one location to another within the same building. The Court used the example of a courthouse to illustrate what they meant and described how, within a courthouse, one could be moved from one courtroom to another room, from a judge's chambers to another location within the courthouse, etc. Thus, the focus is that abduction can occur and the enhancement applied even if the victim remained in the same building. The distinction the court drew was between being moved from one separately defined area to another as opposed to from one place in a room to another. Thus, in her. Thus, in <u>Reynos</u>, it was from a locked bathroom to the front of the store. The examples provided by the court in the court in <u>Reynos</u> follow that rule.

4

The court stated, "It is precisely because of the broad scope of the term 'location' that courts must use a highly flexible approach in finding; an approach that recognizes that the abduction enhancement may be properly applied even though the victim remained within the confines of a single building." The Court also stated, "Of course, the smaller the space, the more difficult it is to find a change in location.." Using the <u>Reynos</u> test allows the enhancement to apply to a car-jacking, for example, where the victim is moved a distance but does not exit the car thus obviating the need to read "abduction" as being moved from one place to another, e.g. from one building to another. To extend Reynos to the case at bar is to stretch the rule of the case beyond all recognition and far exceeds the facts of that case. It should also be noted that <u>Reynos</u> is an outlier and has not been widely adopted or followed. The enhancement should not be applied.

Mr. Stevens also believes the prior record score was improperly calculated. Section 4A 1.2 (a)(2) requires that for purposed of applying 4 A 1.1 (a) (b) & (c) if prior sentences are imposed on the same day and imposed concurrently, those sentences are treated as one sentence for the purposes of prior record score with the longest sentence of imprisonment given the appropriate points. In the draft

presentence report the offenses listed in paragraphs 38-40 are scored separately and this is incorrect. The three sentences were all imposed on the same day in what was a consolidated guilty plea and sentencing. There is no dispute that Mr. Stevens was under court supervision at the time of these offenses so there is no dispute that he receives two points for that, but it is disputed that the three offenses are counted separately. Thus, the prior record score should be lowered by four points from 15 to 11

### III.    MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE

#### a. Downward Departure

Mr. Stevens moves for a downward departure on the basis that his prior criminal history over-represents the seriousness of his prior record and that pursuant to section 4 A 1.3 (b) of the sentencing guidelines. Mr. Stevens has a number of convictions as an adult but they are for relatively minor drug offenses and weapons possession. He has a 2001 conviction of carrying a firearm without a license, fleeing and eluding and recklessly endangering another person for which he received a sentence of 11/2 to 23 months in the county prison to be followed by five years' probation. He appears to have sustained three violations of probation. The facts of that offense are that he carried a firearm on his person and

6

when the police attempted to stop his vehicle he crashed his vehicle into another vehicle and weas arrested. He had a small amount of cocaine on his person at the time. He has another offense, incurred about a month later for which the facts of the offense are not available. While the charges involved aggravated assault and again a firearms violation and related offenses, it is not clear what charges he plead guilty to. In 2005 at age 25 he was either found guilty to or plead guilty to possession of .30 grams of cocaine. This case was adjudicated in the Municipal Court of Philadelphia which denotes the fact that this was a misdemeanor offense under the laws of the Commonwealth of Pennsylvania. In 2007 he incurred another conviction for a firearms offense and received a sentence of thirty to sixty months to be followed by five years' probation. The facts of the case are that he possessed two loaded handguns, one of which was stolen and that he drove on the sidewalk and ignored traffic signals in an attempt to elude the police. In 2015 he was convicted of possession of marijuana and Xanax. He was sentenced to thirty days incarceration. In 2016 he was convicted of unlawfully possessing an amount of cocaine for personal use and was sentenced to time served to 23 months incarceration. As stated in the pre-sentence report, two points were added because Mr. Stevens was on probation at the time he was arrested in this case.

His record is that of a petty criminal, of an addict with a proclivity for carrying, but not necessarily using handguns. The accumulation of offenses places him in the highest criminal history category but the offenses themselves vastly overstate the seriousness of that criminal history and a downward departure is justified in this case.

### b. Variance

Mr. Stevens seeks a variance because the offense category, whether that calculated in the pre-sentence report or as calculated herein, vastly overstates the seriousness of the offense.

Mr. Stevens continues to maintain his innocence. He denies that he knowingly participated in a Hobbs Act robbery. Rather, his role was that of a peacemaker, someone endeavoring to solve a problem. As evidence of this he points to the videos of the scene that show him remaining behind after his codefendants had fled. The surveillance videos show him talking to the store owner and the store clerk. As he is talking to them, his posture is relaxed, he is leaning against the ice cream counter. Even as the police arrive and then engage in a pursuit, with sirens blaring, Stevens remains, talking to the store owner and store clerk. He leaves the

8

store only when their discussion has ended. Hardly the aspect of a robber. Smith and Quinn flee, Stevens remains. Why would he do that if he believed he was doing anything other than trying to resolve a dispute? The police sirens wail outside and he remains.

Stevens admits that he entered the store with a gun drawn but that this occurred only after Quinn came outside and reported to Stevens and Smith that the store clerk had pulled a gun on him. While his actions in going into the store with a gun drawn was unwise, he did not have the intent to aid, abet or otherwise facilitate a robbery. It was his belief that Quinn had as legitimate complaint about being deprived of money from the ATM, but his overriding concern was that there not be any violence.

Stevens actions are easily distinguishable. Smith fled. Stevens stayed to attempt to resolve the dispute. Quinn may having been trying to deceive the store clerk by claiming the ATM gave him counterfeit money and that the ATM did not give him the one hundred dollars he had claimed he'd withdrawn; Stevens was unaware of any such deception on Quinn's part. Rather, he was merely trying to help his friend resolve a dispute. The methods he used to help resolve what he

thought was a dispute are what lead to his conviction in this case. Instead of using his powers of persuasion, in the beginning of the dispute he waved a gun to emphasize his point that, in his opinion, Quinn had been cheated out of a hundred dollars. It is important to note that after the initial waving of the guns, Stevens put his guns away. The videotape shows him vigorously discussing the situation with the store clerks. While they do not appear from the video tape to be accepting what he is saying neither are they cowering in fear. In short, they do not act as one might expect a robbery victim to act. When the store owner came on the scene, having been summoned by the store cashier, she walked into the store with her cellphone in her hand. Her affect was not that of someone who was entering a robbery scene but of someone who was coming to resolve a dispute. Indeed, what person in their right mind would willingly walk into a robbery? The interactions between the store owner and Mr. Stevens are not those one would expect if there had just been a robbery and the robbers stayed in the store. As a matter of fact, in what world do the robbers stay on the scene after the robbery has been committed to discuss the robbery with the victims and the witnesses? At trail, the government's civilian witnesses didn't refer to the incident as a robbery. The police witnesses did.

If this was a robbery, and the jury so found, then Stevens was unaware of the fact that there had been a robbery. Maybe he should have been, certainly he could have exercised better judgment and he certainly should not have drawn a weapon let alone brandished it, but he did not knowingly participate in a robbery.

The atypical nature of the offense in this case takes it out of the heartland of what was envisioned for the offense of robbery. This was the most atypical of Hobbs Act robberies, and Mr. Stevens' behavior was atypical of what one would expect from a participant in a Hobbs act robbery. While it is reasonable to believe that the store ashier was frightened, it is also reasonable to believe that Steven' role in the offense was of a lesser gravity than that of his co-defendants.

As noted in Kimbrough v U.S., 552 U. S. 85129 S. Ct. 558, 169 L. Ed. 2d 481, a guideline range is what the Sentencing Commission believes to be the range of punishment in the ordinary case and the guideline range gives a rough approximation of sentences that might achieve the goals of sentencing. However, the sentencing judge is in the best position to weigh the facts and sentencing factors and judge their import in a particular case, Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007). Gall v. United States, 552 U.S. at

51, 128 S. Ct. 586. 597 (2007). In this case, the sentencing guidelines can only be used as a starting point, a reference point if you will. The sentencing factors set forth in 18 U.S.C. section 3553 (a) serve as the proper guideline for fashioning a sentence.

## IV DISCUSSION OF SENTENCING FACTORS SET FORTH IN 18. U.S.C. SECTION 3553(a)

18 U.S.C. section 3553(a) (1) directs the court to look first at the nature and history of the offense and the history and characteristics of the defendant. Subsection (a)(2) directs the court that the sentence should reflect consideration of the seriousness of the offense the need to promote respect for the law and the need to impose just punishment. The statute also requires a sentence that affords adequate deterrence both to the offender and to others in society who might be inclined to commit similar offenses. Finally, the court is to consider the need for rehabilitation and the offenders need for vocational, educational, and other training. Any sentence imposed should be sufficient but not greater than necessary to meet the requirements for a fair and just sentence.

During the years that the guidelines were mandatory a certain mythology arose as to their reliability. It was thought that they were based on empirical evidence as to what sentences worked and that there was some objective basis for each guideline. What we have learned in recent years is that the guidelines themselves are, in many ways the products of policy decisions, not facts, of political considerations, not objective data. They retain validity as a starting point, to be sure, and each sentencing court must still accurately calculate the now "advisory" guidelines. However, a sentencing judge must be mindful that the guidelines are, at best, justice at the "wholesale" level while sentencing is an exercise in justice at the "retail level." Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456 (2007). Many judges have said that crafting a fair and just sentence is one of the hardest jobs for a judge to perform. In this case counsel suggests that a sentence below the guidelines is appropriate.

In fashioning a sentence, this court should also be mindful of the fact that it must impose a consecutive sentence on count two. Therefore, even if this court imposed no sentence on count one, Mr. Stevens would still have to serve a sentence of eighty-fur months in federal custody with another consecutive sentence to follow

to be imposed by Judge Shulman of the Philadelphia Court of Common Pleas for violation of probation.

## IV.     **Defendant's Circumstances**

Mr. Stevens enjoys widespread and committed support from his family. Letters from his wife and other family members and friends are attached collectively as Exhibit A. They portray a man who has admittedly made serious mistakes in his life but who is devoted to his family and who fully intends to live a law abiding life when he is released from custody. It should be noted that he has a detainer for a violation of probation from Judge Shulman in the Philadelphia Court of Common Pleas. The underlying case is the firearms case which he incurred in 2007 and which he had previously violated his probation. The sentenced is referenced in paragraph 40 of the pre-sentence report.

Mr. Stevens is forty, well past the crime prone years. He suffers from the disease of addiction and, as the pre-sentence report infers, would benefit from drug treatment while incarcerated. He suffers from psychological problems and could benefit from counseling and a regimen of medication. Due to having been shot and seriously wounded, he suffers from PTSD as a result of being shot, he has had a

14

hip replacement. He has a GED and has recently worked renovating homes. He is not without skills and is far from someone who should be "warehoused." He has a future once he has served his time. His criminal has been set forth above and when examined closely establishes that he is not the master criminal his criminal history category would make him out to be. While he deserves a significant sentence he has not earned an overly long sentence.

## IV.     SENTENCING RECOMMENDATION

Counsel respectfully submits that the Court should impose a sentence of ninety six months.

Respectfully Submitted,

/s/ barnaby c. wittels
BARNABY C. WITTELS, ESQUIRE.
Attorney for Defendant
Abid Stevens

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | | |
|---|---|---|---|---|
| UNITED STATES OF AMERICA | : | : | CRIMINAL NO. 19-350-02 |
| v. | : | : | |
| | : | : | |
| ABID STEVENS | : | : | (DuBois J.) |

## CERTIFICATE OF SERVICE

I hereby certify that I have, this date, served a copy of the foregoing Sentencing Memorandum, upon the following individual electronically and by first class mail:

Robert Eckert, Esquire
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106


Dated: February 26, 2021

/s/barnaby c. wittels
Barnaby C. Wittels, Esquire
WITTELS LAW, P.C.
1420 Walnut Street, Suite 1200
Philadelphia, PA 19102
267 519-0700
barnabyw@aol.com
Attorney for Defendant
Abid Stevens

16